FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2023 OCT 24 A 8: 56

CLERK _C.Csbell_
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE and DONNA CURLING,** | Civil Action No. _MC523-001___ |
| **Plaintiffs,** | **In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division, Civil Action File No. 1:17-CV-2989-AT** |
| **v.** | |
| **COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,** | |
| **Defendant.** | |

**PLAINTIFFS' MOTION TO COMPEL COMPLIANCE
WITH SUBPOENAS TO PRODUCE DOCUMENTS,
INFORMATION, OR OBJECTS**

**Background Facts**

Plaintiffs and Movants Coalition for Good Governance ("CGG") and Donna Curling bring this action to enforce two Subpoenas to Produce Documents, Information, or Objects and to Permit Inspection of Premises in a Civil Action (the "Subpoenas") issued by the United States District Court for the Northern District of Georgia, Atlanta Division in *Curling, et al. v. Raffensperger, et al.*, No. 1:17-CV-2989-AT ("*Curling*"). One document

subpoena was served by the "Coalition Plaintiffs," including CGG, on July 25, 2022. (Exhibit 1). A related document subpoena was served by the "Curling Plaintiffs," including Donna Curling, on June 15, 2022. (Exhibit 2). Both Subpoenas were served on the Coffee County Board of Elections and Registration (CCBOER) in the Southern District of Georgia, and counsel for all parties began frequent negotiations and conferrals.

Movants CGG and Donna Curling are co-plaintiffs in the *Curling* case, along with six other Georgia voters. The plaintiffs in *Curling* seek, among other relief, to enjoin the defendants (state and county election officials) from "forcing in-person voters to use ballot marking devices ('BMDs')" and to instead require "voters to use hand-marked paper ballots as the standard method for in-person voting." (*Curling,* Doc. 964 at 2). The *Curling* plaintiffs allege the BMD system, manufactured by Dominion Voting Systems ("Dominion"), including its software design, "undermine the integrity, security, and functionality of the voting system and in turn, adversely impact whether citizens' votes will be counted as intended or counted at all." (*Id.* at 29). The trial in *Curling* is currently scheduled to begin on January 9, 2024. (*Curling,* Doc. 1700). The *Curling* plaintiffs need access to the

documents and records at issue here at the earliest possible time to adequately prepare for trial.

As explained below, CCBOER has consistently denied the existence of thousands of CCBOER email records since March 2022. CCBOER has claimed that former Election Supervisor Misty Hampton's emails and related documents (such as email attachments) created and stored over her almost ten-year period of official election responsibilities were not preserved upon the termination of her employment in February 2021. On October 5, 2023, Movants learned through filings in the high-profile RICO prosecution of former President Trump and others, *State of Georgia v. Donald J. Trump, et al.*, No. 23SC188947 (Fulton Cty. Super. Ct.) ("Fulton Case"), that the Georgia Bureau of Investigation ("GBI") has obtained thousands of Hampton's emails and CCBOER documents from a CCBOER desktop computer (the "Desktop"). Movants learned through a public records request that the GBI obtained a search warrant on or about June 12, 2023, for the Desktop located in the CCBOER office in Douglas, Georgia. This motion seeks production of records among those thousands of documents on the Desktop responsive to the longstanding Subpoenas.

3

CCBOER's connection to the *Curling* case arises out of three January 2021 breaches of the Coffee County, Georgia, election system and the unlawful copying and distribution of Georgia's Dominion election software system.[1]   Ms. Hampton and at least one former CCBOER member, Eric Chaney, were key participants in planning and executing the breaches, and permitting unauthorized individuals to access and copy the software and data on the voting system components and ultimately distribute such sensitive data via a private internet site.   Ms. Hampton and three other individuals were indicted on charges related to the breaches by the Fulton County District Attorney in the Fulton Case.[2]   Those breaches and the resulting impairment of the integrity of the Georgia elections system represent a serious and ongoing risk to Georgia's future elections, as is explained in Curling Plaintiffs' Brief Opposing Defendants' Motions for Summary Judgment.   (*Curling*, Doc. 1636 at 14-21).

---

[1]     *https://www.washingtonpost.com/investigations/2022/08/22/election-system-copied-files-trump/*

[2] As of this filing, three of those defendants, Sidney Powell, Scott Hall, and Kenneth Chesebro have pleaded guilty and will not be tried in the Fulton County case.

The Subpoenas seek, among other things, production of documents relating to the planning and execution of unauthorized access to and copying of highly restricted electronic information contained in component elements of Georgia's voting system. Specifically, most of the responsive documents Movants believe CCBOER has control over, but has not produced, were likely located on the Desktop used by Ms. Hampton and her successors or the CCBOER laptop used by Ms. Hampton (the "Laptop"). The CCBOER Desktop documents were reportedly provided by the CCBOER to the GBI. The Subpoenas seek documents, including, but not limited to, communications that (1) evidence, refer to, reference, or reflect the planning for, or access to, or copying of, voting system components and election data after November 3, 2020 by individuals who were not election officials; (2) are related to the Election Management System server password change and server replacement; or (3) are related to investigations of the unauthorized voting system access. (Coalition Plaintiffs Requests #1-50 (Exhibit 1); Curling Plaintiffs Requests 1-16 (Exhibit 2)).

There is no question or disagreement about the relevance of the documents requested as they relate to voting system security and its

vulnerabilities, core topics of Movants' claims in *Curling*.  The three major breaches of the system occurring in January 2021 and the failure to investigate, acknowledge, or mitigate the security failures is likely documented in the records on the Desktop and Laptop and are highly relevant to the issues in the *Curling* litigation.

### *Efforts to Secure Compliance Before Filing Motion*

Movants have exhausted every other option to secure compliance with their Subpoenas.  The effort to obtain the responsive records stored on the Desktop and Laptop began with Open Records Act requests served by CGG on March 4, 2022, continued throughout 2022 with the Subpoenas, and further continued with additional Open Records Act requests through the current time.[3]

In response to CGG's March 4, 2022 Open Records Request ("ORR") for relevant emails, on March 10, 2022, CCBOER counsel, based in Tifton,

---

[3] For efficiency, only a fraction of the exchanges between Movants and CCBOER are attached as exhibits.  The attached exhibits document the continuous challenge by Movants of the CCBOER's position that the records are not retrievable.  For the Court's convenience, the attached exhibits have been marked by Movants with parallel lines in the margins indicating the relevant text in the lengthy emails.

Georgia, stated that Ms. Hampton's email account could not be accessed and implied the requested emails had not been preserved. (Exhibit 3). Movants and counsel for CCBOER exchanged numerous emails over the next three months as CGG continued to request that CCBOER check the hard drive of the Desktop to determine if Microsoft Outlook data files (.ost files) containing Hampton emails were preserved. (Exhibit 4). CGG also asked CCBOER to locate the county Laptop Ms. Hampton used in discharging her duties. (Exhibit 5).

In May 2022, CGG obtained an email dated July 2, 2021, in which an IT contractor for CCBOER advised Coffee County leaders that he could recover the emails from the .ost files on the Desktop, assuming Ms. Hampton did not delete those files. (Exhibit 6). CCBOER found no evidence that the files were deleted, but did not produce any files. (Exhibit 7). CCBOER also stated to CGG that no .ost files were on the Desktop because CCOBER used only a web-based system that did not preserve a local copy of emails on the Desktop. (Exhibit 7). Even so, on May 19, 2021, CCBOER's county manager Wesley Vickers instructed Ms. Hampton's successor as elections director, James Barnes, to leave the CCBOER Desktop on in the evening so that

Hampton's emails could be retrieved remotely from the desktop hard drive by the IT Contractor.  (Exhibit 8).

No reports of the results of this May 19, 2021 plan to obtain Ms. Hampton's emails have been produced to Movants; nor, as demonstrated in subsequent communications, has any explanation reconciling the assertion to CGG that only a web-based system exists with the county manager's contradictory (internal) instruction, and the IT contractors statement that .ost files on the Desktop could be recovered if not deleted

Eight days earlier, on May 11, 2021, the Secretary of State's ("SOS") office began an investigation to determine whether Doug Logan, Cyber Ninja CEO, had communicated with the CCBOER staff after Ms. Hampton's successor, Mr. Barnes, had raised a concern. The SOS investigation was apparently never completed.   In mid-2022, the plaintiffs in *Curling* discovered that Logan had, in fact, visited Coffee County and, with Ms. Hampton's assistance, led the second breach of the Coffee voting system on January 18-19, 2021.  Any emails between Logan and Hampton are highly relevant to the *Curling* case.

As part of CGG's attempts to obtain responsive records, CGG repeatedly requested that CCBOER recheck the availability of Hampton's emails either "in the cloud" or resident on computers Ms. Hampton used. Each time, CCBOER denied that Hampton's records had been preserved or could be retrieved.

In June 2022, the *Curling* Court granted Movants' request to obtain discovery on the Coffee County breaches and authorized subpoenas to be served on third parties for the purpose of obtaining relevant information concerning the voting system breaches. (Transcript of Telephone Conference Before Hon. Amy Totenberg, June 7, 2022, pp. 26-27) (Exhibit 26)). Movants served their respective Subpoenas seeking many of the same records that CGG had requested through their ORR. The parties agreed documents produced in response to the ORR would be incorporated as CCBOER responses to the Subpoenas, with specific instructions and requests to thoroughly search the Desktop files including any Outlook data files. (Exhibit 25).

CCBOER again denied Hampton's Desktop emails could be retrieved either through web-based Microsoft Outlook services or through copies in

9

the Outlook (.ost) files on the Desktop hard drive. Movants made multiple requests to CCBOER to confirm the accuracy of that response, but the response did not change. CCBOER repeatedly claimed they had no Outlook data files or other access to Hampton's emails. (Exhibit 9 Items 9, 10).[4]

On October 13, 2023, CGG member Aileen Nakamura served an Open Records Request on CCBOER seeking communications after October 5, 2023, with any IT contractors concerning possible recovery of Hampton's emails from the Desktop computer records. On October 19, 2023, CCBOER responded and refused to produce such documents claiming attorney-client and work product privilege. (Exhibit 24). Movants' position is that CCBOER counsel has avoided and continues to avoid disclosure without lawful basis of obligations to comply with Movants' Subpoenas and Open Records Requests.

---

[4] Given the inconsistent responses which CGG had received to its prior Open Records Requests concerning the existence of the Outlook data files on the Desktop, CGG included Request #42 in its document subpoena (Exhibit 1), seeking evidence that Outlook data files on the Desktop had been searched for responsive records. CCBOER objected, claiming privilege, but further stated it has no additional documents. (Exhibit 23 ¶42 at 15). There is no indication CCBOER diligently searched its files for responsive records, particularly email records.

### *The CCBOER Laptop*

Movants learned Ms. Hampton had used both a desktop computer and a late model Laptop in her election-related duties.  Movants understand and believe that Ms. Hampton used the Laptop primarily when working remotely, such as at off-site meetings or when visiting polling places.  In-office use of the Laptop included applications Ms. Hampton and other staff used for creating Voter Photo Identification cards.  Movants subpoenaed responsive records regardless of which CCBOER computer contain those records. When Movants repeatedly inquired about the records on the Laptop, CCBOER stated there were no records of a "county-issued laptop" being assigned to Ms. Hampton.  (Exhibit 5, Item 8).

Movants continued to press CCBOER to locate the Laptop Ms. Hampton used and to locate any responsive records on it.  (Exhibit 10, pp. 3, 9).  CCBOER continued to deny such a Laptop was used by Ms. Hampton. (Exhibit 10, p. 1 Item 3; p. 5 Item 2.b.).  On June 7, 2023, Movants' counsel sent a picture to CCBOER counsel of Ms. Hampton using the CCBOER Laptop in question and continued to ask questions about the existence or use of the Laptop and the apparent refusal to locate the Laptop and search it for

11

responsive records.  (Exhibits 11 and 12).  On June 16, 2023, counsel for CCBOER stated that CCBOER would not be responding to further questions about the Laptop.  (Exhibit 12).

Movants later learned that, on May 22, 2023, the GBI sent an email to CCBOER counsel stating that the GBI wanted to take possession of the Laptop CCBOER counsel had told the GBI "Ms. Hampton used," but CCBOER was "not prepared to produce" when initially requested by the GBI in September 2022.  (Exhibit 13).  Thus, it appears CCBOER counsel knew of the Laptop Ms. Hampton used and disclosed the same to the GBI in September 2022, while simultaneously representing to Movants no such Laptop existed.  (*Compare* Exhibits 5, 10 *with* Exhibits 12, 13).

To date, CCBOER has produced no files from the Laptop, although the CCBOER no longer denies that the Laptop exists or that it was used by Ms. Hampton.  Now, the story has changed and CCBOER claims it does not have possession or control of the Laptop.  (Exhibit 12).

### *Recent Public Disclosure of Existence of Responsive Documents*

On October 5, 2023, Movants learned of the existence of over 10,000 emails and 4,500 documents on the Desktop when Defendant Sidney Powell

12

filed a brief[5] in the *Fulton Case* with excerpts from the recently completed GBI report on the Coffee County breaches as exhibits. (Exhibit 14). The GBI seized the CCBOER Desktop on June 12, 2023, after obtaining a search warrant. (Exhibits 15, 16).

### *Renewed Demands for Production of Documents*

Exhibit 17 includes a series of emails between Movants' and CCBOER's counsel beginning October 6, 2023, in which Movants' counsel expressed dismay that CCBOER had repeatedly denied the existence of or ability to retrieve ESI from the Desktop for over 18 months while CCBOER apparently had access to that ESI the entire time. Upon learning that, Movants demanded the responsive records be produced from the desktop without delay.

In the resulting exchange of emails between counsel, CCBOER counsel claimed they lacked the ability to retrieve the emails and the responsive email files and related documents are now *only* in the possession of the GBI.

---

[5] *See* Fulton case Reply in Support of Ms. Powell's Motion to Produce Brady Material and to Dismiss Counts 1-37 for Prosecutorial Misconduct and *Napue* Violations, filed October 5, 2023.

(Exhibit 17). CCBOER's suggestion that it kept no copy of nearly ten years' worth of business records before relinquishing the Desktop to the GBI lacks credibility—particularly given that CCBOER claimed internally that they could have in fact retrieved the emails. (Exhibit 6). Numerous state and federal statutes require multi-year retention of many of the types of election records that likely and reportedly are contained on the Desktop, including records responsive to the Subpoenas.

On October 10, Movants' counsel requested again that CCBOER produce the records even if it requires CCBOER obtaining access from GBI. Movants did not receive a response. On October 17, 2023, Movants sent yet another letter of conferral asking CCBOER to produce the responsive documents from the Desktop and Laptop. (Exhibit 18). CCBOER responded stating they had turned the Desktop over to the GBI *after* the election staff selected and copied records from the Desktop they would need for use in future elections. CCBOER counsel claimed that CCBOER did not preserve copies of other records, such as Ms. Hampton's emails, and that the GBI is now in possession of the Desktop, purportedly outside the reach of the

CCBOER.  CCBOER counsel also represented that she contacted the GBI to request a copy of the electronic records on the Desktop.  (Exhibits 19, 20).

As described below, Movants respectfully request that this Court compel CCBOER (1) to make all reasonable efforts to obtain the records from the GBI, and (2) to conduct a thorough review of the records it continues to hold for additional responsive materials.  This is an urgent matter, made only after many attempts to secure compliance without requiring the intervention of the Court.  Movants need access to these records to prepare for trial now scheduled to begin on January 9, 2024.

## Argument and Citation of Authority

### A.    This is the proper Court to hear this motion.

While the subpoena must issue from the court where the *Curling* action is pending (FRCP 45(a)(2)), a motion to enforce the subpoena should be filed with the court where compliance is required.  *See* Rules 45(d)(2)(B)(i) (compel) and 45(g) (contempt).

### B.    Contention that CCBOER cannot access documents is not credible.

Any argument that CCBOER cannot access the responsive records or no longer has possession, custody, or control over the documents should be

rejected. It strains credulity to believe, and should not be assumed, that the GBI would not have permitted CCBOER to preserve copies of any business and election records, including records subject to public records disclosure laws, on the CCBOER Desktop before it took possession in June 2023. If CCBOER retained electronic records of Ms. Hampton's emails or other responsive documents, they should be ordered to thoroughly search the files (with expert help at their expense if deemed necessary) to produce responsive records.

If CCBOER delivered the Desktop without copying and preserving the responsive electronic records, this Court should order that CCBOER obtain a full and complete copy of its records from the GBI, to satisfy its long-overdue obligations to produce responsive records to Movants. There is no evidence to suggest that Ms. Hampton or another individual attempted to delete the Outlook email files (.ost files) on the Desktop. (Exhibit 4, Item 11). CCBOER's IT contractor should be able to recover the emails from the Outlook data files, as he stated in his July 2, 2021 email. (Exhibit 6). If file recovery problems are encountered, CCBOER should be ordered to engage an expert with the skillset to recover the Outlook files at its expense and

without further delay.  (The GBI did not reference any extra effort required to access the desktop files including the .ost records.)

## C.   <u>Prejudice to Movants' pursuit of their claims</u>

CCBOER's failure to produce the significant number of responsive records from the Desktop and Laptop significantly prejudiced and inflated the costs of Movants' discovery efforts, and will continue to do so as Movants prepare for a January 2024 trial without these responsive and highly relevant records.  Movants were required to attempt to gain necessary related information and documents through prolonged and often inefficient third-party discovery efforts, when directly responsive documents were likely available on the Desktop or Laptop.[6]  For context, Movants experienced a similar situation with CCBOER regarding video security records documenting the three occurrences of unauthorized access and three breaches of the Coffee County elections system.  Repeated efforts to obtain

---

[6]  Once the responsive records are produced, Movants anticipate filing a motion for sanctions to recover the significant fees and costs associated with the prolonged multi-step discovery efforts, the disrupted litigation schedule, and unnecessary delays made necessary by CCBOER's failure to produce responsive records in their possession.

the highly relevant video security records began in March 2022, as CCBOER repeatedly denied the existence of the video records in response to Open Records Requests and two Subpoenas.  CCBOER claimed that such video records had not been preserved.  It was only after the GBI insisted that CCBOER produce such video records that the CCBOER "found" the exterior and interior security videos on August 27, 2022 and September 16, 2022 respectively.  (Exhibit 21, 22).

CCBOER's months' long denials of the existence of the Laptop the Desktop Outlook .ost files — like its claims regarding the video records — are, at best, suspect.  Movants, thus, bring this motion to enforce the Subpoenas and seek an Order compelling the immediate production of the subpoenaed documents on both the Desktop and Laptop, and appropriately detailed privilege logs for any claims of privilege by CCBOER.

D.    **CCBOER's claims of privilege must be documented and specifically asserted.**

The record reflects a pattern of asserting blanket claims of attorney-client privilege and other privileges when withholding records and thereafter refusing to produce the necessary privilege log with required

detail. (Exhibit 23). CCBOER's practice of vague blanket assertions of privilege without identifying specific records further prejudices Movants in their discovery efforts. Movants are entitled to an adequately detailed privilege log identifying records for which privilege is claimed, the date and nature of the documents, the author of the document, all recipients of the document, and the content of the document with as much detail as retention of the privilege, if any, permits. The Court should Order CCBOER to prepare and deliver such a log to Movants and to the Court.

## Conclusion

For the foregoing reasons, Movants respectfully submit that the Court should grant the relief sought herein and compel production of all subpoenaed documents.

Respectfully submitted this 23rd day of October, 2023.

/s/ Cary Ichter
CARY ICHTER
Georgia Bar No. 382515
cichter@ichterdavis.com
ICHTER DAVIS LLC
400 Interstate Parkway North, SE

19

Suite 860
Atlanta, Georgia 30339
(404) 869-7600

and

*/s/ Bruce P. Brown*
BRUCE P. BROWN
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorneys for Coalition for Good Governance*

and

*/s/ Halsey G. Knapp, Jr.*
HALSEY G. KNAPP, JR.
Georgia Bar No. 425320
hknapp@khlawfirm.com
**KREVOLIN & HORST, LLC**
1201 West Peachtree Street, NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700

*Attorneys for Donna Curling*

## **LOCAL RULE 26.5 CERTIFICATION**

I hereby certify that counsel for the Movants have made a good faith effort to confer with counsel for Coffee County Board of Elections and Registration on a number of occasions by letter and electronic mail concerning the issues presented by this motion; however, the disputes concerning Defendant's compliance with the subject subpoenas remain unresolved.

*/s/ Cary Ichter*
Cary Ichter

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, I caused a copy of the foregoing **PLAINTIFFS' MOTION TO COMPEL COMPLAINCE WITH SUBPOENAS TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS** to be served on Defendant Coffee County Board of Elections and Registration by sending a pdf. of same via electronic mail to its counsel as follows:

Jennifer Dorminey Herzog, Esq. (jherzog@hallboothsmith.com)

Benjamin M. Perkins, Esq. (bperkins@olivermaner.com)

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
cichter@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate Parkway North, SE
Suite 860
Atlanta, Georgia 30339
Tel.: 404.869.7600
Fax: 404.602-0037

*Counsel for Coalition for Good Governance*

ORIGIN ID:TMAA      (404) 869-5250
DAN DAVIS
ICHTER DAVIS, LLC
400 INTERSTATE NORTH PKWY SE
SUITE 860
ATLANTA, GA 30339
UNITED STATES US

SHIP DATE: 23OCT23
ACTWGT:
CAD: 101579958/INET4660

BILL SENDER

TO **CLERK OF COURT**
**US DISTRICT COURT SDGA**
**801 GLOUCESTER STREET**

**BRUNSWICK GA 31520**
(912) 280-1330          REF: 616-001
INV:
PO:                              DEPT:



TUE - 24 OCT 9:00A
**FIRST OVERNIGHT**

TRK#
0201   **7738 3646 9310**



**G1 BQKA**          31520
                GA-US   **JAX**