## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE and DONNA CURLING,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,**<br><br>**Defendant.** | **Civil Action No. 5:23-mc-00001-LGW-BWC**<br><br>**In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division, Civil Action File No. 1:17-CV-2989-AT** |

### PLAINTIFF COALITION FOR GOOD GOVERNANCE'S REPLY TO DEFENDANT'S RESPONSE BRIEF ON PRIVILEGE LOG ISSUE AND REQUEST FOR EMERGENCY ORDER

Plaintiff Coalition for Good Governance replies to Defendant Coffee County Board of Elections and Registration ("CCBOER") Response Brief on the Privilege Log Issue as follows, and urgently seeks an order from this Court that documents held by CCBOER's counsel Hall Booth Smith ("HBS") responsive to the Plaintiffs' subpoenas be promptly produced to enable their use as appropriate in the January 2024 trial.

Rule 26(b)(5) provides that "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or

subject to protection as trial preparation material, ***the party shall make the claim expressly*** and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Consistent standards for a compliant privilege log are widely accepted by the Courts and commentators.  For each withheld document a privilege log should contain a document number, author or source, recipient, list of persons receiving copies, date, document title, document type, number of pages, and any other relevant nonprivileged information.  *See* O'Connor's Federal Rules, Ch. 6-A Sec. 8.3.2(2)(b) (citing *In re Capital One Bank Credit Card Interest Rate Litig.*, 286 F.R.D. 676, 681 (N.D. Ga. 2012) (contrasting non-deficient log entries with express, detailed descriptions of specific communications memorializing, providing, or reflecting requesting legal advice with deficient log entries lacking specific dates, recipients, or indicia of confidentiality); *Horton v. U.S.*, 204 F.R.D. 670, 673 (D. Colo. 2002) (privilege log must state specific reasons why each document or communication is subject to asserted privilege); *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (cursory descriptions and

comments about documents insufficient to support privilege claim)). The purpose of the privilege log is to enable the receiving parties, initially, and the Court, eventually, to be able to make at least a preliminary assessment of whether the withheld documents are in fact privileged.

It is producing party's burden to show the universe of privileged materials is so large that a category-based log is justified. CCBOER has never asserted that and has never made a showing or tried to make a showing as to the size of the universe of documents. They had an opportunity to point to that evidence in their response and failed to do so.[1]

The log generated by CCBOER in the *Curling* matter falls woefully short of that goal. The privilege log produced by CCBOER contained

---

[1] Judge Totenberg's Standing Order in the *Curling* case appears to require a more document-by-document evaluation of the privilege in preparing a log: "If an objection is based on privilege, the claim of privilege must be supported by a statement of particulars sufficient to enable the Court to assess its validity. In the case of a document, such a statement should specify the privilege relied on and include the date, title, description, subject, and purpose of the document; the name and position of the author; and the addresses of other recipients. In the case of a communication, the statement should include the privilege relied on; the date, place, subject, and purpose of the communication; and the names and positions of all persons present. *See* Fed. R. Civ. P. 26(b)(5).

generalized categories of topics, attorneys' (and others') names, and broad date ranges without specific lists of such communications. Indeed, the "Description" of the documents withheld from production does not disclose how many documents (much less how many pages) are being withheld in each category. In many cases, no details regarding the content or purpose of the withheld documents are offered in the log, making it impossible to discern whether the documents listed actually contained privileged communications.

Additionally, to assess claims of work-product privilege, it is essential to know the date of a communication. Work-product privilege only attaches where litigation is ongoing or contemplated. CCBOER's log fails to identify the date associated with many categories of documents. For example, in the first three categories of documents, the log merely reports that all of the authors or recipients of the withheld documents were employed by Hall Booth Smith or the County Attorney's office at all relevant times. That, of course, reveals nothing that would assist the reader in assessing whether there was ongoing litigation or whether litigation was contemplated at the time the document was created or received.

Because of the insufficiency of CCBOER's log, it is impossible to tell what litigation was contemplated in connection with its claims of the privilege or when communications regarding such litigation were had, and knowing when the communication occurred is critical to evaluating whether the communication related to some contemplated litigation. The failure to disclose the date of a communication renders it impossible for counsel and the Court to evaluate the applicability of the claimed privilege or protection as required by Fed. R. Civ. P. 26(b)(5).

### Examples of Responsive Documents Withheld by CCBOER

The following are examples of documents relevant to the *Curling* litigation withheld by CCBOER that were needed to pursue essential and efficient discovery. While some of these documents were obtained by other means, the majority of them have been located through a painstaking review of the recently obtained GBI image and by commencing this proceeding and filing the Motion to Compel, in other words, long after discovery closed in *Curling*.

This is a non-exhaustive list; there are others. The detailed examples explaining the injury to Plaintiffs' discovery efforts in the *Curling* matter are offered to assist the Court in evaluating the serious prejudice Plaintiffs

experienced as a result of CCBOER's failure to produce responsive documents and to emphasize the urgent need for complete production by CCBOER in adequate advance of the Curling trial:

1. <u>CCBOER counsel's April 11, 2022 communications with Secretary of State Counsel concerning media reports of breaches</u>

Weeks before the Plaintiffs and the public learned of the timing of the January 7, 2021 breach or that CCBOER member Eric Chaney was involved, Washington Post reporter Emma Brown had investigated credible reports of the first breach and sought more information from CCBOER counsel, county management, Mr. Chaney, and the Secretary of State's (SOS) office. Relevant communications between the SOS then General Counsel, Ryan Germany and CCBOER Hall Booth Smith ("HBS") attorney Jennifer Herzog dated April 11, 2022 (**Exhibit C**) were withheld from Plaintiffs until April 2023, long after the close of discovery in *Curling*. The SOS is one of the *Curling* Defendants which also failed to produce relevant records that would, if produced, have permitted Plaintiffs to pursue appropriate discovery in its depositions of the SOS officials as well as seeking other specifically responsive records from CCBOER.

Given the overly-general, non-specific privilege log, Plaintiffs have no visibility into whether responsive documents such as the Herzog-Germany April 11, 2023 text messages were withheld because of asserted privilege or for some other reason. If such communications had been listed on a privilege log during discovery, Plaintiffs could have challenged the assertion and pursued important discovery, including deposition testimony. If other similar documents exist in Hall Booth Smith ("HBS") files, Plaintiffs have the right to obtain those promptly for trial strategy evaluation.

2. Washington Post reporters' communications with CCBOER

On April 13, 2023, CGG counsel contacted CCBOER counsel objecting to CCBOER's and CCBOER member Eric Chaney's failure to produce the May 2, 2022 communications with Washington Post concerning the January 7, 2021 breach. (**Exhibit D**) This relevant record was not produced to Plaintiffs until April 2023, long after discovery in *Curling* was closed. The CCBOER, Mr. Chaney, Mr. Vickers (the county manager), and HBS, counsel for CCBOER, should have each had the record in their control or possession.

HBS represented Mr. Chaney when the subpoena was served and during his August 15, 2022 deposition, where he claimed to have no responsive records. Yet, HBS had also been copied on this communication

7

with the press, clearly making any privilege assertion improper, and production by Mr. Chaney required.  When challenged on this improper withholding, Ms. Herzog responded, denying it was a responsive record (**Exhibit E**) and claiming that Plaintiffs' objection was untimely.

Without a properly detailed privilege log, Plaintiffs had no visibility into details as to this relevant record to challenge the fact that it was being withheld and had no ability to obtain or use the document in furtherance of their discovery efforts.

3. CCBOER Election Supervisor communications with counsel and SOS officials

CCBOER improperly withheld relevant records of Rachel Roberts's July 2022 communications with the Secretary of State's office concerning the potential need to recertify voting equipment in the wake of the news of the breach of the system. (**Exhibit F**)  Ms. Roberts's question, written on July 14, 2022, was appropriate, and the resulting email thread is relevant to Plaintiffs' discovery goals.

The ensuing communications (**Exhibits G and H**) demonstrate the SOS's limited response to the system breach after numerous SOS officials

were copied on materials revealing what had occurred, but also evidence responsive records the SOS has withheld.

Further and most concerning is the request that Ms. Herzog made of her client to essentially retract her question regarding recertification of equipment to sanitize the record, stating the need to avoid disclosure of the communication and the topics that concerned litigation subpoenas and public records requests (Exhibit H). Indeed, Ms. Herzog told Ms. Roberts there was "no evidence" that the improper voting system access had occurred, although the fact of the breaches had been widely reported and was evidenced by a growing mountain of evidence, some of which was under the control of CCBOER. CCBOER's effort to avoid production of such documents demonstrates the need for the Motion to Compel filed here and the expedited treatment Plaintiffs seek.

Plaintiffs' discovery efforts were prejudiced by the inability to timely incorporate this information into their deposition examinations of CCBOER and the State Defendants. Had CCBOER timely produced a compliant privilege log, these issues could have, and would have been, more promptly brought to the attention of the Court and would not be emergencies to be dealt with at the eleventh hour before the *Curling* trial.

4. <u>CCBOER counsel Tony Rowell's communications regarding alleged stolen voting machines and other voting system issues</u>

Shortly before the close of discovery, in response to Plaintiffs' subpoenas, Ed Voyles produced approximately 120 text messages with Tony Rowell, of HBS, CCBOER counsel.  Nearly all the produced messages were related to 2020 election matters, including exploring concerns about Coffee's Dominion system performance as he closely monitored CCBOER post-election activities.

Ed Voyles was a participant in and eyewitness to the January 7, 2021 breach.  (Voyles was not a member of the CCBOER and not operating in an official meeting protected by attorney client privilege.) Mr. Voyles and Mr. Tony Rowell were in frequent contact and met numerous times with Ms. Hampton in the CCBOER office in the run-up to the January 7, 2021 breach.[2] (**Exhibit I**).

---

[2]  In connection with these interactions, Plaintiffs believe that Rowell acted as counsel for CCBOER, but he was interacting with or in the presence of a non-client, Voyles, and other non-clients as well. Hence, the communications would either by non-privileged or would require disclosure, listing on a privilege log that would make it obvious what was being described, and finally, perhaps *in camera* review of the materials by the Court.

Mr. Rowell, Mr. Voyles, and Ms. Hampton produced no responsive documents that appear to be related to those meetings, although video recordings show them reviewing many documents together and having extensive conversations on what appear to be election-related matters. It seems unlikely that these extensive meetings were planned and conducted with no responsive documents being created or retained.

Several relevant text messages with Rowell were in Mr. Voyles' production. For example, on December 3, 2020, Voyles shared a news report with Rowell that the "Trump team" had a Dominion voting machine from Ware County, Georgia. (**Exhibit J**) Mr. Rowell responded that he "will verify." On December 5, Mr. Rowell apparently texted a picture (unavailable to Plaintiffs) entitled "ware-county-confirmation.jpg."

Plaintiffs believe HBS also is counsel for Ware County.  Therefore, Rowell may have had access to information about a potentially stolen voting machine.  That is without question relevant to Plaintiffs' discovery and claims in the *Curling* case. This "confirmation" or verification of a presumably stolen machine should have been disclosed to Plaintiffs as a responsive document.

Further texts messages between Rowell and Voyles discuss the Dominion Voting System CEO's testimony about system operations and the SOS investigation of Coffee County. (**Exhibit K**)  Similarly, responsive text messages among Mr. Rowell, Mr. Chaney, Mr. Voyles, and Misty Hampton (the indicted Coffee County former Election Supervisor) discussing the voting system and election-related matters were produced by Ms. Hampton after Mr. Chaney's and CCBOER's Rule 30(b)(6) depositions. Chaney, CCBOER, and HBS's failure to timely produce these documents frustrated Plaintiffs' discovery efforts.

Another example, already in the record, is an email Plaintiffs located on the GBI image which Election Supervisor James Barnes sent Mr. Rowell on May 13, 2021, attaching a January 8, 2021 sworn declaration signed by Misty Hampton. (Doc. 30 at 8) concerning alleged voting system security issues. Barnes stated to Rowell that Ms. Hampton had sent the declaration (Doc. 30-8) to the Secretary of State. Neither HBS nor CCBOER produced this plainly responsive record.

These communications of their attorney, under the control of the CCBOER, were withheld from the CCBOER production and were not identifiable by anything contained in the privilege log.  The absence of a

compliant privilege log explains why this matter is being dealt with at this late date.  Had CCBOER and its agents—HBS, CCBOER members, Mr. Dial, (the IT contractor)---made appropriate productions and offered appropriate descriptions of withheld items, these issues could have been sorted out more than a year ago.

     5.  <u>Communications concerning Hampton's "lost" emails</u>

CCBOER's repeated claims that Hampton's emails were permanently lost were simply untrue. GBI located thousands of Hampton's emails. (Doc. 1 at 3) Upon obtaining the GBI image, Plaintiffs' experts quickly found the emails on the image with minimal effort and without employing any special expert skills or forensic tools, proving the CCBOER's claims to be false. (Doc. 30 at 7)

Plaintiff CGG's subpoena served on CCBOER required production of documents related to CCBOER's efforts to retrieve Ms. Hampton's emails. (Doc. 1-1, ¶43). A review of the GBI image emails has exposed CCBOER counsel's deficient and superficial efforts to ensure that even modest search efforts were undertaken.

For example, on August 24, 2022, shortly before the CCBOER's September 1 Rule 30(b)(6) deposition, Ms. Herzog inquired of Charles Dial,

CCBOER's Information Technology contractor, whether her proposed representation about the inability to recover Ms. Hampton's emails was accurate, and whether (as specifically requested by Plaintiffs), desktop computers had been searched for responsive documents. (**Exhibit L**). Mr. Dial's five-word answer was accepted as sufficient, with no documentation or further inquiry by counsel of the details of the search or recovery efforts. Wesley Vickers asked Mr. Dial whether he searched the desktop for documents other than emails. Dial did not respond, and CCBOER counsel apparently did not follow up. Nor did CCBOER or its counsel disclose the responsive communications with Dial and Vickers as requested in CGG's subpoena.

Dial is an independent county contractor, and CCBOER counsel communications are not protected by claims of privilege. However, CCBOER counsel has taken the position that such communications with Dial, the independent IT contractor, are privileged communications. (Doc. 1-24 at 2)

Again, CCBOER's failure to produce these and similar responsive records evidence a lack of sufficient effort made to recover Ms. Hampton's emails. And because those emails were not fully listed on the privilege log,

any claim of privilege could not be evaluated or challenged, all to the detriment of Plaintiffs' discovery efforts.

6. <u>CCBOER withheld information of potential location of missing laptop</u>

On July 26, 2022 CCBOER counsel Herzog of HBS wrote an email asserting that James Barnes's testimony regarding a gray laptop was located in his office following Ms. Hampton's termination.  Ms. Herzog concludes, therefore, that the "silver laptop" used by Ms. Hampton in carrying out her election duties must have been that gray laptop. Despite these facts, CCBOER continues to advance the idea that the missing laptop belonged to Hampton and apparently that she left her personal laptop behind when leaving the county's employ, which seems far-fetched to Plaintiffs.

Further, Election Supervisor Rachel Roberts states that she delivered a non-working laptop to the IT contractor. (**Exhibit M**) This information in the possession of HBS concerning the delivery of such a laptop to the IT contractor was withheld from Plaintiffs during discovery, prejudicing their efforts to locate the laptop or the responsive records on it.

Again, the failure of CCBOER to produce a meaningful privilege log prevented Plaintiffs from identifying this failure to produce relevant

information on the potential location of the laptop.  CCBOER counsel HBS must be required to promptly search its records for all responsive documents and produce them immediately.

### **Plaintiffs' counsel properly conferred with CCBOER's counsel**

Following Plaintiffs' receipt of CCBOER's response to the 2022 subpoenas, both sets of Plaintiffs' counsel repeatedly requested that CCBOER provide a privilege log.  By email dated July 26, 2022, Jennifer Herzog, counsel for CCBOER, advised counsel for Plaintiffs in the *Curling* matter that CCBOER would produce a "general privilege log with the formal response to the subpoena for production of documents that generally references the type of documents being withheld (it is my understanding that the only documents originally withheld potentially responsive to your subpoena were based upon attorney client privilege and/or attorney client work product – ie, communications between members of our office, communications between members of our office and our client, etc.)." *See* the July 26, 2022 email attached hereto as **Exhibit A**, p. 3.

The following day, David Cross, counsel for the *Curling* Plaintiffs responded: "Regarding a privilege log, it's not clear what you mean. It needs to comply with Rule 26b5 so that we can assess the privilege claim for each

document. We're happy to talk with you about ways to reduce burden and expense for this (eg, we may be amenable to not logging communications with you or other lawyers at your firm regarding the subpoenas since we first served them)." *See* Exhibit A, p. 1.

On August 2, 2022, Mr. Cross followed up with Ms. Herzog, identifying the most conspicuous deficiency in the privilege log—the lack of a date field.  *See* **Exhibit B** hereto. Plaintiffs' counsel in the *Curling* matter vigorously objected to the lack of specificity of the CCBOER privilege logs in emails and verbally. Plaintiffs' counsel requested that withheld communications be specifically identified, including by date sent or received, the date any such files were last modified, and parties to each communication or communication thread.   And on August 18, 2022, Veronica Ascarrunz, one of the *Curling* lawyers, again asked the date range be added to the log.  A log with all the requested details was never provided.

### Plaintiffs have not waived their right to a compliant privilege log

Soon   thereafter,  on  August  26,  2022,  contrary  to  multiple representations made to the *Curling* Plaintiffs for six months, CCBOER acknowledged that it had security videos of the exterior office door during the time of the various breaches. CCBOER produced hundreds of hours of

video.  Reviewing those videos upon receipt beginning August 27 to prepare for the upcoming September 1, 2022, CCBOER Rule 30(b)(6) deposition, absorbed all counsel's time.  Until the disclosure of thousands of CCBOER documents and emails (the "Recent Disclosure") in the Fulton County *Trump* criminal prosecution in early October 2023, the deficient privilege log did not appear to merit a stand-alone motion to compel.

The Recent Disclosure made raising the privilege issue again appropriate for two reasons: First, the privilege issue is obviously not a stand-alone issue in this matter.  Second, in connection with the production of the Recent Disclosure documents, additional privilege issues may arise, and the adequacy of the previous privilege log will likely be necessary in connection with any such issues.

CCBOER claims that Plaintiffs failed to confer regarding the privilege log issue prior to filing the motion to compel.  However, the October 17, 2023 conferral letter from CGG counsel Cary Ichter containing the following request: "CCBOER will complete and submit a detailed privilege log, identifying each document requested by the subpoenas for which privilege is claimed. The log should include a) a description of the document type (e.g., letter, memo, email, agreement, etc.), b) the document creation date, c)

18

the sender, d) the primary addressee, e) all individuals copied, f) all individuals blind copied., g) the email subject or file name, and h) the nature and basis of privilege claims." *See* October 17, 2023 letter, (Doc. 1-18 at 4) Mr. Ichter was copied on three emails from CCBOER counsel Ms. Herzog the following day, and each of them failed to address the privilege log issue. Plaintiffs made numerous efforts to confer in good faith prior to filing this action.

The parties agree that: "The district court has broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery[.]" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* (*quoting Betty K Agencies, Ltd. v. M/VMONADA*, 432 F.3d 1333 (11th Cir. 2005)). Plaintiffs submit that the Court should exercise its discretion comply require CCBOER's compliance with the rules of discovery. The Court should also declare that it will not allow equitable concepts like waiver to be perverted in order to enable public officials to cover-up wrong-doing that could compromise the most cherished right of a free society—the right to vote. Finally, the Court should use its

discretion to declare that the passage of time does not render a legally insufficient privilege log sufficient.

### Plaintiffs' Urgent Need for Withheld Responsive Documents

As the Court is aware, the *Curling* trial will commence in one short month, and Plaintiffs have discovered at this late date, through analysis of the GBI desktop image obtained only November 17, 2023, the deficiencies in CCBOER's and its agents' production of responsive records. Since that time, Plaintiffs' experts, analysts, and counsel have spent hundreds of hours reviewing the GBI image. They have located hundreds of unproduced responsive records and scores of relevant records, and they have attempted to forensically recover records CCBOER permitted Ms. Hampton to destroy after telling her she would be terminated.

CCBOER's voluntary actions to produce records have not improved since the Plaintiffs' status report (Doc. 30) noting that since the filing of this action, CCBOER had produced only 40 unique emails (Doc. 30 at 2). No new records have been produced since November 21. It is clear that permitting CCBOER to produce documents with its own priorities and without firm deadlines has been unsuccessful. Additionally, Plaintiffs have received no response to their request for declarations from three witnesses regarding the

Hampton silver laptop.  While counsel for parties are in communication multiple times a day, little progress is being made because of CCBOER's counsel's failure to conduct robust searches and provide rolling production.

### Urgent Need for HBS Document Searches

With the Curling trial starting January 9, 2024, Plaintiffs are on the eve of trial and urgently need relief so that Plaintiffs may triage last-minute trial preparation and trial evidence disclosure deadlines.

Through their examination of the GBI desktop images documents, beginning November 17, Plaintiffs have learned of previously unknown extensive relevant records and filed examples in the record. It is now clear CCBOER's counsel, HBS, retained a substantial number of records reflecting their extensive involvement in CCBOER's  1) post-2020 Election Office activities and oversight; 2) election records management; 3) management of the CCBOER Open Records Request administration; 4) communications with the CCBOER IT contractor concerning responsive records; 5) organization, conduct, and preparation of minutes of the February 25, 2021 CCBOER meeting in which Ms. Hampton's resignation was demanded; 6) instructing staff in interactions with the Secretary of State; 7) representing the CCBOER in numerous State Election Board complaints; 8) management

of the controversial and troubled video security production; 9) primary representative for media contact regarding Coffee breaches; 10) point of contact for SOS general counsel and legal issues regarding the breaches; 11) management of the response to the GBI investigation, and other CCBOER-authorized duties.

HBS's involvement in the topic of the Coffee County breaches goes far beyond providing legal advice. Plaintiffs contend that HBS is the primary source of institutional knowledge and key records of the CCBOER, particularly given that CCBOER members generally claimed that they had no responsive records and do not preserve documents related to their official duties.

It appears that HBS either did not perform the searches required by Plaintiffs' subpoenas or failed to disclose the clearly non-privileged documents in the extreme.   It is now essential that HBS be required to immediately undertake a thorough search of its files and ESI for responsive documents and produce them or a specific, detailed log of privileged documents withheld so Plaintiffs can promptly assess and challenge any problematic assertions of privilege.

HBS is a large law firm, possessing deep resources and experience with

highly advanced ESI search platforms. It should be capable of conducting a rolling production begin within 24 to 48 hours of the Court's order. Plaintiffs recommend that searches of the county archiver system take a lesser priority to the HBS CCBOER record search.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant the relief sought herein and compel production of a compliant privilege log.  More urgently, with only one month before a multi-week *Curling* trial for which the CCBOER breaches are a major element, it is imperative that Plaintiffs obtain relevant records CCBOER and its agents have not produced.  Most urgently, the Court should order CCBOER to require its agent Hall Booth Smith to immediately search its records for responsive documents using the prioritized search terms supplied to CCBOER on November 24, 2023. Plaintiffs is prepared to specifically tailor the list further to HBS's apparent roles and likely records. The most efficient approach to obtaining high-value, relevant records is an immediate search of HBS files for those who were involved with CCBOER work. Plaintiffs seek an immediate order for responsive records with rolling production to begin *instanter* and completed no later than December 15, 2023.

Respectfully submitted this 6th day of December, 2023.

*/s/ William Daniel Davis*
William Daniel Davis
Georgia Bar No. 746811
ddavis@ichterdavis.com
CARY ICHTER, *Pro Hac Vice*
Georgia Bar No. 382515
cichter@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate Parkway North, SE
Suite 860
Atlanta, Georgia 30339
(404) 869-7600

and

*/s/ Bruce P. Brown*
BRUCE P. BROWN, *Pro Hac Vice*
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorneys for Coalition for Good Governance*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2023, a copy of the foregoing **Plaintiff Coalition for Good Governance's Reply to Defendant's Response Brief on Privilege Log Issue** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

<u>*/s/ William Daniel Davis*</u>
William Daniel Davis
Georgia Bar No. 746811
ddavis@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate N. Pkwy, SE
Suite 860
Atlanta, Georgia 30339
Tel.: 404.869.7600
Fax: 404.602-0037

*Counsel for Plaintiff Coalition for Good Governance*