**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE and DONNA CURLING,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,**<br><br>**Defendant.** | **Civil Action No. 5:23-mc-00001-LGW-BWC**<br><br>**In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division, Civil Action File No. 1:17-CV-2989-AT** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRODUCTION
OF "SILVER LAPTOP" RECORDS**

Plaintiffs Coalition for Good Governance ("CGG") and Donna Curling file this Reply Brief in Support of their Motion to Compel (Doc. 1), seeking production of CCBOER's responsive records that may be or have been resident on the "silver laptop" used by Misty Hampton in her official capacity with the Coffee County Board of Elections and Registration ("CCBOER").

1

## INTRODUCTION AND SUMMARY

Former CCBOER Election Supervisor Misty Hampton used a silver laptop computer in her elections-related work which may contain records relevant to the issues that arise in the *Curling* now pending in the Northern District of Georgia. Plaintiffs have diligently sought access to those records for nineteen (19) months and exhausted all other reasonable possibilities prior to filing this action.  Neither the laptop nor its records have been produced, and CCBOER now asserts the laptop is not now and never has been in its possession, custody, or control. (Doc. 32 at 7). The available evidence is inconsistent with CCBOER's representations.

Hoping to shed light on this issue, Plaintiffs asked CCBOER to obtain declarations from three persons who would likely have information regarding the provenance, location, and contents of the laptop: Tony Rowell (County Attorney and Hall Booth Smith ("HBS") partner), Wesley Vickers (Coffee County manager), and Charles Dial (IT contractor).  As to CCBOER's response brief reflects (Doc. 32-5 at 3), CGG's counsel asked CCBOER counsel to obtain declarations from those agents of the CCBOER addressing the following matters:

--whether the county had purchased (or reimbursed the cost of) such a laptop;

--their knowledge of whether Ms. Hampton used such a laptop in her work;

--the supporting facts behind the 5/22/23 GBI email asserting that Mr. Rowell stated in September 2022 that there was a laptop that Misty used, but he was not prepared to produce it;

--whether they have ever seen the laptop used by Ms. Hampton or had it in their possession, custody, or control;

--whether they know of anyone who has reportedly had possession or control or custody of the laptop since Mr. Barnes departure;

--the efforts to locate the laptop since the subpoenas were served in mid-2022, including identifying the individuals who have been asked about the potential whereabouts of the laptop and its use;

--their knowledge of whether Mr. Dial's company ever worked with the laptop, and if so when and what work was performed;

--information gathered in their search for the laptop that evidences who may have last seen or used the laptop;

--any information they have learned about the potential contents of the laptop.

Upon receiving the request for declarations, rather than request the information CGG sought, CCBOER contends it "requested that Charles Dial, Anthony Rowell, and Wesley Vickers provide declarations as to their knowledge of the ownership and current location of the Silver Laptop." *See* CCBOER Response, p. 6.  Sadly, that representation of the scope of the

request is not true. CCBOER's counsel did nothing more than advise Dial, Rowell and Vickers of a very narrow topic of the request for declarations made *by Plaintiff*. CCBOER did not request that their agents comply with the request or provide any assistance at all. Indeed, counsel would have to strain to be less enthusiastic on the subject of providing assistance. If the "request" directed to the proposed declarants is representative of the other efforts to locate the laptop or information concerning it, the lack of results is hardly surprising.

Given the potential probative value of the ESI evidence that may be resident on the laptop, Plaintiffs seek an Order from the Court compelling the cooperation of Dial, Rowell, and Vickers. Specifically, Plaintiffs ask that the Court permit Plaintiffs to depose those agents of CCBOER. Plaintiffs sought to discover what Dial, Rowell, and Vickers each knew in an accommodating and convenient manner, and they declined to assist. This should no longer be a voluntary exercise, particularly given that CCBOER also withheld responsive non-privileged communications with these individuals in response to the two Plaintiffs' subpoenas.

## FACTUAL BACKGROUND

### A. Election Office Laptop Existence and Use -2021

Former Election Director Misty Hampton used what has been described as a silver laptop in addition to her office Desktop in carrying out her CCBOER duties. Plaintiffs have long sought records from both computers, serving Open Records requests in March 2022 and subpoenas in June and July 2022 and June 2023 follow up on the subpoenas. Plaintiff CGG became aware of Ms. Hampton's election-related use of the laptop by April 2022 and specifically asked for responsive records on the laptop. By April 20, 2022, CGG had already begun to challenge CCBOER's assertions that Ms. Hampton did not use a "county-issued" laptop.

The challenges continued unresolved through the close of discovery and into June 2023, when Plaintiffs presented CCBOER evidence of security video footage of Hampton's use of a laptop in performing CCBOER work. (Doc. 1-11) (CCBOER had withheld security video footage from Plaintiffs

until September 16 (Doc. 1-22 at 3) after the September 1, 2022 Rule 30(b)(6) deposition.)[1]

After the video revealed the existence of the laptop, CCBOER declared it would answer no more questions about the missing laptop and changed its position from the assertion that there was never any laptop to claim that *after* Hampton's employment, the laptop was not in CCBOER's possession or control.   (Doc. 1-12).

The missing laptop has been the subject of considerable debate for nineteen (19) months, including during the recent CCBOER public meeting December 5, 2023. During that meeting, Ms. Ernestine Thomas-Clarke, a CCBOER member since 2015, stated that she had personal knowledge that Ms. Hampton used the silver laptop at polling place for voter registration

---

[1] CCBOER declares in footnote 1 of its Response that there was nothing nefarious in the delayed production of the video recordings of the election breach activities.  CCBOER does not bother to explain, however, why for months CCBEOR and its counsel denied the existence of the videos, withheld the exterior entrance videos until the eve of CCBOER's Rule 30(b)(6) depositions, and produced the interior videos 15 days after the deposition. An explanation would seem to be in order, as the facts standing unexplained certainly appear to suggest less than straightforward compliance.

issues and in off-site training. Ms. Thomas-Clarke further noted that she believed personal voter information was on the laptop.[2]  The laptop may also have contained a photo voter ID application Ms. Hampton and election staff routinely used to create picture IDs for voters who did not have a driver's license.

Despite the recent public statements of its member, Ms. Thomas-Clarke, and James' Barnes' sworn testimony that a gray laptop was in the Election Supervisor's office in April 2021 when he took office, (Exh. 1, Barnes Tr. 56:10-57:5), CCBOER still maintains the position that the laptop may have been Ms. Hampton's personal property and questions the relevance of the potentially responsive records on it. Ignoring the public statement of its board member the day before filing the Response Brief, Barnes's sworn testimony, information provided by Ms. Hampton's attorney (Exh. 2), and the photographic evidence of its use (Doc. 1-11 at 4-6), CCBOER insists there

---

[2] Dec. 5, 2023 CCBOER Meeting video timestamp 1:07:00. It would have been illegal for Ms. Hampton to store private voter information files on a personal computer and remove it from county custody.

is *no* evidence that the laptop in question has ever been in the possession, custody, or control of the CCBOER. (Doc 32 at 7)

B. Relevance of the Missing Laptop's Records

CCBOER argues that Plaintiffs have not proven there is any relevant evidence or responsive records on the laptop.  This, of course, misses the point entirely. If parties had to prove the existence of certain evidence before being allowed to pursue it in discovery, very little would ever be uncovered through the discovery process. If Plaintiffs knew the contents of the missing laptop Ms. Hampton used, this aspect of the Motion to Compel would be unnecessary.  While Plaintiffs may not know specifically what data is on the laptop, Plaintiff's search for relevant records is predicated upon reason and knowledge, underscored by newly available information.

For example, the GBI report contains references to two Yahoo personal email accounts belonging to Ms. Hampton, which were used for some communications with certain individuals involved in the Coffee County election system breaches, including Alex Cruce (Exh. 3), Scott Hall and Jim Penrose (Exh. 4). Those emails do not appear to exist on the GBI desktop

image in Hampton's official county account, but those communications or related documents could reside on the laptop.

Plaintiffs are also aware through discovery efforts that Ms. Hampton began using the encrypted application known as "Signal" to communicate with some individuals involved in the breaches. (Exh. 5) The Signal application was not installed on her desktop computer but may have been installed on the laptop computer where Ms. Hampton's breach-related messages could potentially be archived.

Election-related documents shared with those involved in the breaches could be present on the laptop. Ms. Hampton claims to have given Jeffrey Lenberg, who allegedly tampered with the voting system, the seven (7) days he spent in the CCBOER office, files on a thumb drive to fulfill his open records requests. (Exh. 6) Those files could have been prepared for transfer using the laptop.  Without the ability to access the laptop, Plaintiffs have less than the full picture of relevant facts *Curling* case with respect to Coffee breach activities.

C. <u>Conflicting Information Concerning the Laptop</u>

There is considerable tangled and confusing information concerning the use and location of the laptop. To assist the Court in evaluating the relief they seek, Plaintiffs submit the following abbreviated timeline:

- In 2020 and 2021, Hampton used a "silver" laptop for election related activities, including voter photo ID creation and polling place activities.

- On February 22, 2021 security video recorded Hampton using a silver/gray laptop in the main office area. (Doc. 1-11 at 4-6)

- On February 25, 2021, Hampton was terminated by CCBOER. The laptop that she used was a county asset, according to her attorney Jonathan Miller. (Exh. 2)

- From April 1, 2021, until early December 2021, a gray HP laptop was maintained in Election Supervisor Barnes's office, per his testimony. (Exh. 1) However, laptop was not usable because Barnes had no credentials to access its contents, although he could power it on.

- From approximately May, 2021, until early Dec. 2021, an old unused Toshiba laptop [3] remained in the Election Office conference room. Barnes told the GBI that he left the old Toshiba laptop in the conference room and never took it to anyone else in the county. The Toshiba laptop had no power cord and could not be powered on. (Exh. 7)

- Between February and April 2021, according to the GBI report, Wesley Vickers obtained a laptop from a source he does not recall, and placed it in his safe where it remained until June 2023, which means it could not be either the silver/gray laptop in Barnes office or the old laptop Barnes found and left in the conference room during his tenure through early December 2021. The GBI notes the potential conflict in the Barnes' and Vickers' statements about the possession of the old Toshiba laptop. (Exh. 8)

---

[3] To be clear, Plaintiffs have no discovery interest in the "old Toshiba laptop," or the "old Black Toshiba laptop," but include the references demonstrate how CCBOER has used obfuscation to confuse the issue. It is unclear whether there were one, two, or three old Toshiba laptops. Regardless, Plaintiffs are interested in a late model gray (likely HP) laptop used by Ms. Hampton and pictured in security video.

- In April 2022, CGG began making Open Records Requests for potential laptop records related to the suspected breaches. CCBOER counsel responded with repeated denials of the existence of such laptop records, stating there was no "record of a *county-issued* laptop" for Ms. Hampton's use. (June and July subpoenas also sought responsive laptop records.)

- On July 26, 2022, Rachel Roberts wrote to CCBOER counsel regarding the search for the laptop after receiving a subpoena. Ms. Roberts reported that she once found a laptop and gave it to the IT contractors. (Doc. 31-3) This would not have been the "old Black Toshiba" laptop, given that Vickers reports obtaining the old Black Toshiba laptop between February and April 2021, (Exh. 8) prior to Ms. Roberts's employment.

- On May 22,2023, the GBI requested the production of the Hampton laptop not previously produced nine (9) months earlier in September 2022. (Doc. 1-13 at 2) CCBOER counsel does not address the laptop that Hampton actually *used*, but instead diverts the communication to an "old Toshiba laptop," too old to have been used by Hampton.  The GBI apparently then ceased asking for production of the laptop Ms. Hampton actually used and focused on the old Toshiba laptop. (Exh. 8)

12

- On June 7. 2023 CGG's counsel sought information based on the GBI email (Doc. 1-11.) and was told that CCBOER will answer no further questions about the laptop. (Doc. 1-12 at 2)

- On June 12, 2023, CCBOER permitted the GBI to take possession of the Election Office desktop computer, preserving only a narrow band of selected records, despite involving Herzog, Wesley Vickers and an IT contractor in the records retention decision-making, CCBOER thereby lost control of even more responsive records.

- June 12, 2023, the GBI reports it obtained a "black Toshiba" laptop from Wesley Vickers and that, upon testing it, determined it had not been used since 2015.  (Exh. 9)

After information concerning CCBOER emails and documents addressed by the GBI report became available in early October 2023, Plaintiffs immediately and prudently took all reasonable steps to complete their *Curling* discovery that had been truncated by CCBOER's persistent and inaccurate claims that the Ms. Hampton's email records were permanently

lost.  The September 27, 2023 disclosure[4] of the infamous "written invitation" to breach the CCBOER election system attached to Ms. Hampton's 2:06 am January 1, 2021 email to Preston Haliburton (Exh. 14)[5] made it clear that CCBOER had not only failed to produce responsive emails but other related documents as well, that were created in Word, PDF, or Excel on a computer used by Ms. Hampton.

This action reasonably and logically seeks to locate such relevant documents on the laptop also used by Ms. Hampton.  Indeed, Plaintiffs' recent search of the GBI desktop images did not locate the "written invitation" to Mr. Haliburton in the saved documents files other than the email attachment, suggesting Hampton created and saved the invitation itself on a different computer. Obviously, the laptop Ms. Hampton may have used when she was out of the office could contain relevant files related to the breach activity. Plaintiffs' goal in seeking the laptop are reasonable and

---

[4]  A photo image of the December 31, 2020 letter to Preston Haliburton from Misty Hampton was included on page 7 of Sidney Powell's General Demurrer and Motion to Dismiss filed September 27, 2023 *State of Georgia v. Donald Trump*, et al., No. 23SC188947 (Fulton Cty. Super. Ct).

[5] Plaintiffs located the email on the GBI image of the CCBOER desktop.

14

responsible to support their claims in *Curling*. CCBOER's goal in deflecting, delaying, appear to be part of a pattern of improperly withholding records.

D. <u>CCBOER's Inadequate Search Efforts</u>

The Court should take little comfort in the voluntary search efforts put forth by CCBOER even after the initiation of this case. As noted, no declarations have been forthcoming from key individuals who were in a position to know about the use and history of the control of the laptop. CCBOER's "request" for declarations bore a striking resemblance to a man sentenced to hang shopping for rope.  That raises questions about the sincerity of the CCBOER's attempt to locate, gather, and disclose information about the laptop and its contents.

The minimal efforts made by CCBOER to actually locate the laptop or its records or provide information on the history is alarmingly clear in the CCBOER counsel's declarations. (Doc. 32-1, 32-2)  It is clear that CCBOER though its counsel has not and will not voluntarily engage in robust and vigorous search to obtain responsive records on the laptop. Given the apparent lack of interest in seeing the laptop surface, a Court order requiring additional searches would likely be futile.  Instead, Plaintiffs seek the Court's

permission to take limited scope depositions of three individuals with likely personal knowledge of the laptop and its records.

E. <u>CCBOER's Chronic History of "Lost" Records</u>

Throughout discovery related to the Coffee County election system breaches in *Curling*, Plaintiffs encountered a virtual "Bermuda Triangle" for important public records:

(1) CCBOER claimed for 30 months that Hampton's emails were "permanently lost;"

(2) the Election Management Server, the "central brain" and records repository for the voting system, was seized by the Secretary of State in June 2021 with no chain of custody forms or court order, and CCBOER improperly relinquished their only copy of electronic election records for 2020 through June 2021, effectively permanently losing access to all such public election records;

(3) damning video security footage recording individuals involved in breach activities over the course of eight (8) days was, for six (6) months, declared non-existent and "over-written" in response to Plaintiffs' requests until the GBI demanded the videos of CCBOER;

(4) the laptop Hampton used was "lost;"

(5) some CCBOER individual board members appear not to have preserved official documents (Exh. 10 McCullough email; Exh. 11 Stone email) CCBOER member Andy Thomas, who joined the Board on January 1, 2021, misrepresented board service dates[6] in response to multiple official inquiries for documents (Exhs. 12, 13) and information, even telling the GBI that he was not acquainted with Misty Hampton or fellow board member Eric Chaney, (Exh. 13) possibly to avoid producing documents or providing testimony.

(6) in June 2023, under the supervision of Herzog, Vickers, and Dial, CCBOER permitted the GBI to take its only copy of almost all historical records on the Election Office desktop computer, choosing to preserve only a limited number of records, putting thousands of important records out of

_____

[6] Mr. Thomas joined the CCBOER January 1, 2021, participated in the January 5, 2021 runoff ballot counting, and attended monthly 2021 and 2022 board meetings.  However, he has reportedly stated multiple times that he was not on the board during the January 2021 breach period and did not join the board until 2022.

reach, including over 1,000 records responsive to Plaintiffs' subpoenas  by Plaintiffs' experts estimates; and

(7) Hall Booth Smith claimed loss of CCBOER records prior to April 2021 in a cyber attack (Exh. 15).

At some point, long passed by now, CCBOER's failure to retain key election records can no longer be chalked up to bad luck and unintentional error. To date, CCBOER and its agents have been rewarded since early 2021 for "losing" such records and fighting access to others. This non-compliance should not escape accountability, but production of urgently needed records must first occur, given the Plaintiffs' pending January 9, 2024 trial.

CCBOER does not make any legal argument other than it must possess or control documents to be compelled to produce them, which is true.  The bottom line here is that there has been an avalanche of information regarding the Coffee County breaches since discovery closed in *Curling.*  Much of that information strongly suggests there has been some level of cover-up regarding the breaches, and Plaintiffs have never been afforded an opportunity to question any witnesses regarding any of those details.  At minimum, Plaintiff respectfully submit that they should be allowed to

question the persons who most likely can provide meaningful information about the provenance, use, and whereabouts of the laptop used by Ms. Hampton.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order from this Court permitting Plaintiffs' prompt depositions, limited to three hours each, of County Attorney Rowell, County Manager Vickers, and IT Contractor Dial focused on their personal knowledge of the laptop Ms. Hampton used in connection with her election-related duties, and the electronic records stored or previously stored on the laptop.

Respectfully submitted this 13th day of December, 2023.

*/s/ Cary Ichter*
CARY ICHTER, *Pro Hac Vice*
Georgia Bar No. 382515
cichter@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate Parkway North, SE
Suite 860
Atlanta, Georgia 30339
(404) 869-7600

and

/s/ Bruce P. Brown
BRUCE P. BROWN, *Pro Hac Vice*
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorneys for Coalition for Good Governance*

and

/s/ Halsey G. Knapp, Jr.
HALSEY G. KNAPP, JR.
Georgia Bar No. 425320
hknapp@khlawfirm.com
**KREVOLIN & HORST, LLC**
1201 West Peachtree Street, NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700

*Attorneys for Donna Curling*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2023, a copy of the foregoing **Plaintiffs' Reply in Support of Motion for Production of "Silver Laptop" Records** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

*/s/ Cary Ichter*
Cary Ichter, Pro Hac Vice
Georgia Bar No. 382515
cichter@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate N. Pkwy, SE
Suite 860
Atlanta, Georgia 30339
Tel.: 404.869.7600
Fax: 404.602-0037

*Counsel for Plaintiff Coalition for Good Governance*