# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE and DONNA CURLING,**<br><br>Plaintiffs,<br><br>v.<br><br>**COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,**<br><br>Defendant. | Civil Action No. 5:23-mc-00001-LGW-BWC<br><br>In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division, Civil Action File No. 1:17-CV-2989-AT |

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE BRIEF ON THE ISSUE OF DOCUMENTS IN THE POSSESSION OF THIRD PARTIES

Defendant COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION ("CCBOER" or the "Board") ignores or minimizes the facts of the parties' 'course of conduct' and, more importantly, directly applicable law requiring them to obtain responsive documents in their possession, custody, or control – including those documents controlled or held by their agents and for which privilege has been waived or never applied in the first place. There is no good-faith interpretation of Rule 26 or Rule 45 that permits the Board to disclaim any responsibility to search documents concerning the matters central to the subpoenas and Plaintiffs' Motion alike because they

1

handed them off to lawful agents then, and now, under their direct control. This game of keep-away is better suited in the schoolyard than in two federal courts.

The Board should be required to search, immediately, for responsive documents within its *control* – including those held by its counsel and its contractor working on these very issues of concern – and to produce those just as they would any other in their own files. Time is of the essence; Plaintiffs' pre-trial conference in the underlying *Curling* litigation is this Friday, December 15.

## I. STANDARDS OF LAW

Motions to compel discovery are committed to the sound discretion of the trial court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "In short, a district court may limit discovery when the burden of compliance outweighs its likely benefit or relevance." *Pinehaven Plantation Properties, LLC v. Mountcastle Fam. LLC*, No. 1:12-CV-62 WLS, 2013 WL 6734117, at *1 (M.D. Ga. Dec. 19, 2013). A failure to apply the correct legal standard to motion to compel discovery, however, is a mistake of law constituting abuse of discretion. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

The Eleventh Circuit "broadly construe[s] 'control' for purposes of discovery as 'the legal right to obtain the documents requested upon demand.' [] A 'legal right to obtain' does not require actual possession or legal control." *Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 2023 WL 1794391, at *3 (11th Cir. Feb. 7, 2023) (quoting *Sergeeva v. Tripleton Intern. Ltd.*, 834 F. 3d 1194, 1201 & n.6 (11th Cir. 2016)). That a third party – for example, an agent of the respondent – has actual possession of responsive documents does not in itself negate the respondent's control over them, because the respondent has a legal right to obtain those documents and the power to do so.

Courts in the Eleventh Circuit apply this "practical ability" test for obtaining documents upon demand to determine whether documents are under the respondent's control. *Sergeeva*, 834 F. 3d at 1201-02 (11th Cir. 2016) (affirming district court determining legal right to obtain documents requested upon demand established where affiliated parties have actually shared responsive information and documents in ordinary course); *Infinite Energy, Inc. v. Chang*, No. 1:08-CV-1275-TCB-RGV, 2008 WL 11320142, at *7 (N.D. Ga. May 30, 2008) (granting motion to compel production from subpoena respondent who "has not shown that she lacks the legal authority

or practical ability to obtain communications and documents that she created, accessed, reviewed, and relied upon, and documents related thereto" in employer's ESI); *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470-71 (S.D. Fla. 2011) (applying "practical ability" test).

## II.   ARGUMENT

The Board submits five types of argument as to why it has not searched documents (and why the Court should not order it to search documents) in the possession of the Board's counsel at Hall Booth Smith ("HBS") (including of Anthony Rowell, the Board's attorney since at least 2020) or of Charles Dial, the longtime information technology contractor serving the Board since at least 2020.

First, Plaintiffs' request that the Board search for responsive documents in the possession of these third parties was raised too late; second, Plaintiffs' request was not preceded by meaningful conferrals with the Board's counsel; third, Plaintiffs' request might include privileged or protected documents; fourth, Plaintiffs' request is irrelevant, cumulative, duplicative, or otherwise untimely; and fifth, Plaintiffs' request imposes an undue and/or disproportionate burden on the Board. Doc. 33 at 3-9. Each of these arguments lacks sufficient merit to warrant denying Plaintiffs' motion

4

to compel generally and its request concerning the searching for and production of responsive documents in the possession of these non-Board parties specifically.

### A. Plaintiffs Did Not Need to Micromanage the Board's Anticipated Response to Its Motion to Compel by Specifying Its Own Agents Were Within Its Control

Plaintiffs did not seek an order in their Motion expressly instructing the Board search documents in the possession of third parties. Doc. 33 at 2. Plaintiffs also did not serve subpoenas or requests on Mr. Dial, Mr. Dial's company, HBS, or Mr. Rowell. *Id.* at 1 n.1. The Board further takes issue with Plaintiffs "rais[ing] the concept of searching any third party's records" at a status conference with the Court, rather than in their initial Motion. *Id.* In the Board's telling, then, Plaintiffs' request that the Board comply with the subpoena by seeking documents in the possession of third parties, regardless of whether they are in control of the Board) is a dead letter. *Id.* at 3-4.

None of these complaints matter. Plaintiffs did not need to take any of these measures until faced once again with the Board's recalcitrance. Documents are in the control of the Board if the Board has the legal right to demand them, whether or not a third party actually holds them. There was

5

and is no need for duplicative subpoenas to HBS, Mr. Dial, Mr. Dial's company, or any other party from which the Board has the practical ability and legal right to obtain responsive documents.[1]

Significantly, at no point has the Board disclaimed any lawful authority or practical ability to have Mr. Dial or HBS (and at all times material to the subpoena Plaintiffs have sought to enforce, Board attorney Mr. Rowell, specifically) search for responsive documents. In *Gonzalez* and *Sergeeva,* the Eleventh Circuit Court of Appeal had little trouble determining that affiliated corporate entities who "actually shared responsive information and documents in the normal course of their business dealings" had a legal right to obtain responsive documents from one another to comply with their discovery obligations under the Federal Rules. *Gonzalez*, 2023 WL 1794391 at *3-*4; *Sergeeva,* 834 F.3d 1194, 1201-02.

The Board's reliance on *Bianchi* to the contrary is inapposite. There, the movant claimed it had no responses to requests for production and interrogatories at all, waiting until its reply (and the receipt of those responses two weeks after filing the motion) to question their sufficiency.

---

[1] Nor is there any need for the particularly aggressive and expensive maneuver of serving a subpoena duces tecum on a law firm.

*Bianchi v. Pioneer Credit Recovery Inc.,* 2014 WL 11638537, at *1 (S.D. Fla. Jan. 2, 2014). Here, Plaintiffs do not seek different relief for its motion – they need the Board to execute its existing discovery obligations to provide the relief requested in the first place: the documents demanded at least 15 months ago.

The degree of control the Board exercises over its own elections counsel, on the one hand, and the contractor actually responsible for examining its election equipment and security, on the other, are if anything stronger than those found sufficient by the Eleventh Circuit. And the Board does not dispute those relationships existed in 2020 and 2021, when the breaches occurred; in 2022, when Plaintiffs first served their subpoenas and engaged in copious negotiations to obtain what information they could over the Board's strenuous objections; and exist today, as the Board continues to resist obtaining documents long lawfully demanded. To state the obvious, the Board's attorneys work for it, not the other way around. There is no evidence to the contrary as to Mr. Dial.

The documents at issue were created, prepared, sent, or received in the course of their respective work. The practical ability to obtain them unquestionably exists; only the Board's will is lacking. And as Plaintiffs have shown, responsive documents exist as well. (See Docs. 31-1, 31-2, 31-3, 31-3,

7

31-5, 31-12) The Board should immediately demand to obtain and search responsive documents in the possession of these non-Board parties.

> **B.  The Parties Meaningfully Conferred Prior to Filing the Motion to Compel and to Requesting Searches of Documents Within the Board's Control Possessed by Others.**

The Board again claims the parties have not conferred in good faith on this issue of the Board searching for documents in the possession of HBS, Mr. Dial, or other third parties from whom the Board has the legal right and practical ability to demand responsive documents, thus requiring denial of Plaintiffs' request. Doc. 33 at 4. This is, again, nonsense. The parties conferred about the motion to compel prior to Plaintiffs' filing. E.g., Doc. 31 at 16-17 & Ex. B. The parties have continued to confer about this very issue, both separately as ordered by the Court and before the very patient Court itself. Docs. 22, 23, 26, 28. Plaintiffs have conferred in good faith under applicable rules and consistent with their professional obligations.

To be clear, spending resources on this ancillary matter in the midst of trial preparation is not Plaintiffs' desire. They fervently wish that the Board had been convinced by conferrals with Plaintiffs' counsel to fully comply with its discovery obligations over a year ago, or over a month ago, or right

8

now. *See also* Doc. 1 at 6 ("Movants have exhausted every other option to secure compliance with their Subpoenas."). Yet the Board has not complied, which is why Plaintiffs continue to respectfully seek the Court's assistance on an expedited basis as the time to prepare for trial dwindles.

> **C. The Board Cannot Claim a Blanket Privilege to Avoid Searching Its Communications with Its Counsel at All.**

In passing, the Board's asserts that "*[a]ny* communications between the Board (including its representatives, agents, and employees)]"and HBS are covered by the attorney-client privilege or work product doctrine. Doc. 33 at 5 n.2. This is simply wrong and warrants further response.

Plaintiffs are sensitive to the need to protect a represented entity's need to seek and receive legal advice through frank communications with its attorney without fear that those conversations will later be disclosed in discovery. *See, e.g., Marriott Corp. v. Am. Academy of Psychotherapists, Inc.*, 277 S.E.2d 785 (1981) (attorney-client privilege encourages open and free communication through protection of disclosure through subsequent discovery). Even so, in Georgia the privilege is narrowly construed, not expansively so. *Bryant v. State*, 651 S.E.2d 718 (Ga. 2007). Further, in this Circuit, a party must conduct a diligent, good-faith search for non-privileged

9

responsive documents even within communications with counsel. *Kemper v. Equity Ins. Co.*, No. 1:15-CV-2961-MLB, 2021 WL 4134058, at *2-*3 (N.D. Ga. May 27, 2021). "One cannot properly claim the protection of the attorney-client privilege by simply copying an attorney on an email." *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1393 (N.D. Ga. 2017).

It follows that a blanket claim of privilege or work product to "any communications" is not available to the Board. *Id.* (citing cases). As described in prior of Plaintiffs' filings, it is the Board's burden to claim that specific communications between the Board and its agents on the one hand and HBS attorneys or their staff on the other are confidential and made for the purpose of obtaining legal advice. Doc. 31 at 1-5 (describing failure under Fed. R. Civ. P. 26(b) of Board to provide sufficient information to evaluate privilege claims). This is no reason not to conduct a search at all, much less over the course of 18 months (and counting). And it is not as though HBS served only as litigation counsel for the Board; they served as the Board's open records officer, for example.[2] *See* Doc. 31 at 21-23.

---

[2] As an aside, the Board has produced no documents in the past three weeks, even after the parties have made mutual efforts to narrow search terms.

**D. Plaintiffs' Request That the Board Search Documents within Their Control and in the Possession of Third Parties is Reasonable and Proportional to the Needs of the Underlying Case.**

**1. The Requests are Not Cumulative or Duplicative.**

The argument that documents in the possession of HBS and Mr. Dial, in particular, are "unnecessarily cumulative or duplicative" depends on the assumption that Plaintiffs have similar information at hand. Doc. 33 at 6-7. But of course they do not, because the Board has only made productions in drips and drabs since first receiving a subpoena in June 2022, and has quibbled over when, where, how, whether, and to what degree to search for responsive documents since. For example, CCBOER counsel declined to provide further responses to Plaintiffs concerning the missing laptop. (Doc. 1-12 at 2) If Plaintiffs could obtain trial-critical communications responsive to the subpoenas generally and to the narrowed requests achieved through conferral related to this ancillary litigation by less intrusive means, they would have.[3] And make no mistake, the documents are critical to their

---

[3] Indeed, they already have done so through interviews and open records requests as well as the GBI image, as they demonstrated to Board counsel and to this Court. E.g., (Doc. 31 at 6, Text messages obtained through ORR; Doc. 34-14, "Written invitation" to breachers by Hampton (obtained from

preparations for trial, as the *Curling* court has acknowledged. *Curling,* Doc. 1705 at 3 & n.3, 49-69 (order denying summary judgment; providing context for "the serious security issues and long-term ramifications surrounding" events and investigations central to the demanded documents) (filed as Doc. 33, Ex. A); *see also infra*.

The statement that any "requested information would be with this 'cast of characters'" cited in the summary judgment denial order, Doc. 33 at 7, ignores Plaintiffs' longstanding need to obtain documents *from the Board and its agents* directly relevant to Curling defendants' failure to protect Plaintiffs' constitutional rights. The Board held and holds legal powers and responsibilities distinct from these other discovery sources, from which Plaintiffs have already obtained information at great expense themselves. It is a red herring to point to discovery Plaintiffs have already obtained when the Board is resisting any and all efforts to timely comply with these subpoenas and the motion to compel alike.

---

GBI image; Doc. 30-3, Email concerning the server password (obtained from GBI image.)

The Board characterizes this action as a parallel investigation of the Coffee County breaches. Specifically, the Board seems to think the relevant question Plaintiffs pose is whether HBS and/or Mr. Dial (or any party other than the Board) was "involved in the data breach in Coffee County." Doc. 33 at 7-8 ("where or not [HBS], Charles Dial, or any other third party *was responsible [for] or involved in* the Coffee County data breaches is irrelevant to Plaintiffs' claims") (emphasis added). But this is the wrong frame and the wrong question. Even if proving that were Plaintiffs' purpose in moving to compel production of responsive documents, that would have no bearing on the Board's obligation to comply with the Federal Rules of Civil Procedure.

The correct question is whether the Board has control over responsive documents held by third parties like HBS and its attorneys and Mr. Dial, with whom it is undisputedly still in contact and over whom it still exercises control. On the undisputed facts at hand, it does. Thus, a search is required.

### 2. Plaintiffs' Request is Not Untimely

The Board gestures again at an untimeliness argument. Doc. 33 at 7. This argument remains tired. Plaintiffs have already addressed why they filed their motion to compel when they did and after conferring in good faith with Board counsel. (Doc. 31 at 16-20). Plaintiffs' good faith attempt to

13

conduct discovery while it did not know what the Board had withheld, because the Board never supplied compliant privilege logs or disclosed documents it did not produce in response to discovery efforts, should not be held against it by denying the motion to compel they eventually concluded they needed to bring to prepare for trial. If they could have accessed the information they need on a speedier timeline or through an easier and less expensive path, they would have.

> 3. **The Request to Search Documents within the Board's Control and in the Possession of Others Imposes No Undue Burden and is Proportional to the Needs of the Underlying Case.**

As to burden, federal discovery obligations ask little more of the Board than to search, review and produce documents in their control, whether in their own possession or that of their agents. The additional burden amounts to an email making the ask and sending a secured transfer link. As the Court is aware, the Secretary of State and State Election Board members have made these arguments, too. *Curling*, Doc. 1703 at 3-4 ("Defendants … do not have the emails from Ms. Hampton's computer. … Plaintiffs … have provided no authority holding that one state agency may be compelled by a federal court to request documents from another state agency to facilitate a plaintiff's

discovery.") (attached as Exhibit A). The *Curling* court found them to lack merit. *Curling*, Doc. 1704 at 2 (ordering Secretary and Board to request from GBI by the following day, *inter alia*, 28 months' worth of emails collected from Hampton's computer, which had "discernable value [to] the parties," to facilitate plaintiffs' discovery) (attached as Exhibit B).

While standards for non-party discovery do require a stronger showing of relevance, *Pinehaven,* 2013 WL 6734117 at *2, that is not seriously in question here. Far from "at most a tertiary issue" in the underlying case, Doc. 33 at 9, the *Curling* court appears to conceive that the Coffee County breaches are quite relevant to Plaintiffs' claims at trial:

> And critically, the ongoing revelations regarding the January 2021 Coffee County election equipment breach lend serious support to Plaintiffs' argument that the current configuration of Georgia's BMD voting system presents a substantial risk that CGG members' votes will not be counted as cast."). For some time, the State Defendants' principal response to the issues raised in the 2021 Halderman Report was that Dr. Halderman was only able to simulate attacks on the State's election system because he had unfettered access to the equipment. And they maintained that malicious actors would be unable to replicate any of those attacks because, unlike Dr. Halderman, they could not obtain access to the equipment. Plaintiffs persuasively contend that the Coffee County breach undermines that argument.

*Curling*, Doc. 1705 at 92 (filed as Doc. 33, Ex. A) (citations omitted). Relevance is apparent.

The Board also did not submit evidence in the form of a declaration from Mr. Rowell or Mr. Dial, or in any other form, evidencing with specificity reasons why requesting and searching for documents that may (or may not!) be held by third parties alongside the searches of Board documents they presumably are already running would pose a burden, much less an undue burden, in light of the importance of the issue at stake. *See Gamache v. Hogue*, 559 F. Supp. 3d 1344, 1355 (M.D. Ga. 2022) ("[A] party seeking to resist discovery on [proportionality] ground[s] … bears the burden of making specific objection[s] and showing that discovery fails [the] proportionality calculation by coming forward with specific information to address" factors listed under Fed. R. Civ. P. 26(b)(1)) (quoting *Herrera-Velazquez v. Plantation Sweets, Inc.*, No. CV614-127, 2016 WL 183058 at *4 n.6 (S.D. Ga. Jan. 14, 2016)). A bare assertion of disproportionality is insufficient.

### III. CONCLUSION

A child asked to get ready for school claims he cannot put his shoes on since he does not have them. This is because, however, he threw them into his sister's room during a spat the previous evening. He has the right and

ability to demand his shoes when compelled to produce them; he cannot simply refuse to ask her to look or to help. A failure even to try to obtain his shoes is simply a failure to fulfill his obligation to comply with the demand. So too here.

Plaintiffs understand the Board is tired of responding to various document requests concerning the breaches of the election equipment entrusted to its care, much less on an expedited schedule. Even so, given:

(1)  the strong importance of the matter to Plaintiffs' claims at trial scheduled for next month;

(2)  the Board's recalcitrance over time in producing clearly responsive documents as evidenced by public records requests and other releases post-dating the compliance deadlines for the subpoenas;

(3)  the relative ease and light burden of requesting documents to search from agents performing clearly material services for the Board and who remain within its control (in addition to those in its possession that the Board claims it continues to search); and

(4)  the directly applicable case law in this Circuit requiring the Board to make those requests where, as here, it has the legal right and practical ability to do so,

17

Plaintiffs respectfully submit there is no undue burden here. It is not a close question. Any difficulties of compliance with its longstanding obligations under federal rules are of the Board's own making.

Accordingly, Plaintiffs respectfully request that the Court include as part of any order granting its motion to compel a command that the Board, on an expedited if not immediate basis, also search for and produce responsive non-privileged documents within its control, including without limitation those in the possession of Hall Booth Smith or its attorneys, including Anthony Rowell, Esq., and any other attorneys assigned to the CCBOER engagement, and of Charles Dial and his IT company. Plaintiffs further respectfully request any other relief the Court finds fitting and proper.

Respectfully submitted this 13th day of December 2023.

*/s/ Cary Ichter*
CARY ICHTER
Georgia Bar No. 382515
cichter@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate Parkway North, SE
Suite 860
Atlanta, Georgia 30339
(404) 869-7600

*/s/ Bruce P. Brown*
BRUCE P. BROWN
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorneys for Coalition for Good Governance*

*/s/ Halsey G. Knapp, Jr.*
HALSEY G. KNAPP, JR.
Georgia Bar No. 425320
hknapp@khlawfirm.com
**KREVOLIN & HORST, LLC**
1201 West Peachtree Street, NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700

*Attorneys for Donna Curling*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2023, I caused a copy of the foregoing **PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE BRIEF ON THE ISSUE OF DOCUMENTS IN THE POSSESSION OF THIRD PARTIES** to be served on Defendant Coffee County Board of Elections and Registration by sending a PDF of same via electronic mail to its counsel as follows:

Jennifer Dorminey Herzog, Esq. (jherzog@hallboothsmith.com)

Benjamin M. Perkins, Esq. (bperkins@olivermaner.com)

> */s/ Cary Ichter*
> Cary Ichter
> Georgia Bar No. 382515
> cichter@ichterdavis.com
> **ICHTER DAVIS LLC**
> 400 Interstate Parkway North, SE
> Suite 860
> Atlanta, Georgia 30339
> Tel.: 404.869.7600
> Fax: 404.602-0037
>
> *Counsel for Plaintiff Coalition for Good Governance*