IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE, and DONNA CURLING, <br><br> Plaintiffs, <br><br> v. <br><br> COFFEE COUNTY BOARD OF ELECTIONS & REGISTRATION, <br><br> Defendant. | CASE NO.: 5:23-mc-1 |

### O R D E R

Plaintiffs filed a Motion to Compel on October 24, 2023. Doc. 1. This Motion concerns two subpoenas issued in Curling v. Raffensperger, Civil Action No. 1:17-cv-2989 (N.D. Ga. filed Aug. 8, 2017), that were served on the Coffee County Board of Elections & Registration (the "Board of Elections"). The Motion is fully briefed and ripe for consideration. After careful consideration, I **GRANT in part** and **DENY in part** Plaintiffs' Motion to Compel.[1] Specifically:

1. I **DENY as moot** Plaintiffs' request for relief related to Misty Hampton's desktop computer.

2. I **DENY** Plaintiffs' request to depose Tony Rowell, Wesley Vickers, and Charles Dial about the location of Hampton's silver laptop computer.

---

[1] I explained during the status conferences in this matter my focus in resolving this dispute has been on determining what, if any, additional discovery materials must be produced. That focus was singularly based on the rapidly approaching trial in the Curling matter. Plaintiffs have expressly reserved the right to seek sanctions based on the Board of Elections' responses to its subpoenas. To the extent Plaintiffs seek sanctions from this Court related to the Board's conduct related to the two subpoenas at issue in the instant Motion, Plaintiffs must file a separate motion seeking sanctions within 30 days of the issuance of this Order. Any such motion must state in detail the legal and factual bases for the request, as well as the specific sanction sought.

3.   I **GRANT** Plaintiffs' request for the Board of Elections to provide a compliant privilege log.  I **ORDER** the Board of Elections to serve an itemized privilege log **on or before January 3, 2024**.  The privilege log shall describe each document the Board of Elections withheld in response to Plaintiffs' subpoenas based on privilege.  For each entry, the privilege log shall state the type of document withheld, the date it was created or sent, the author, the recipient, the privilege claimed, and the grounds for the privilege claimed without revealing the privileged information itself, consistent with Federal Rule of Civil Procedure 45(e)(2) and this Order.

4.   I **DENY** Plaintiffs' request for the Board of Elections to conduct additional searches for materials in the possession of third parties.

## BACKGROUND

The Motion currently before this Court concerns two subpoenas issued in Curling v. Raffensperger, (referred to here as the "Curling case" or the "underlying litigation"), a case pending in the District Court for the Northern District of Georgia.  Civil Action No. 1:17-cv-2989 (N.D. Ga. filed Aug. 8, 2017).  The Curling case concerns the design and implementation of Georgia's statewide electronic voting system.  See Order, Curling v. Raffensperger, Civil Action No. 1:17-cv-2989 (N.D. Ga. Nov. 10, 2023), ECF No. 1705 (order ruling on Defendants' motions for summary judgment).  The Curling case is scheduled for a bench trial starting on January 9, 2024.  The Coffee County Board of Elections & Registration is not a party to the Curling case, though Judge Amy Totenberg, the presiding judge in Curling, expressly authorized third-party subpoenas to obtain information about voting system breaches in Coffee County.  Doc. 1 at 9.

Plaintiffs served two subpoenas on the Board of Elections in the middle of 2022. Plaintiffs Donna Curling, Donna Price, and Jeffery Schoenberg (the "Curling Plaintiffs") served the first subpoena on June 15, 2022.  Doc. 1-2.  Plaintiff Coalition for Good Governance ("Coalition") served the second subpoena on July 25, 2022.  Doc. 1-1.  Both subpoenas request documents, including Board of Elections records, communications, and electronic files.  The

Curling Plaintiffs requested 16 categories of documents. Doc. 1-2 at 15–18. Coalition requested 50 categories of documents. Doc. 1-1 at 13–23. Plaintiffs and the Board of Elections began conferral immediately after the subpoenas were issued. See Docs. 1-10, 1-25.

The Board of Elections responded to the Curling Plaintiffs' subpoena August 1, 2022. See Doc. 25-2 at 3. The Board of Elections responded to Coalition's subpoena on August 26, 2022. Doc. 1-23. The Board of Elections included a privilege log of withheld material in its response to the Curling Plaintiffs' subpoena. Doc. 29 at 1–2; see also Doc. 25-2 at 2–3. The Board of Elections served an updated privilege log on August 26, 2022. Doc. 29 at 2.

Much of the present dispute concerns Plaintiffs' efforts to obtain documents related to Misty Hampton, the former Coffee County Elections Supervisor. Specifically, Plaintiffs sought, but were unable to obtain, emails that were sent and received by Hampton. Doc. 1 at 6–10. The Board of Elections stated Hampton's email records were no longer accessible because her employment ended on February 25, 2021, and the Board of Elections transferred Hampton's Microsoft 365 software user license to a new employee. Doc. 1-9 at 3. The Board of Elections further stated it could not recover Hampton's emails from the desktop computer Hampton used. Id. at 4. Plaintiffs also believed Hampton used a gray or silver laptop computer in her work for the Board, doc. 1-10 at 2, but, at this point, it is unclear who owned the laptop and no one has been able to locate the device.

While the Curling case was proceeding, the Georgia Bureau of Investigation ("GBI") began investigating the Coffee County election breach. The investigation ultimately led to a criminal prosecution in Fulton County Superior Court, in which Hampton was (and is) named as a Defendant. As part of its investigation, the GBI obtained and executed a search warrant that resulted in the GBI seizing Hampton's desktop computer from the Board of Elections on June

12, 2023. Doc. 1 at 13. Unlike the Board of Elections, the GBI was able to successfully recover many of Hampton's emails and other documents from the desktop computer. Plaintiffs learned about the recovery through filings in the criminal case on October 5, 2023. Id. at 12–13.

In their Motion to Compel, Plaintiffs ask the Court to compel the Board of Elections "(1) to make all reasonable efforts to obtain the records from the GBI, and (2) to conduct a thorough review of the records it continues to hold for additional responsive materials." Id. at 15. Plaintiffs also ask the Court to order the Board of Elections to provide a privilege log with detail about any records the Board of Elections withheld in response to the subpoenas. Id. at 18–20.

After the Motion to Compel, I ordered the parties to participate in several telephonic conferences in an effort to resolve or narrow the dispute. See Docs. 22, 23, 26, 28 (minutes entries for the status conferences of November 1, 15, 17, and 22, 2023). I stayed the Board of Elections' time to respond to the Motion to Compel while these conferences occurred. The parties submitted three interim status reports. Docs. 21, 24, 30. While the parties were able to resolve and narrow some aspects of the dispute through conferral, much of Plaintiffs' requests remain unresolved. Ultimately, I ordered additional briefing on discrete issues the parties could not resolve on their own.

Through the course of these proceedings, the parties have identified four specific issues the Court must resolve: (1) Plaintiffs' request for documents located on Misty Hampton's desktop computer; (2) Plaintiffs' request for documents located on Hampton's silver laptop; (3) the sufficiency of the Board of Elections' privilege log of withheld materials; and (4) Plaintiffs' request for the Board of Elections to conduct additional searches for responsive

4

materials, including internal communications and documents held by third parties. These issues are fully briefed and ripe for consideration.

## DISCUSSION

**I.      Misty Hampton's Desktop Computer**

Plaintiffs' initial Motion focused largely on Plaintiffs' desire to obtain emails and other documents contained on the desktop computer Misty Hampton used during her employment with the Board of Elections. That issue has been resolved.

As explained above, the GBI seized the desktop computer and obtained emails and other documents from the device. Judge Totenberg ordered the Secretary of State, a defendant in the underlying litigation, to request the image from the GBI. Order, Curling v. Raffensperger, Civil Action No. 1:17-cv-2989 (N.D. Ga. Nov. 6, 2023), ECF No. 1704. The Secretary of the State of Georgia produced a forensic image of the desktop computer directly to Plaintiffs on November 17, 2023. Plaintiffs confirmed during this Court's November 22, 2023 status conference they are not seeking any further relief from the Board of Elections related to the desktop computer.

Plaintiffs state they may need additional Court assistance if they encounter any corrupted or inaccessible files. Plaintiffs also contend the Board of Elections' initial search of the desktop computer for responsive files—before the GBI seized it—was inadequate and may warrant sanctions or remedial action. However, Plaintiffs do not seek any additional relief related to the desktop computer at this time. Accordingly, I **DENY as moot** Plaintiffs' request for relief related to Misty Hampton's desktop computer.

**II.     The Silver Laptop**

Plaintiffs argue the Board of Elections has not conducted an adequate search for a silver laptop computer Hampton used in connection with her official duties. Doc. 34. The Board

maintains it does not have the laptop. Plaintiffs ask the Court to order depositions of three individuals so Plaintiffs can inquire about those individuals' personal knowledge of the silver laptop: County Attorney Tony Rowell; Coffee County Manager Wesley Vickers; and Information Technology ("IT") Contractor Charles Dial. Id. at 19.

Plaintiffs provide a number of exhibits in an effort to show the Board of Elections has the silver laptop, despite the Board's representations. A security video shows Hampton working with a silver laptop in the Board's office on February 22, 2021. See Doc. 1-11. Hampton's counsel emailed Coalition's counsel on November 13, 2023, and said Hampton "confirmed it was a County computer used for identity purposes during elections." Doc. 34-2 at 2. Hampton's replacement, former Coffee County Elections Supervisor James Barnes, testified at a deposition he once found an "older model" gray laptop somewhere, apparently in the Board of Elections' office. Doc. 34-1. Plaintiffs state Rachel Roberts, a Board of Elections employee, once told Plaintiffs' counsel she (Roberts) found a laptop and gave it to unidentified information technology workers.[2] Doc. 34 at 12. Plaintiffs state a Board of Elections member recently stated at a public meeting she had personal knowledge of Hampton's silver laptop. Id. at 6–7.

In response, the Board of Elections contends it conducted a diligent search for the silver laptop and the device is not in its possession, custody, or control. Doc. 32. Counsel for the Board of Elections submitted a declaration in which he states unequivocally the Board of Elections does not have possession, custody, or control of the silver laptop. Doc. 32-1. Counsel describes significant efforts he made to search for the laptop. Counsel represents the Board of Elections reviewed its records and inventory and cannot locate the silver laptop. Counsel states

---

[2] Plaintiffs cite Document Number 31-3 to support this assertion. However, this is a citation to screenshots of text messages between Ryan Germany and Jennifer Herzog, not a correspondence involving Rachel Roberts.

6

he requested information about the silver laptop from several former and current Board of Elections' employees, though there is no indication any of those individuals responded to counsel's requests, only that counsel made the requests and were still unable to locate the laptop. See Docs. 32-1, 32-2.

Plaintiffs' request to conduct additional depositions is denied. While it is reasonable for Plaintiffs to want to investigate the silver laptop, the request for additional depositions is beyond the scope of the two subpoenas at issue in Plaintiffs' Motion. The two subpoenas at issue in Plaintiffs' Motion were directed exclusively to Coffee County Board of Elections and Registration and only sought the production of documents, information, or objects.[3] Docs. 1-1, 1-2. Plaintiffs' request to depose Rowell, Vickers, and Dial—individuals who are not Board of Elections' employees[4]—constitutes a request for entirely new discovery. The three individuals have not participated in the proceedings in this Court, and there is no indication those individuals have been served with any subpoenas for their deposition. Trial in the Curling case is imminent. Whether additional discovery should be permitted in that case is a matter that should be resolved by the judge presiding over that case. This Court will not extend the scope of the instant Motion to allow new discovery, directed at additional third parties, at this time. While Plaintiffs have articulated a reasonable basis for wanting to depose these individuals, such depositions are beyond the scope of the instant Motion. Therefore, the request to conduct these depositions is denied.

---

[3] It appears Plaintiffs also served subpoenas for depositions on the Board, but those subpoenas are not at issue in the instant Motion.

[4] At various times, Plaintiffs have described these individuals as "agents" of the Board. The Court has not made any determinations about the existence or extent of any agency relationship between these individuals and the Board. Even assuming for the sake of argument these individuals are agents of the Board, it would not change the analysis or conclusions stated here.

Plaintiffs do not articulate any other grounds for relief regarding the laptop. Requests for production are limited to items in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1). The Court cannot compel the production of items that do not exist or are not in the responding party's possession, custody, or control. Courts are generally permitted to rely on the representations of the responding party's counsel the responding party does not have possession, custody, or control of an item. See Hunter v. Corr. Corp. of Am., No. CV 314-035, 2015 WL 5042245, at *2 (S.D. Ga. Aug. 26, 2015) (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1372 (11th Cir. 1997)).

Plaintiffs have not sufficiently shown the Board of Elections has possession, custody, or control of the silver laptop computer. Plaintiffs' evidence shows Hampton, and possibly the Board of Elections, had possession of the laptop in the past, but Plaintiffs' evidence does not show the Board of Elections has possession, custody, or control of the silver laptop now. The recent, short email from Hampton's counsel and the limited statements from current and former Board of Elections' employees suggest the silver laptop might have belonged to the Board or some other County body and Hampton used the laptop in her official duties, but these statements do not speak to the present location of the device. Moreover, the Board's counsel has offered a declaration under penalty of perjury describing his unsuccessful efforts to search for and locate the device. Nothing Plaintiffs have presented undermines the Board's counsel's declaration. Additionally, Plaintiffs do not state the Board or its counsel should be ordered to take any additional steps to locate the laptop. Plaintiffs, instead, ask the Court to order other third parties to sit for depositions. In light of these circumstances, I conclude the Board of Elections has conducted a diligent search—as described in counsel's declaration—and no silver laptop has been found.

In sum, Plaintiffs' request for additional third-party depositions is not within the scope of their subpoenas or the instant Motion, and there are no grounds for additional relief from the Board of Elections regarding the silver laptop issue. Accordingly, I **DENY** Plaintiffs' request to depose Tony Rowell, Wesley Vickers, and Charles Dial about the location of the silver laptop computer Misty Hampton used at the Board of Elections' office.

### III.     Privilege Log

Plaintiffs ask the Court to order the Board of Elections to provide a log of all documents withheld from production on the basis of privilege that complies with the requirements in Federal Rule of Civil Procedure 26(b)(5). Relevant to this dispute, the Board of Elections provided two privilege logs of materials it withheld in response to Plaintiffs' subpoenas in mid-2022. The Board of Elections provided the first privilege log with its response to the Curling Plaintiffs' subpoena on August 1, 2022. See Doc. 29 at 1–2; see also Doc. 25-2 at 2–3. The Board of Elections attached an updated privilege log to its response to Coalition's subpoena on August 26, 2022. Doc. 29-2. Plaintiffs argue both of the privilege logs are inadequate. Doc. 31.

The Board of Elections opposes Plaintiffs' request. The Board argues Plaintiffs failed to confer about the privilege log dispute prior to bringing it before the Court and the updated privilege log is adequate as to both subpoenas. Doc. 29. Each argument is addressed in turn.

### A.     Plaintiffs Sufficiently Conferred About the Privilege Log Before Filing the Instant Motion

Parties bringing a motion to compel must certify they first conferred in good faith or attempted to confer with the non-movant about the discovery dispute. Fed. R. Civ. P. 37(a)(1); Local R. 26.5; see also Herrera-Velazquez v. Plantation Sweets, Inc., No. 6:14-cv-127, 2015 WL 5613195, at *5 n.6 (S.D. Ga. Sept. 23, 2015) ("This Court has applied the duty to confer requirement in the Rule 45 context." (collecting cases)). Parties should first confer about

9

discovery disputes to avoid unnecessary court intervention.  See Sierra Equity Grp. v. White Oak Equity Partners, LLC, 672 F. Supp. 2d 1369, 1370 (S.D. Fla. 2009) (collecting cases).

The parties engaged in limited conferral about the privilege logs before Plaintiffs filed their Motion to Compel.  The record shows three brief written exchanges about the privilege log: one before the Board of Elections formally responded and provided a privilege log, one after the Board provided the initial privilege log, and one just before Plaintiffs filed their Motion to Compel.

Counsel for the Board of Elections described its forthcoming privilege log to counsel in an email on July 26, 2022, before the Board of Elections formally responded to the subpoenas.  Doc. 25-1 at 3–5.  Counsel for the Board of Elections stated the Board would "provide a general privilege log . . . that generally references the type of documents being withheld . . . ."  Id. at 4.  Counsel for the Curling Plaintiffs responded the next day, insisting the Board's privilege log comply with Federal Rule of Civil Procedure 26(b)(5) and offering to discuss ways to reduce the Board of Elections' burden to comply.  Id. at 2.

The parties' second exchange about the privilege log began on August 2, 2022, one day after the Board of Elections provided the first privilege log.  Counsel for the Curling Plaintiffs asked counsel for the Board of Elections to provide a supplemental privilege log with the creation and last-modified dates for each withheld document and the sent and received dates for each communication, explaining "[t]his is critical information."  Doc. 25-2 at 3.  Another attorney for the Curling Plaintiffs requested on August 18, 2022, the Board of Elections supplement the privilege log with a date field.  Doc. 25-3 at 3.  The Board of Elections provided a four-page updated privilege log with a date field on August 26, 2022.  Doc. 29-2.

Plaintiffs made a final attempt to confer about a privilege log just before filing their Motion to Compel. Counsel for Plaintiffs sent counsel for the Board of Elections a letter on October 17, 2023, "to obtain prompt compliance by conferring with you." Doc. 1-18 at 2. Plaintiffs requested a detailed privilege log, including eight categories of information about each document for which the Board of Elections claimed privilege. Id. It does not appear the Board responded to Plaintiffs about this issue. Plaintiffs filed their Motion to Compel on October 24, 2023.

Plaintiffs satisfied the conferral requirement before bringing this Motion to Compel. This is not a situation like Toenniges v. Morales, No. CV 311-083, 2012 WL 12915497 (S.D. Ga. Oct. 26, 2012), cited by the Board of Elections, where the movant filed a motion to compel without first voicing any objections to the non-movant's response. Plaintiffs requested detailed "critical information" in response to the Board of Elections' initial privilege log, but the supplemental privilege log contains none of the requested details. Parties are not required to confer endlessly. See Williams v. Taser Int'l, Inc., 274 F.R.D. 694, 697 (N.D. Ga. 2008) ("Plaintiffs are not precluded from seeking relief for failing to raise the very same issues with [Defendant] once again."). Plaintiffs nevertheless attempted to confer about the privilege log issue again, just before filing this Motion to Compel.[5] The parties' conferral efforts were not extensive, but the efforts were adequate. Importantly, there is no indication further conferral would have resolved or narrowed the dispute.

---

[5] The Board argues in a Surreply Plaintiffs' final attempt to confer on October 17, 2023, was related only to documents on Hampton's desktop. Doc. 38 at 1–2. Plaintiffs requested "a detailed privilege log, identifying each document requested by the subpoenas for which privilege is claimed." Doc. 1-18 at 4. This request appears to relate to all subpoenaed materials, although Plaintiffs' letter—like their Motion—is concerned primarily with the desktop computer.

11

### B. The Privilege Log Is Not Sufficient

Plaintiffs argue the Board of Elections' updated privilege log is inadequate because it lacks enough detail for Plaintiffs to evaluate the Board's privilege claims.[6]  Doc. 21 at 4–6; Doc. 31 at 3–5.  Plaintiffs ask the Court to order the Board of Elections to provide a sufficient privilege log.  Doc. 31 at 23.  The Board of Elections argues its updated privilege log is sufficiently detailed and creating a more detailed privilege log would present an undue burden.  Doc. 29 at 4–6.

When a party withholds subpoenaed information under a privilege claim, the party must expressly make the claim and describe the nature of the information without revealing the privileged information itself.  Fed. R. Civ. P. 45(e)(2)(A).  The purpose of a privilege log is to enable opposing parties to assess each privilege claim.  Jordan v. Comm'r, Miss. Dep't of Corr., 947 F.3d 1322, 1328 n.3 (11th Cir. 2020).  A sufficient privilege log should provide an opposing party and the Court enough detail to evaluate the validity of each privilege claim.  Campero USA Corp. v. ADS Foodservice, LLC, 916 F. Supp. 2d 1284, 1292 n.10 (S.D. Fla. 2012) (denying reconsideration of an order to produce ostensibly privileged documents (citing Fed. R. Civ. P. 26(b)(5)(A)(ii); CSX Transp. Inc. v. Admiral Ins. Co., No. 93-132, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995)));  see also Anderson v. Branch Banking & Tr. Co., No. 13-CV-62381, 2015 WL 2339470, at *3 (S.D. Fla. May 14, 2015) (finding privilege log entry descriptions such as "regarding conversation" and "regarding letter" provide insufficient information to evaluate

---

[6]  Plaintiffs identify a number of documents they obtained from other sources to show, at least in part, the Board of Elections withheld responsive, non-privileged documents.  Doc. 31 at 6–16.  However, Plaintiffs have not shown the Board actually had possession, custody, or control of these documents when Plaintiffs subpoenaed them.  In fact, Plaintiffs just recently discovered most of these documents on the forensic image of Misty Hampton's desktop computer.  Id. at 5.  The Board of Elections has consistently maintained it was unable to access these records before the GBI seized the desktop.  Plaintiffs have not shown the Board of Elections knew about these documents before Plaintiffs recovered them or was dishonest about its inability to recover these documents earlier.

privilege claims); Williams v. Taser Int'l, Inc., No. CIVA 106CV-0051, 2007 WL 1630875, at *4 (N.D. Ga. June 4, 2007) (finding a six-page table repeating the same conclusory privilege claim for each entry is an inadequate privilege log).

The Board of Elections' updated privilege log is a four-page table. Doc. 29-2 at 2–5. It has 17 rows of categories of communications and documents. Id. There are five columns that contain the following information about each category: Author, Recipient, Privileges, Description, and Date. Id. The Author and Recipient fields name multiple individuals in each category of communications. Id. For the Privileges field, eight categories state "Attorney-Client" only; two categories state "Work Product" only; six categories state both "Attorney Client" and "Work Product"; and one category is blank. Id. at 5. In most instances, the Description field states "Written Communications" with a brief topic description, but one category identifies attorney's notes and another identifies a diagram. Id. at 4–5. The Date fields for most of the categories contain no specific dates, only references to where and when the authors and recipients were employed. Id. at 2–5. Most of the remaining Date fields contain date ranges. Id. It is impossible to tell how many communications were withheld, both in the aggregate and by category.

The Board of Elections' updated privilege log is insufficient because it cannot be used to evaluate the Board's privilege claims. Where the Board claims multiple privileges for an undetermined number of communications made on uncertain dates, it is impossible to determine whether those privilege claims are arguably valid. Many of the privilege claims appear to be based only on the fact the authors and recipients are attorneys. It is well established the mere presence of an attorney on a communication is not, standing along, sufficient to demonstrate the communication is protected by a privilege. Perhaps most glaring, one category of withheld

13

documents fails to even identify the claimed privilege. Thus, the updated privilege log fails to provide sufficient details for Plaintiffs (or the Court) to evaluate the Board's claims of privilege as to any particular document or the broad categories of documents listed in the log.

The Board of Elections argues providing a more detailed privilege log would impose an undue burden. Courts sometimes permit parties to provide category-based privilege logs rather than itemized, document-by-document privilege logs when a document-by-document privilege log presents an undue burden. See, e.g., United States ex rel. Keeler v. Eisai, Inc., No. 09-22302-CV, 2012 WL 12842995, at *3 (S.D. Fla. Sept. 27, 2012) (permitting categorical privilege log where "individually logging years of privileged attorney communications would be burdensome and of little benefit."); MCC Mgmt. of Naples, Inc. v. Arnold & Porter LLP, No. 207-CV-387, 2010 WL 2431849, at *2 (M.D. Fla. June 16, 2010) (allowing for a categorical privilege log because the documents at issue span a 14-year period); In re Cap. One Bank Credit Card Int. Rate Litig., 286 F.R.D. 676, 681–82 (N.D. Ga. 2012) ("In a case with many thousands of documents supposedly protected by the attorney-client privilege, a statement explaining the nature of the legal issue for which advice was sought is sufficient."). On the other hand, categorical privilege logs are not appropriate where there is a relatively small volume of privileged documents. TIC Park Ctr. 9, LLC v. Cabot, No. 16-24569-CIV, 2017 WL 9988744 (S.D. Fla. June 1, 2017) ("There is little doubt that a categorical privilege log is inappropriate in this case because this action involves less than 500 documents at issue."); Republic Servs. Inc. v. Am. Int'l Specialty Lines Ins. Co., No. 07-21991, 2008 WL 4691836, at *3 (S.D. Fla. Oct. 21, 2008) (ordering a party to produce a document-by-document privilege log for approximately 2,500 documents). Ultimately, "[t]he sufficiency of a categorical privilege log turns on whether the categories of information are sufficiently articulated to permit the opposing party to assess

the claims of privilege or work product protection." Teledyne Instruments, Inc. v. Cairns, No. 6:12-CV-854, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013).

The Board of Elections has failed to show a categorical privilege log is appropriate in this case. The Board of Elections has not sufficiently shown an itemized (i.e., document-by-document) privilege log would constitute an undue burden. The Board argues "Plaintiffs' subpoenas encompass scores of privileged documents and communications" and, therefore, "it would be unduly burdensome to require [the Board] to provide meticulous details for each individual document." Doc. 29 at 5. The reference to "scores" of privileged documents is insufficiently vague. "Scores" could mean forty documents or it could mean thousands. At this point, it is entirely unclear how many documents the Board has withheld on privilege grounds. Therefore, the Board has not demonstrated it would suffer any undue burden in providing an itemized privilege log.

Accordingly, I **GRANT** Plaintiffs' request for the Board of Elections to provide a compliant privilege log. I **ORDER** the Board of Elections to serve an itemized privilege log **on or before January 3, 2024**. The privilege log shall describe each document the Board of Elections withheld in response to Plaintiffs' subpoenas based on privilege. For each entry, the privilege log shall state the type of document withheld, the date it was created or sent, the author, the recipient, the privilege claimed, and the grounds for the privilege claimed without revealing the privileged information itself, consistent with Federal Rule of Civil Procedure 45(e)(2) and this Order.

### IV.    Plaintiffs' Request for Additional Searches

Plaintiffs final request has been somewhat of a moving target. The bulk of Plaintiffs' initial Motion focused on Hampton's desktop (and documents contained on that device), the

request for a compliant privilege log, and concerns about the silver laptop. Doc. 1 at 18 ("Movants, thus, bring this motion to enforce the Subpoenas and seek an Order compelling the immediate production of the subpoenaed documents on both the Desktop and Laptop, and appropriately detailed privilege logs for any claims of privilege by [the Board]."). As these proceedings progress, the dispute evolved. Plaintiffs raised additional concerns about the Board's prior responses to the subpoenas. Specifically, Plaintiffs began to argue the Board had not adequately searched its own records (records beyond those contained on Hampton's desktop and the silver laptop) for responsive documents. The parties conferred about additional searches and search terms the Board could run on its archived documents, but those efforts stalled when the parties could not find common ground. Doc. 21 at 7–8 (the parties' first joint status report).

Even then, the issue evolved further. Plaintiffs shifted their focus from documents held by the Board to the Board's purported failure to seek and obtain documents from the Board's agents. According to Plaintiffs, the Board failed to search for responsive documents held by various third parties, including, but not limited to, the law firm Hall Booth Smith, the Board's attorney Anthony Rowell, other attorneys representing the Board of Elections, IT contractor Charles Dial, and Charles Dial's IT company. Indeed, during the Court's last telephonic status conference, counsel for Plaintiffs stated "the most important issue" is the issue of third-party searches. In Plaintiffs' last brief concerning additional searches, Plaintiffs only address the need for the Board to seek and obtain documents in the possession of third parties. Doc. 35. Thus, it appears Plaintiffs have abandoned their request for the Board to conduct additional searches on

16

documents the Board holds, and Plaintiffs now only ask the Court to order the Board to search for responsive documents held by various third parties.[7]

Plaintiffs argue these third parties, and possibly others, possess responsive materials that are under the Board of Elections' control. Id. at 1–2. The Board opposes this request. The Board makes two threshold arguments: (1) Plaintiffs failed to confer in good faith about this issue prior to bringing it before the Court; and (2) Plaintiffs did not raise this issue in their Motion to Compel. Doc. 33 at 3–11. The Board also addresses the merits of Plaintiffs' request, arguing the request is irrelevant, unduly burdensome, and not proportional to Plaintiffs' needs in the underlying case.

The Board of Elections' threshold arguments are not convincing. The two subpoenas directed the Board to produce all documents in the Board's possession, custody, or control, including all agents under the Board's control. Doc. 1-1 at 4; Doc. 1-2 at 4. It is also well established "control," as that term is used in the Federal Rules of Civil Procedure, includes not only actual possession, but the legal right to obtain documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."). For months before filing

---

[7] To the extent Plaintiffs still maintain the Court should order the Board to conduct additional searches on documents the Board currently holds, I **DENY** that request. The request for such searches was only made in passing in the initial Motion, with little to no detail or support. Plaintiffs' subsequent briefing provides no greater insight into this issue. Plaintiffs are clearly dissatisfied with the Board's prior document productions in response to the subpoenas. But Plaintiffs have done little more than ask the Court to order the Board to "look again" for responsive documents. Plaintiffs' approach is unconvincing and impractical. Plaintiffs served subpoenas seeking a combined total of 66 categories of documents. Even though many of those categories were objected to, it appears many documents have already been produced in response to the subpoenas. It is impossible to ascertain which topics are objected to, which are agreed to, which topics are fully resolved, or which topics remain outstanding. Plaintiffs have simply not provided adequate detail or explanation about the Board's failure to search its own documents or to produce its own responsive documents. An order directing the Board of Elections to simply "look again" would not provide any benefit, particularly at this late stage in the litigation.

the instant Motion, Plaintiffs conferred with the Board of Elections about producing responsive material.  See, e.g., Docs. 1-9 through -12; Docs. 1-17 through -25 (emails between the parties' counsel about the search and production of various responsive material).  The instant Motion plainly requests the Court order the Board to comply with the subpoenas, and those subpoenas expressly required the Board to produce documents within its control.  Based on this record, I find Plaintiffs adequately conferred with the Board before filing the instant Motion and the issue of third-party searches is sufficiently addressed in Plaintiffs' Motion.[8]

Although Plaintiffs are not precluded from raising this issue due to the threshold challenges, Plaintiffs' request still fails.  Plaintiffs have not shown they are entitled to an order compelling the Board to search its records held by third parties.  Plaintiffs have not demonstrated any specific need for these searches.  Third party searches, as characterized by Plaintiffs, would only yield new documents in very narrow circumstances.  The documents would have to be responsive, in the control of the Board, and not actually in the Board's immediate possession at this time.  Plaintiffs have not shown any such documents exist or are likely to exist or that such documents would provide any discernible value to the Curling case.  Plaintiffs focus largely on the documents obtained from Hampton's desktop, which were uncovered by the GBI.  Plaintiffs contend because the desktop computer contained responsive—but unproduced—documents, other third parties might also have responsive documents.  But Hampton's desktop computer is a unique circumstance.  There, the documents were only uncovered because of the GBI's involvement.  Plaintiffs have not shown the Board identified those documents previously but

---

[8]     To be sure, Plaintiffs did not expressly raise the issue of third-party searches until late in these proceedings, and, therefore, just mere weeks before the Curling case is set to go to trial.  Plaintiffs did not focus on the need for the Board to search for records held by these third parties during conferral or in their initial Motion.  Although this fact does not preclude Plaintiffs from pursuing the issue altogether, it makes Plaintiffs' eleventh-hour request all the less compelling.

failed to produce them. Documents held by third parties present entirely different concerns. Ultimately, Plaintiffs have not shown any significant need for the Court to order the Board to conduct additional searches of its documents held by third parties.

Additionally, Plaintiffs have not provided any specific, workable framework for the requested relief. Like their other requests, Plaintiffs largely ask the Court to order the Board to "look again" for responsive documents, though this time within documents held by third parties. Plaintiffs have not specified what materials the Board of Elections should search or how the Board of Elections should go about searching. Plaintiffs' subpoenas include 66 total categories of subpoenaed materials, and many of those categories were challenged. The parties have conferred for more than a year about searches for responsive material with little to no success. This process would begin anew for searches of documents in the Board of Elections' control that are held by third parties. In fact, the searches proposed by Plaintiffs would likely be even more complicated, given that Plaintiffs have specifically asked the Court to order a law firm and an individual lawyer to produce responsive documents. That process would likely spin off a protracted privilege fight—one even more extensive than the one this Court has addressed. The prospect of ordering additional searches of documents held by third parties is impractical given that the Curling trial is set to begin in mere weeks. Accordingly, I **DENY** Plaintiffs' request for the Board of Elections to search for and produce responsive material under its control in the possession of third parties.

## CONCLUSION

For the foregoing reasons, I **GRANT in part** and **DENY in part** Plaintiffs' Motion to Compel. Specifically:

1. I **DENY as moot** Plaintiffs' request for relief related to Misty Hampton's desktop computer.

19

2. I **DENY** Plaintiffs' request to depose Tony Rowell, Wesley Vickers, and Charles Dial about the location of Misty Hampton's silver laptop computer.

3. I **GRANT** Plaintiffs' request for the Board of Elections to provide a compliant privilege log. I **ORDER** the Board of Elections to serve an itemized privilege log **on or before January 3, 2024**. The privilege log shall describe each and every document and communication the Board of Elections withheld in response to Plaintiffs' subpoena. For each entry, the privilege log shall describe, at a minimum, the type of document or communication, the date it was created or sent, the author, the recipient, the privilege claimed, and grounds for the privilege claimed without revealing the privileged information itself, consistent with Federal Rule of Civil Procedure 45(e)(2) and this Order.

4. I **DENY** Plaintiffs' request for the Board of Elections to conduct additional searches for materials in the possession of third parties.

**SO ORDERED**, this 22nd day of December, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA