# EXHIBIT 4

# Declaration of Marilyn Marks – 02/20/24

*PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS*
*CCBOER AND COUNSEL*

CGG, et al. v. Coffee Cty. Bd. of Elections and Registration
United States District Court for the Southern District of Georgia
No: 5:23-mc-00001-LGW-BWC

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

<table>
<tr>
<td>

**COALITION FOR GOOD
GOVERNANCE and DONNA
CURLING,**

**Plaintiffs,**

**v.**

**COFFEE COUNTY BOARD OF
ELECTIONS AND REGISTRATION,**

**Defendant.**

</td>
<td>

**Civil Action No. 5:23-mc-00001-
LGW-BWC**

**In RE Subpoenas issued by the
United States District Court
For the Northern District of
Georgia, Atlanta Division,
Civil Action File No. 1:17-CV-
2989-AT**

</td>
</tr>
</table>

**DECLARATION OF MARILYN MARKS**

**MARILYN MARKS** hereby declares under penalty of perjury, pursuant to

28 U.S.C. § 1746, that the following is true and correct:

1.    I have personal knowledge of all facts stated in this declaration, and if called

     to testify, I could and would testify competently thereto.

2.    I am the Executive Director of Plaintiff Coalition for Good Governance

     ("CGG"), a plaintiff in this action and the underlying *Curling v. Raffensperger*

     litigation.

3.    I have been the individual most involved in the research and discovery

     strategy for the *Curling* case Plaintiffs' legal team on the topic of the January

     2021 Coffee County voting system breaches. I began to devote at least 30

hours a week to the investigation, research, analysis, and legal strategy on the issue in March 2022, an activity level that continued until approximately December 31, 2023, when the Curling case neared trial. Beginning in March 2022, CGG volunteers also undertook hundreds of hours of research activities regarding the breaches to locate key background information to supply to the legal team and consulting experts.

4.    The Coffee County breaches became a central part of the *Curling* case evidence of voting system security issues as the evidence was unearthed during 2022 and 2023. I reviewed the trial transcripts and counted 925 mentions of the Coffee County breaches during the 17-day trial over the period January 9, 2024, through February 1, 2024.

5.    In March 2022, I began CGG's informal discovery inquiries regarding the breaches by Open Records Request inquiries to CCBOER in preparation for seeking the Curling court's granting of third-party discovery, which was granted in June 2022.  By agreement of the parties, the responses to the series of CGG's Open Records Requests were incorporated into CCBOER's responses to Plaintiffs' two document subpoenas. (Docs. 1-1, 1-2)

6.    During the formal discovery activities my work included drafting and reviewing subpoenas and proposed attorney communications, initial review

of all produced documents, and coordination of discovery activities with

Plaintiffs' experts and *Curling* Plaintiffs' (our co-Plaintiffs) legal team.

7.   I personally experienced the pattern of misrepresentations and deflection by

CCBOER's counsel in my extensive work with the subpoenaed records and

related information, denying knowledge of the breaches, denying the

existence of video records, and the denying existence of Ms. Hampton's email

records.

8.   In my role as the primary researcher and discovery coordinator for the

Plaintiffs' discovery efforts, I routinely dealt with Ms. Jennifer Herzog of Hall

Booth Smith, PC ("HBS"), who acted as CCBOER's counsel. I learned that

HBS effectively acted as CCBOER's clearinghouse for Open Records

Requests which nominally passed through Tracie Vickers, Coffee County

Clerk. Based upon what I observed and as CCBOER's privilege strongly

supports, virtually all substantive responses to election-related Open Records

Requests were handled directly by Ms. Herzog rather than a CCBOER staff

member. The same was true of formal discovery responses covered by

Plaintiffs' two subpoenas.

9.   I had a number of telephone conversations with Ms. Herzog. On April 6, 2022,

I described the information I knew about the alleged breaches based on my

recorded conversation with Scott Hall, who was involved in the January 7,

2021 breach.  She told me that she had not heard allegations of the breach, claiming that the claim was preposterous and did not happen. I learned in April 2023 that Ms. Herzog had been aware of the Washington Post's reporters' March 28, 2022, inquiry to CCBOER. (Exhibit 1)  Vice-Chairman Wendell Stone had also been contacted about the breach in May 2022 (Exhibit 2). Both emails  should have been produced prior to CCBOER's Rule 30(b)(6) deposition on September 1, 2022.

10.  Starting in early March, 2022, and over the course of the discovery period, I received numerous misleading responses from Ms. Herzog to Plaintiffs' requests, including repeated denials that security video recordings from January 2021 still existed.  For example, see Doc. 1-3 at 3.  I found it difficult to believe that CCBOER had retained no copies of the related video recordings given that at least one copy of the exterior office video had been provided to Tabitha Paulk through an Open Records Request in 2021. Therefore, CGG continued to repeat our request that CCBOER search again for the security video records at the time of negotiations of the subpoena document production.

11.  After repeated requests and the initiation of the GBI investigation earlier in the month, on August 26, 2022, Ms. Herzog acknowledged the existence of the exterior video recordings for the relevant period and produced the

4

recordings which contained video records of individuals who would eventually be identified as participants in and eye-witnesses to the three breaches.

12.   For reasons not explained, the interior video records with much more detail of the activities surrounding the breaches were not produced by Ms. Herzog until September 17, 2022, after the CCBOER's September 1, 2022 deposition, and the depositions of Eric Chaney, James, Barnes, Cathy Latham, and Jill Ridlehoover. Plaintiffs did not have access to the video records to challenge the inaccurate statements of the witnesses about their involvement in and knowledge of the breaches.

13.   Plaintiffs also received repeated denials that the email records for Ms. Hampton and Ms. Ridlehoover could be retrieved. Both through Open Records Requests and repeatedly under the two subpoenas, Plaintiffs requested CCBOER undertake more diligent reviews to locate the emails. Plaintiffs requested communications concerning the purported searches for the emails and obtained documents indicating that indeed the Outlook date files (.ost files) should be available on the CCBOER desktop. (Doc 1-6 at 2) Although Ms. Herzog repeatedly represented to Plaintiffs that Hampton emails were not available, it appears that she never received confirmation

from the Coffee County IT contractor, Charles Dial, that he had checked the desktop files. (Exhibit 3 Item 2)

14.   Some months later, upon the analysis of the GBI files of the CCBOER desktop received by him on November 21, 2023, Kevin Skoglund, CGG's expert, quickly located the .ost files containing Ms. Hampton's emails. (See Skoglund Declaration filed with this Motion for Sanctions)

15.   Mr. Skoglund and I spent several hours reviewing the contents of Ms. Hampton's official emails for identification of responsive records, and located the previously unknown December 31, 2020 letter from attorney Preston Haliburton, which apparently initiated the Coffee County breach activity. (Doc. 30 at 6)  This document was withheld and never produced by CCBOER, depriving us of the opportunity to conduct discovery on the facts revealed in the letter. At the time the letter was sent to Ms. Hampton and Mr. Chaney, Mr. Haliburton had publicly announced that he represented both Rudy Giuliani and Cathy Latham. Attorney Robert Cheeley referenced in the letter as a participant also represented Cathy Latham and later represented her in her August 8, 2022 deposition.  Mr. Haliburton's initiation of the request for voting system access with experts was not known to Plaintiffs in developing the discovery plan, nor was Mr. Cheeley's involvement.

6

16. In addition to Ms. Hampton's emails on the GBI image of the CCBOER desktop, Mr. Skoglund and I located responsive documents not previously produced in the email files generated by former election supervisors James Barnes and Rachel Roberts. For example, James Barnes's communications with the Secretary of State investigator concerning the security conditions of equipment were referenced and put into context in Barnes's communications with Deb Cox, the Lowndes County Election Supervisor who had been advising Barnes. (Doc. 30 at 4) Further, Ms. Cox's email communicated that the EMS server had been seized by the Secretary of State for reasons other than the purported "password change." (Doc. 30 at 4)

17. Mr. Barnes' highly relevant email to the Secretary of State investigator (Doc. 30-1) was withheld by CCBOER and only obtained by Plaintiffs because a citizen obtained it via an Open Records Request and made me aware of it.

18. Among other responsive documents on the GBI desktop image, we located emails from Rachel Roberts to the Secretary of State's office concerning the potential need to recertify the breached equipment. (Doc. 31at 8)

19. Such responsive documents located on the GBI image of the CCBOER desktop and withheld by CCBOER were unavailable to Plaintiffs to use to inform depositions and subsequent document subpoenas.

20.   Other documents were withheld by CCBOER and produced months after the relevant depositions were complete and discovery in the *Curling* case was closed. For example, Ms. Herzog's text messages with Secretary of State's general counsel, Ryan Germany, on April 11, 2022 (Doc. 31 at 6) concerning information regarding the breaches were not disclosed to Plaintiffs until 2023. The Secretary of State's knowledge and investigation of the breaches is a key area of interest in the *Curling* case.

21.   All exhibits attached to this declaration are true and correct copies of documents that I obtained through discovery activities or open records requests.

22.   I have functioned as a key member of the Plaintiff's legal team for purposes of the entire *Curling v. Raffensperger* case, and have done so with an intense focus on the Coffee County breaches, as a key element of the evidence for that case.  I have attended all depositions, prepared deposition outlines to assist the attorneys, performed initial organization and review of documents to be used in the depositions, conferred with attorneys during depositions to suggest questions and analyzed witness responses, drafted all CGG subpoenas, helped draft and review all motions and briefs related to Coffee County,  provided

8

liaison with consulting and testifying experts, and attended all hearings of the two courts involved, either remotely or in person among other litigation support duties.

23.   Attorneys and I are in process of conducting a review of my time and time of our paid interns for allocation into various categories, given the significant hours involved.  The hours will be presented in CGG's supplemental filing and are expected to exceed $300,000.  Given the demands of the *Curling* trial and post-trial work on open issues, a careful analysis and categorization of the applicable hours and expenses could not be performed by today.

24.   Likewise, CGG's out of pocket expenses such as court reporting costs, travel costs, printing, and other litigation support costs will be accumulated and presented in the supplemental filing.

Signed this 20th day of February 2024.

_____

Marilyn Marks

# Declaration of Marilyn Marks
# EXHIBIT 1

1

**Jennifer Dorminey Herzog**

| | |
|---|---|
| **From:** | Brown, Emma <Emma.Brown@washpost.com> |
| **Sent:** | Friday, April 8, 2022 5:00 PM |
| **To:** | Anthony A. Rowell; Jennifer Dorminey Herzog |
| **Subject:** | Re: Washington Post inquiry // Coffee County |
| | |
| **FilingDate:** | 4/11/2022 10:53:00 AM |

Dear Mr. Rowell and Ms. Herzog,

I'm just checking back with you to see if you have any comment on either of the emails below. In one I asked about what I am told was Eric Chaney's presence during the copying of equipment in Coffee County. In the other, I asked if you had been contacted by the secretary of state's office regarding an allegation of a security breach in Coffee County's election department following the 2020 election, and more specifically, an allegation that individuals copied voting equipment.

I'd appreciate the chance to hear from you!

Thank you,

Emma Brown

202-674-5394

---

**From:** Brown, Emma <Emma.Brown@washpost.com>
**Sent:** Monday, March 28, 2022 5:12 PM
**To:** Anthony A. Rowell <ARowell@hallboothsmith.com>; jherzog@hallboothsmith.com <jherzog@hallboothsmith.com>
**Subject:** Re: Washington Post inquiry // Coffee County

Mr. Rowell, I just spoke briefly to Eric Chaney, who I am told was present at the Coffee County elections office when the alleged copying of voting machines occurred. He said he didn't have anything to say and told me to direct my questions to you.

I would appreciate the chance to speak with you.

I am at 202-674-5934. Please call me at your earliest convenience.

Thank you,

Emma Brown

---

**From:** Brown, Emma
**Sent:** Monday, March 28, 2022 12:53 PM
**To:** Anthony A. Rowell <ARowell@hallboothsmith.com>; jherzog@hallboothsmith.com <jherzog@hallboothsmith.com>
**Subject:** Washington Post inquiry // Coffee County

Dear Mr. Rowell and Ms. Herzog,

I am a reporter at the Washington Post and I am reaching out to you in your capacity as lawyers for Coffee County, Georgia.

I am wondering if you are aware of allegations that people accessed Coffee County's voting machines at some point after the 2020 election, and I'm wondering whether you have been contacted by the secretary of state's office about that.

Please give me a call.

Sincerely,

Emma Brown

202-674-5934

1

From: Brown, Emma <Emma.Brown@washpost.com>
Sent: Friday, April 8, 2022 10:23 AM
To: Vickers, Wesley <Wesley.Vickers@coffeecounty-ga.gov>
Cc: Vickers, Tracie <Tracie.Vickers@coffeecounty-ga.gov>
Subject: Re: Washington Post inquiry

Thank you Mr. Vickers for your response here. I want to ask you about one other thing, and you may not want to comment but I would like to make sure you have the opportunity.
I spoke to Misty Martin, now Misty Hampton, and she told me when she was forced to resign, the reason she was given was that she had falsified time sheets. But she believed the real reason was the issues she had raised with Dominion voting machines.
Could you comment on why she was asked to resign and whether the issues she raised with voting machines was the reason and/or a contributing factor?
Thank you,
Emma Brown
202-674-5934

---

From: Vickers, Wesley <Wesley.Vickers@coffeecounty-ga.gov>
Sent: Monday, March 28, 2022 1:07 PM
To: Brown, Emma <Emma.Brown@washpost.com>
Cc: Vickers, Tracie <Tracie.Vickers@coffeecounty-ga.gov>
Subject: RE: Washington Post inquiry

CAUTION: EXTERNAL SENDER
Ms. Brown,

Our county records custodian has informed me that you have made an official open records request concerning possible communications with the secretary of state's office.  She will respond to your request in a timely manner.  I have no comment otherwise.

Thank you,

Wesley

From: Brown, Emma <Emma.Brown@washpost.com>
Sent: Monday, March 28, 2022 12:52 PM
To: Vickers, Wesley <Wesley.Vickers@coffeecounty-ga.gov>
Subject: Washington Post inquiry

Dear Mr. Vickers,
I'm reaching out again in the hopes that we can connect. I just left you a voice mail and would be grateful for the chance to speak with you.
I'm wondering if you are aware of allegations that voting machines in Coffee County were accessed by people who copied hard drives and other data. I am also curious whether you have heard anything from the secretary of state's office about this.
Please give me a call.

# Declaration of Marilyn Marks
# EXHIBIT 2

----- Forwarded Message -----
From: Brown, Emma <emma.brown@washpost.com>
To: wendellstone2000@yahoo.com <wendellstone2000@yahoo.com>
Sent: Monday, May 2, 2022, 10:00:02 PM EDT
Subject: Washington Post inquiry

Dear Mr. Stone,

I'm a reporter for the Washington Post and I am reaching out about a story I am working on.

As you are probably aware, Georgia businessman Scott Hall was recorded saying that he arranged for people to go to Coffee County to help investigate the 2020 election results. He said that they "went in there and imaged every hard drive of every piece of equipment" and scanned ballots. He also said: "We basically had the entire elections committee there. And they said, 'We give you permission. Go for it."

Were you present when Scott Hall and other non-county employees came to the elections department to investigate the election results and/or copy voting equipment? Did you give your permission? If so, why?

When and how did you become aware of the claim that voting equipment in Coffee County was imaged?

I'd be grateful if you could get back to me by tomorrow afternoon.

Sincerely,
Emma Brown
202-674-5934

# Declaration of Marilyn Marks
# EXHIBIT 3

**From:** **Charles Dial** charles.dial@coffeecounty-ga.gov 📎

**Subject:** Re: additional documents needed for Curling litigation

**Date:** August 24, 2022 at 5:10 PM

**To:** Jennifer Dorminey Herzog jherzog@hallboothsmith.com

**Cc:** Vickers, Tracie Tracie.Vickers@coffeecounty-ga.gov, Rachel Roberts Rachel.Roberts@coffeecounty-ga.gov, Vickers, Wesley Wesley.Vickers@coffeecounty-ga.gov, arowell@hallboothsmith.com, Nick Kinsley NKinsley@hallboothsmith.com, Stephen Delk SDelk@hallboothsmith.com

CD

Jennifer this is all correct.

Thanks

Charles Dial
SGCCE, INC

Sent from my iPhone

> On Aug 24, 2022, at 4:56 PM, Jennifer Dorminey Herzog <jherzog@hallboothsmith.com> wrote:
>
> Charles/Wesley/tracie: plaintiff's counsel has requested the following, can you please assist me to be sure my responses are accurate.
>
> 1. Please confirm my whether Coffee County has a backup server or archived data that would contain Ms. Hampton's emails. IT support has confirmed that the former Election Supervisor Misty Hampton's and Jill Riddlehoover's email accounts are no longer accessible. Coffee County has a limited number of licenses available under Microsoft 365, and it was the regular practice of IT to replace the new employee of each position with that license when a former employee of the same position was for whatever reason no longer employed by the county, and when that is done, unless previously archived, the former employees' emails are no longer accessible. In this situation, the County did attempt to preserve Hampton's emails, as you will see in documents provided previously to Ms. Marks, but IT unfortunately was unsuccessful in same. The County has since implemented an email archiving system. I have been advised that IT has exhausted all efforts and despite same, advised that Hampton's emails are not accessible or recoverable.
>
> 2. Please confirm the County has searched the desktop computers and any other electronic equipment in the Elections Office for all responsive documents. ?? Can I confirm this?
>
> **Jennifer Dorminey Herzog**
>
> Attorney at Law | Hall Booth Smith, P.C.
>
> **O:** 229.382.0515
> **D:** 229.339.8856
>
> 1564 King Road
> Tifton, GA 31793
>
> hallboothsmith.com



ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA
MONTANA | NEW JERSEY | NEW YORK | OKLAHOMA
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.