IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE and DONNA CURLING,<br><br>Plaintiffs,<br><br>v.<br><br>COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,<br><br>Defendant. | Civil Action No. 5:23-mc-00001-LGW-BWC<br><br>In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division, Civil Action File No. 1:17-CV-2989-AT |

**PLAINTIFF COALITION FOR GOOD GOVERNANCE SUPPLEMENTAL BRIEF REGARDING MOTION FOR SANCTIONS**

The breaches of the statewide voting system via Coffee County are some of the most serious and dangerous election security events in our nation's history. Because of the misguided criminal conduct of certain elections officials in Coffee County, all aspects of the sensitive inner workings of Georgia's voting system have been copied and shared online with numerous unauthorized actors, substantially elevating the vulnerabilities of the system to malevolent manipulations.

But for the efforts of the lawyers and election security experts assembled for the *Curling* litigation, there would be no accountability for the Coffee County breaches. CCBOER and its counsel were only interested in covering up what had

1

occurred. State and local law enforcement did not undertake to investigate the breaches until the *Curling* Plaintiffs had exposed the issue.[1]

Although the Secretary of State and the State Election Board bear responsibility to investigate and report violations of elections law to the State Attorney General, at the trial of the *Curling* case, the Secretary of State's investigator who opened the Coffee County breach case testified he was told by senior officials to "hold off" on investigating Coffee County breaches. He further testified that, to this day, he knows of no investigations by the Secretary of State's office or the State Election Board into the breaches.  (Exh. 2 Tr.234:3-25) Plainly, there was little appetite among election officials for exposure or accountability.

Law enforcement's interest in the breaches appears to have been triggered only after the national press reported on the discoveries made in the *Curling* case. Springboarding off the evidence obtained by the *Curling* plaintiffs, on August 14, 2023, the Fulton County District Attorney's office issued indictments for nineteen defendants.[2]

---

[1] The GBI appears to have relied extensively on *Curling* discovery in its investigation. Indeed, the GBI's September 2023 report references findings from 11 of the thirteen Coffee-related depositions taken in *Curling,* and in conducting follow-up interviews, the GBI appears to have heavily relied upon depositions and discovery documents exposed by the *Curling* discovery.  (Exhibit 1)

[2] CCBOER has reported that it has received no inquiries directly from the Fulton County DA's office, indicating that the Coffee County breach defendants are being prosecuted largely, if not exclusively, based upon evidence derived from the *Curling* discovery process. In fact, the indictment mentions the Coffee breaches 52 times.

Plainly, the public interest in the disclosure of the Coffee County breaches is compelling and undeniable.  Yet, CCBOER officials and their counsel used every artifice, device and trick to obstruct, delay, and complicate discovery related to these events.  As a consequence, discovery was made far more time-consuming and expensive, and, in some cases, prevented entirely.  Candidly, Plaintiff CGG has struggled to precisely quantify the s direct impact of this discovery misconduct. In calculating the additional ost and caused by the misconduct, certain assumptions had to be made about how discovery would have proceeded had CCBOER and HBS complied with their legal obligations to timely and completely respond to the Plaintiffs' subpoenas. (Docs. 1-1, 1-2) What should also be considered is the less than candid and ill-informed testimony from the CCBOER's 30(b)(6) witness on which Plaintiffs were forced to rely. (Exh. 6 at ¶1; Doc.60-4 ¶9) Plaintiff provides the supplemental information as summarized here, seeking to invoke the Court's discretion and powers to compensate Plaintiff for costs incurred and to deter future misconduct by those actors who egregiously abused the process in this case.

### Significantly Revised Discovery Plan Would Have Resulted

Plaintiff's requests for the security videos that recorded the breaches began with Open Records Requests in early March 2022 and were later requested in the Curling subpoena on June 15, 2022 (Doc. 1-2 at 15) and repeated in the CGG

subpoena on July 25, 2022.³ (Doc. 1-1 ¶¶ 4,6-10) If the video records, relevant emails, and associated documents had been timely produced by June 30, 2022, the sequence of Coffee-related depositions would likely have been significantly revised (Exh. 5), and some depositions likely not taken. (Doc. 60-8, Brown Decl. ¶ 9)

For example, interior office video recordings, which disclosed the individuals' engaged in the breach activities, were not produced until September 17, 2022. By then seven depositions had been taken, including the CCBOER Rule 30(b)(6) deposition, without the benefit of this highly relevant and essential evidence. (Doc.60 at 4) Election Supervisor Misty Hampton's responsive breach-related emails were not produced when subpoenaed in June 2022, but only unearthed in significant forensic efforts by CGG's expert in late November 2023 after court intervention to permit Plaintiffs to obtain the image of the CCBOER desktop computer from the GBI. (Doc. 60-2, Skoglund Decl. ¶ 5)

Also materially impairing the discovery process and prejudicing Plaintiffs was CCBOER and HBS's withholding of relevant communications of its former election directors related to election security and the breaches. There was no claim that the communications were lost or deleted; they were confirmed to have been "archived" on the county server. They were simply withheld.  Plaintiffs located the

---

³ Curling Plaintiffs and Coalition Plaintiffs as co-plaintiffs in *Curling v. Raffensperger* jointly conducted all discovery and cooperated in drafting all discovery requests and subpoenas, and shared all documents produced.

communications from other sources long after the relevant depositions were taken and months after discovery closed.

As explained in the Motion (Doc. 60 at 7-9), CCBOER never produced certain responsive documents from CCBOER's desktop computer used by at least three successive election supervisors, Hampton, Barnes and Roberts. More than sixteen months after the documents should have been produced, Plaintiff received a forensic copy of the drive from the GBI. To locate responsive documents on the drive, Plaintiff's technical experts and lawyers had to spend many hours retrieving the documents while ensuring non-responsive and privileged documents on the drive were segregated from responsive documents. (Brown Supp. Decl. ¶ 7). This additional work would have been unnecessary had CCBOER searched its desktop and county archived files for responsive documents and timely produced them.

As explained in his February 20, 2024, Declaration (Doc. 60-2), Plaintiff's expert Kevin Skoglund spent at least 58 hours locating responsive documents on the GBI disk and segregating them from nonresponsive and privileged documents. As explained in his Supplemental Declaration, Mr. Brown spent an additional 5.9 hours working with the technical experts to develop and implement protocols for the appropriate search and retrieval of the documents. (Brown Supp. Decl. ¶ 8).

From August 2022 through 2023, Plaintiff's counsel had to continue communicating with CCBOER's counsel in an effort to secure compliance with the

5

subpoenas. As explained in his Supplemental Declaration, Mr. Brown spent an additional 11.8 hours on this effort. (Brown Supp. Decl. ¶¶ 5, 6). Corrections of errors in the original Motion for Sanctions (Doc. 60) are listed in Exhibit 6 hereto.

## Identified Incremental Discovery Fees and Expenses

The following discovery efforts would likely not have been undertaken absent the prejudice caused by CCBOER and HBS's misconduct: (i) four depositions, (Decl. Brown Doc. 60-8, ¶9), (ii) time required for acquiring, securing and organizing discovery on the GBI image of the CCBOER desktop to obtain responsive election supervisor emails, (iii) efforts to obtain from Mr. Chaney improperly withheld (or spoliated) documents, and (iv) efforts associated with the Motion to Compel and this Motion would likely not have been required. Plaintiffs have undertaken to identify the attorney, expert, and litigation support team time associated with discrete activities caused by the prejudice to plaintiffs. The time and expenses are summarized as follows:

Bruce P. Brown (Decl. Doc. 60-8, 69 ¶ 8) $38,250
Brown Supplemental Decl. Exh. 7= $11,062.50.
Cary Ichter (Decl. Doc 60-9) $77,333.83
Kevin Skoglund (Decl Exh 8)= $46,347.78
Susan Greenhalgh (Exh 9 at ¶ 8) )= $1,575
Marilyn Marks (Decl. Exh 10) = $ 26,250
**Total $200,819.10**

**Fees and Expenses Associated with Coffee Breach Baseline Discovery Efforts**

The prejudice to Plaintiffs' discovery efforts and the harm to the public cannot be scientifically quantified.  Certain CCBOER officials knew of or participated in the breaches, while others, including HBS, had documents disclosing the security failures, and were obligated as officials and officers of the court to cooperate with civil litigation discovery efforts. Plaintiffs have provided a summary of time and expenses of Coffee County breach-related discovery efforts. (Exh 11).

## Conclusion

Plaintiff CGG respectfully requests the Court to grant compensatory sanctions totaling $200,819.10 for discovery that would likely not have been required absent CCBOER's and HBS's discovery misconduct. Plaintiff further requests the Court to grant sanctions of no less than $300,000 to deter CCBOER and HBS from future misconduct.

Respectfully submitted this 4th day of March 2024.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ William Daniel Davis* |
| BRUCE P. BROWN | WILLIAM DANIEL DAVIS |
| Georgia Bar No. 064460 | Georgia Bar No. 746811 |
| bbrown@brucepbrownlaw.com | ddavis@ichterdavis.com |
| **BRUCE P. BROWN LAW LLC** | CARY ICHTER, *Pro Hac Vice* |
| 1123 Zonolite Rd. NE, Suite 6 | Georgia Bar No. 382515 |
| Atlanta, Georgia 30306 | cichter@ichterdavis.com |
| (404) 881-0700 | **ICHTER DAVIS LLC** |
| | 400 Interstate N. Pkwy, SE, Suite 860 |
| | Atlanta, Georgia 30339 |
| | (404) 869-7600 |

**_Attorneys for Coalition for Good Governance_**

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

>*/s/ Cary Ichter*
>Cary Ichter
>Georgia Bar No. 382515
>cichter@ichterdavis.com