IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE and DONNA CURLING,<br><br>Plaintiffs,<br><br>v.<br><br>COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,<br><br>Defendant. | Civil Action No. 5:23-mc-00001-LGW-BWC<br><br>In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division,<br>Civil Action File No. 1:17-CV-2989-AT |

**PLAINTIFF COALITION FOR GOOD
GOVERNANCE'S RESPONSE TO DEFENDANT'S MOTION TO STAY
AND MOTION TO STRIKE PLAINTIFF COALITION FOR GOOD
GOVERNANCE'S MOTION FOR SANCTIONS**

Plaintiff Coalition for Good Governance ("CGG" or "Plaintiff") files this Response to Defendant Coffee County Board of Elections and Registration's ("CCBOER" or "Defendant") Motion to Stay and Motion to Strike Plaintiff Coalition for Good Governance's Motion for Sanctions ("Motion to Strike"), showing the Court as follows:

**RELEVANT BACKGROUND**

In its December 22, 2023 Order granting in part and denying in part Plaintiffs' Motion to Compel, the Court directed Plaintiffs to file any sanctions motion related to the Motion to Compel" within 30 days of the issuance of [that] Order." (Doc. 41,

1

fn. 1). Subsequently, on January 18, 2024, this Court extended the time for Plaintiffs to "file any motion seeking sanctions [to] on or before February 19, 2024 [President's Day]." (Doc. 46.) On Friday, February 16, 2024, counsel for the Plaintiffs, Cary Ichter, reached out to Kim Mixon, the courtroom Deputy for this Court "to inquire if the holiday meant the deadline rolled over to Tuesday the 20th, but Ms. Mixon was out of the office, and [he] was directed to Ms. Gail Holt." (Doc. 66-2 at 3.) Mr. Ichter made the same inquiry of Ms. Holt and after telling Mr. Ichter the Court would "be closed on President's Day[,]" Ms. Holt directed Mr. Ichter to "Fed.R.Civ.P. 6 or Fed.R.Cr.P. 45." (Doc. 66-1 at 2-3.)

Given the direction from court staff, Mr. Ichter, on the morning after the President's Day Holiday, emailed Ms. Mixon (copying Defendant's counsel) to inform her of CGG's intention to file its Motion for Sanctions later that day and to inquire into whether CGGs should file a separate motion to exceed the page limitation. (Doc. 66-2 at 4.) Despite being aware for over a month that CGG intended to file its Motion for Sanctions (*see* Doc. 42), Defendant's counsel responded to Mr. Ichter's email arguing that CGG's Motion for Sanctions was untimely and stating Defendant's opposition to "an after-the-fact extension of [the] deadline." (Doc. 66-2 at 4.) Mr. Ichter then responded explaining his efforts in reaching out to the Court to determine whether said motion was, in fact, due on the President's Day Holiday and his good faith understanding of Rule 6. (*Id.* at 3.) After Defendant's counsel and

2

Mr. Ichter exchanged another round of emails setting forth their interpretations of Rule 6 (*see id.* at 2-3), CGG, later that evening, filed its Motion to Exceed Page Limit (Doc. 58) and Motion for Sanctions (Doc. 60). Notably, throughout the February 20th email exchange, Ms. Mixon did not respond to any email from counsel.

Defendant opposed CGG's Motion to Exceed Page Limit on February 21, 2024 (*see* Doc. 63), making virtually the same arguments it now makes in its present Motion to Strike. However, two days later, the Court, via electronic text order, granted CGG's Motion to Exceed Page Limit. Five days later, Defendant filed the present Motion to Strike. (Doc. 66.)

## ARGUMENT

### A. Because the Deadline Fell on a Legal Holiday, CGG's Motion for Sanctions Should be Deemed Timely.

Given that the deadline for CGG's Motion for Sanctions fell on the President's Day Holiday and given Plaintiff's counsel's good faith interpretation of Rule 6 in light of direction from court personnel, CGG's Motion for Sanctions should be deemed as timely. Indeed, in *JLM Advanced Tech. Servs., Inc. v. Int'l Paper Co.*, No. CV410-218, 2011 WL 1303646, at *1 (S.D. Ga. Apr. 4, 2011)—a case remarkably similar to the present case involving a filing deadline that fell on the President's Day Holiday—the Court determined that the filing was still timely despite it being filed the day after President's Day. As explained by the Court:

3

> Nevertheless, the Court finds that A & H's motion was not untimely. ***It is the longstanding policy of this Court to set dates certain that do not fall on weekends or legal holidays***. Scheduling the deadline for filing motions to amend for February 21, a legal holiday as defined by Fed.R.Civ.P. 6(a)(6), was an oversight. Accordingly, the Court hereby amends the scheduling order to set February 22, 2011 as the final day for filing motions to amend. Under the revised scheduling order, A & H's motion is timely.

*Id.* (emphasis supplied and internal citations omitted). Given the Court's "longstanding policy" not "to set dates certain that…fall on weekends or legal holidays," CGG respectfully requests that this Court deem as timely its Motion for Sanctions filed the day after the holiday.

A policy that renders submissions filed the day after a legal holiday deadline is not uncommon. Indeed, in *Galaxy Am., Inc. v. EZ Inflatables, Inc.*, No. 2:19-CV-855-JES-MRM, 2021 WL 12092648, at *4 (M.D. Fla. Aug. 17, 2021), the court echoed the rationale of the *JLM* court:

> Nevertheless, the Court will deem Plaintiff's motion to be timely. It is the Court's long-standing practice to set case management deadlines for set dates that do not fall on weekends or federal holidays. In setting the deadline at issue, the Court deferred to the parties' joint request. (*See* Docs. 66 at 4; Docs. 67-68). Thus, the selection of the deadline was not an error by the Court. In any case, the Court finds the delay in filing the motion was *de minimis* and excusable. Accordingly, the Court deems the motion timely.

*Id.*

Moreover, all the cases cited by Defendant are inapposite. First, *Robinson v. Johnson*, No. 6:19-CV-53, 2021 WL 2933183, at *1 (S.D. Ga. June 11, 2021), involved the filing of a motion for summary judgment "more than three weeks after

4

the Court's deadline." *Id.* The deadline in *Robinson* was on Friday, March 19, 2021, not a legal holiday. *Id.* Further, unlike the *Robinson* plaintiff, CGG did, in fact, provide representations to the Court as to the basis for the timing of its filing, and further does so by the filing of this Response.

Next, in *Raury Tullis & Rauricus, LLC v. Holt*, No. 1:14-CV-03993-RWS, 2015 WL 12086086, at *1 (N.D. Ga. Nov. 3, 2015), the defendants failed to file an answer for approximately five months, filed a motion for extension of time that was granted by the court, but then again failed to answer. *Id.* After the court denied the defendants' second motion for extension of time, defendants, nevertheless, filed their answer and a motion to vacate the default. *Id.* Based on all those facts and the fact that the defendants did not even respond to the motion to strike, the court granted the plaintiffs' motion to strike defendants' untimely answer pursuant to Rule 12(f), rather than Rule 6(b). *Id.* at *2.

The facts in the present case are not even remotely close to those in *Raury*. CGG sought to timely file its Motion for Sanctions, has responded to Defendant's arguments through this filing, and, to the extent this Court determines their filing was one day late due to a good faith interpretation of Rule 6, has demonstrated excusable neglect as further specified below.

Lastly, in *Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248 (11th Cir. 2005), the plaintiff filed an untimely opposition to a motion for summary judgment

5

four days after the Friday, February 27, 2004, deadline, did not explain why her opposition was tardy, and failed to oppose the defendants' motion to strike. *Id.* at 250. ***None*** of these facts exist in the present case.

Contrary to Defendant's implications, nothing required CGG to preemptively rebut in its Motion to Exceed Page Limit the arguments Defendant made it its opposition motion that it now regurgitates in its Motion to Strike. And as further specified below, by virtue of this Response, CGG is respectfully requesting that this Court treat this Response as a motion for extension of time to the extent it deems the Motion for Sanctions untimely.

Given that the deadline for CGG to file its Motion for Sanctions fell on the President's Day Holiday, CGG respectfully requests that this Court deem its motion filed the following business day as timely.

**B. To the Extent the Court Deems the Motion for Sanctions Untimely, CGG Respectfully Requests this Court Construe this Response as a Motion for Extension of Time Pursuant to Rule 6(b)(1)(B).**

To the extent the Court does not construe the Motion for Sanctions as timely despite the deadline falling on a legal holiday, CGG respectfully requests that the Court construe this Response as a motion for extension of time pursuant to Rule 6(b)(1)(B). *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720 (11th Cir. 2020) ("Although the body shops never moved for relief under Rule 6, ***the district court construed their briefs opposing the insurance***

***companies' motions to strike their second amended complaints as motions for an extension of time under Rule 6(b)(1)(B).***") (emphasis supplied); *Rance v. Rock Solid Granit USA, Inc.*, No. 08-21639-CIV, 2011 WL 906643, at *2 (S.D. Fla. Feb. 9, 2011), *report and recommendation adopted sub nom.* ("[T]he Court recommends that Defendant's Response Brief (D.E.# 87) be viewed as a *nunc pro tunc* motion to extend time to file an answer and affirmative defenses and be granted…")[1]

Rule 6(b)(1)(B) allows for extending time "on motion made after the time has expired if the party failed to act because of excusable neglect." In determining the standard of excusable neglect under Rule 6(b), the Supreme Court has stated that "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

"Whether neglect is excusable is an equitable determination 'taking account of all relevant circumstances surrounding the party's omission.'" *Fisher v. Off. of State Att'y 13th Jud. Cir. Fla.*, 162 F. App'x 937, 940 (11th Cir. 2006) (quoting *Pioneer*, 507 U.S. at 395)); *see also Davison v. Nicolou*, No. CV616-039, 2017 WL

---

[1] Should the Court require a separately filed motion, CGG would likely assert the very same arguments asserted in this Response. Such a separate filing would be a waste of judicial time and resources.

3726712, at *1 (S.D. Ga. Aug. 29, 2017) ("But the inquiry for 'excusable neglect' under Rule 6(b) 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'") (quoting *Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1201 (11th Cir. 1999)).

"These circumstances include the danger of prejudice to the opposing party, 'the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Fisher*, 162 F. App'x at 940.

"[P]rimary importance" is given "to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration[.]" *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (holding that nonmovant was not prejudiced by movant's six-day delay); *see also Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 686 (11th Cir. 2013) ("We have noted that, in *Pioneer*, the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration.") (citing *Cheney*, 71 F.3d at 850)).

Moreover, in cases involving similar facts, courts have consistently allowed for extensions of time due to a good faith (though potentially erroneous) interpretation of Rule 6. In *Manhattan Constr. Co. v. Phillips*, No. 1:09-CV-1917-WSD-AJB, 2011 WL 13214355, at *4 (N.D. Ga. May 11, 2011), the court, when

8

assessing whether plaintiff's counsel's reliance on communications with court personnel regarding a legal holiday filing deadline, reasoned and found as follows:

> The question then remains whether the District Court extended the deadline under Local Rule 37.1(B) when the Deputy Clerk advised via e-mail that the motion could be filed after the Memorial Day Holiday. Regardless whether the e-mail constituted a formal ruling, the Court finds that Plaintiff acted reasonably in reliance on the e-mail communication, because here: (1) although Plaintiff's counsel should have consulted opposing counsel before contacting the District Court's Deputy Clerk, Plaintiff's counsel's reliance on the assurance that the filing could be made on June 1 was not entirely unreasonable; and (2) any technical lateness was not prejudicial to Defendants. Therefore, the Court concludes that to strictly enforce the time limitations in such a circumstance would be unjust.

*Id.* (internal citation omitted).

The court in *Nature's Prod., Inc. v. Natrol, Inc.*, No. 11-62409-CIV, 2013 WL 12061813, at *2 (S.D. Fla. Aug. 16, 2013), made a similar finding in noting counsel's good faith and justifiable interpretation of Rule 6:

> Here, NPI filed the Motion for Summary Judgment [DE 212] and Motion to Seal [DE 213] on the Monday three days after the Friday deadline. The three-day delay neither prejudiced Natrol nor impacted the judicial proceedings. The delay occurred because of NPI's good-faith interpretation of Rule 6(a). ***Although the Court ultimately disagrees with that interpretation, there is legal precedent supporting NPI's viewpoint. These circumstances do not support a finding of bad faith. Thus, the relevant factors indicate that the untimeliness resulted from excusable neglect.***

*Id.* (emphasis supplied).

Importantly, in determining whether to allow a late filing, the Eleventh Circuit expresses a "strong preference that cases be heard on the merits," *Wahl v. McIver*,

9

773 F.2d 1169, 1174 (11th Cir. 1985), and "strive[s] to afford a litigant his or her day in court, if possible." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005).

Defendant "does not even suggest that [it] would be prejudiced by the filing, much less that the Court's own interest in efficient judicial administration would be harmed or that [CGG] acted in bad faith." *Nicolou*, 2017 WL 3726712 at *1 n. 1. Instead, Defendant's argument simply boils down to indignation that CGG filed its Motion for Sanctions ***one day*** after the legal holiday deadline, a motion that Defendant knew would be filed over a month before the filing and for which Defendant has already obtained an extension of time to respond. *See id.* ("[P]laintiff offers little but indignation at the untimeliness (it was filed twelve hours and four minutes after the deadline) in support of striking the supplemental response."); *see also Rance*, 2011 WL 906643 at *2 (finding excusable neglect where, among other reasons, filing answer one month after deadline had "no potential impact on the instant judicial proceedings"); *Santillana v. Fla. State Ct. Sys.*, No. 609-CV2095-ORL-19KRS, 2010 WL 1532337, at *2 (M.D. Fla. Apr. 16, 2010) (twenty-two day delay after deadline did not prejudice defendants).

To the extent the Court deems the Motion for Sanctions as untimely, "the relevant factors militate in favor of permitting the untimely filing," and Defendant's Motion to Strike should be denied. *Nicolou*, 2017 WL 3726712 at *1 n. 1.

10

C. **<u>Defendant's Request to Stay Its Deadline to Respond to Plaintiff's Motion for Sanctions Should Be Denied.</u>**

"The District Court has broad discretion to stay proceedings as ... incident to its power to control its own docket," but "[t]he proponent of a stay bears the burden of establishing its need." *Frankenmuth Mut. Ins. Co. v. Horne*, No. 1:19-CV-091 (LAG), 2019 WL 9852792, at *1 (M.D. Ga. Aug. 19, 2019) (quoting *Clinton v. Jones*, 520 U.S. 681, 706, 708 (1997)). Defendant has failed to meet this burden.

Defendant was aware since at least early January of CGG's intentions to file its Motion for Sanctions, and this Court has already agreed to an extension of time for Defendant's response until March 19, 2024. Moreover, the Motion to Strike does not speak to the merits of Plaintiff's Motion for Sanctions, but instead seeks a procedural escape hatch on the basis of a purported 24-hour delay in filing a motion Defendant knew was going to be filed.

Further, since Defendant relies on case law related to stays of discovery pending dispositive motions, such standards should likewise apply to Defendant's current stay request. "'A stay of discovery is appropriate where the movant shows good cause and reasonableness.'" *Horne*, No. 2019 WL 9852792 at *1 (quoting *Krukever v. TD Ameritrade, Inc.*, 2018 WL 2382008, at *1 (S.D. Fla. May 23, 2018)). Such "stays of discovery are seldom granted, but courts have held that good cause to stay discovery exists when resolution of a dispositive motion may dispose

11

of the entire action." *Pernsteiner v. Jacksonville Univ.*, No. 3:23-CV-246-BJD-MCR, 2023 WL 4201185, at *2 (M.D. Fla. June 27, 2023).

"When reviewing a motion to stay discovery, a district court must balance the harm produced by the delay in discovery against the possibility that the pending motion will be granted and entirely eliminate the need for such discovery." *Horne*, 2019 WL 9852792 at *1 (citation and punctuation omitted). "In making this determination it may be helpful for the court to take a 'preliminary peek' at the merits of the dispositive motion to assess the likelihood that such motion will be granted." *Id.* (citation and punctuation omitted).

Should the Court take a preliminary view of Defendant's Motion to Strike and Plaintiff's Response, it will see that "it is not apparent from the face of [Defendant's Motion to Strike] that there is an 'immediate and clear possibility that [it] will be granted" as could merit a stay of Defendant's deadline to respond to Plaintiff's motion. *Pernsteiner*, 2023 WL 4201185 at *2 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)).

Striking Plaintiff's Motion for Sanctions would not be dispositive of this entire action. Further, "[t]he harm produced by a [delay in the Court's decision on Plaintiff's Motion for Sanctions]…would impede judicial economy and the efficient resolution of this case." *Horne*, 2019 WL 9852792 at *1. And there is no prejudice to Defendant in denying its stay request. It would simply be required to respond to

12

the Motion for Sanctions within the additional time to which Plaintiffs have consented.

Moreover, *Clinton v. Jones*, 520 U.S. 681, 687 n. 7 (1997), cited by Defendant, involved a stay during an appeal of the denial of a motion to dismiss based on presidential immunity, an appeal that arguably stripped the trial court of jurisdiction. Such is not the case in the situation before this Court. Despite having received Plaintiffs' Motion for Sanctions on February 20, 2024, Defendant waited over a week before requesting a stay of its deadline to respond. And given that Defendant's response deadline has already been extended to March 19, 2024, Defendant will have had 28 days—double the time allotted for responses under the Local Rule 7.5—to respond to Plaintiffs' Motion for Sanctions.

The Motion to Strike is not about the legal sufficiency of a claim as is the case in motions to stay discovery pending the resolution of a motion to dismiss. This is about a discovery motion for sanctions filed by Plaintiff. Defendant is not required to respond to voluminous discovery. It simply is required to respond to a motion. Thus, Defendant's protestations about incurring "unnecessary costs and expense[s]" are baseless. Lastly, given Defendant and its counsel's conduct in prejudicing Plaintiffs' discovery efforts and related litigation activities as laid out in the Motion

for Sanctions, it is the height of irony for Defendant to now feign concern for unnecessary costs and expenses.[2] The Court should deny Defendant's stay request.

## CONCLUSION

For all of the foregoing reasons, CGG respectfully requests that the Court deny Defendant's Motion to Strike.

Respectfully submitted this 5th day of March 2024.

*/s/ William Daniel Davis*
WILLIAM DANIEL DAVIS
Georgia Bar No. 746811
ddavis@ichterdavis.com
CARY ICHTER, Pro Hac Vice
Georgia Bar No. 382515
cichter@ichterdavis.com
**ICHTER DAVIS LLC**
400 Interstate N. Pkwy, SE, Ste 860
Atlanta, Georgia 30339
(404) 869-7600

*/s/ Bruce P. Brown*
BRUCE P. BROWN
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Rd. NE, Ste 6
Atlanta, Georgia 30306
(404) 881-0700

*Counsel for Coalition for Good Governance*

---

[2] To be clear, Plaintiff is not claiming that CCBOER's lead counsel in this litigation, Benjamin M. Perkins, Esq., or any of his colleagues at Oliver Maner, have engaged in any improper conduct or should be sanctioned in any way.

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2024, a copy of the foregoing COALITION FOR GOOD GOVERNANCE'S RESPONSE TO DEFENDANT'S MOTION TO STAY AND MOTION TO STRIKE PLAINTIFF COALITION FOR GOOD GOVERNANCE'S MOTION FOR SANCTIONS was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

                                */s/ William Daniel Davis*
                                WILLIAM DANIEL DAVIS
                                Georgia Bar No. 746811
                                ddavis@ichterdavis.com