**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | | |
|---|---|---|
| COALITION FOR GOOD GOVERNANCE and DONNA CURLING, | ) ) ) | |
| | ) | Civil Action No. 5:23-mc-00001-LGW-BWC |
| Plaintiffs, | ) ) | |
| | ) | In RE Subpoenas issued by the United States |
| v. | ) | District Court For the Northern District of |
| | ) | Georgia, Atlanta Division, Civil Action No. |
| COFFEE COUNTY BOARD OF | ) | 1:17-CV-2989-AT |
| ELECTIONS AND REGISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF CGG'S MOTION
FOR SANCTIONS AGAINST DEFENDANT CCBOE AND COUNSEL**

---

Defendant Coffee County Board of Elections and Registration (the "CCBOE") files this Response in Opposition to Plaintiff Coalition for Good Governance's ("CGG") Motion for Sanctions (Doc. 60). The motion should be denied because the CCBOE, a nonparty in the underlying action, did not act in bad faith, engaged in extensive discovery, and any nondisclosure by the CCBOE was substantially justified. Moreover, counsel for the CCBOE, Hall Booth Smith, P.C. ("HBS"), did not act in bad faith and has satisfied its discovery obligations by making a reasonable inquiry with respect to the CCBOE's discovery responses.

## INTRODUCTION

Plaintiff's motion is built on conspiracy theories, misrepresentations, unsupported factual assertions, and an utter lack of substance.  For example, Plaintiff claims documents should have been produced but were not, but Plaintiff does not identify which of the two subpoenas—much less which of the 66 requests within the subpoenas—the

documents allegedly would have been responsive to. (Doc. 60; Doc. 70). Plaintiff claims the CCBOE failed to produce "highly relevant" documents but doesn't explain how they were relevant.  (Doc. 60, pp. 2, 8; Doc. 60-4, ¶ 17).  Plaintiff repeatedly claims it was prejudiced by the CCBOE's discovery conduct but fails to explain how it was prejudiced. (Doc. 60, pp. 6, 8, 9).  Plaintiff claims misconduct in one brief but buries a retraction of its contention in the next. (Compare Doc. 60, pp. 12-13 with Doc. 70-6).   In one particularly inflammatory instance, Plaintiff asks the Court to believe a wild and unsupported conspiracy theory: that the CCBOE only produced the surveillance videos of the infamous breach because the GBI requested them and lying to the GBI could result in a felony charge.  (Doc. 60 p. 5).

The foregoing issues are explored in more detail *infra* at pp. 8-11. Suffice to say, Plaintiff's motion has no place in this or any Court.  The motion should be denied, and the Court should award sanctions to the CCBOE.

## **PROCEDURAL HISTORY**

This matter arises from the CCBOE's responses to two subpoenas that were issued by the United States District Court for the Northern District of Georgia in *Curling v. Raffensperger, et al.*, No. 1:17-CV-2989-AT (the "*Curling* case"). Plaintiffs Donna Curling, CGG, and others filed the *Curling* case in 2017. By the time the case was tried in January of 2024, the focus of the *Curling* case was "whether Georgia's statewide electronic voting system, as currently designed and implemented, suffers from major cybersecurity deficiencies that unconstitutionally burden Plaintiffs' First and Fourteenth Amendment rights and capacity to case effective votes that are accurately counted." Order, Curling v. Raffensperger, Civil Action No. I:  17-cv-2989 (N.D. Ga. Nov. 10, 2023), ECF No. 1705.

Given the enormity of the sanctions sought by Plaintiff (more than $500,000), it is critical to note that the CCBOE is not a party to the *Curling* case.[1] On June 15, 2022, and July 25, 2022, the District Court for the Northern District of Georgia issued third-party document subpoenas to the CCBOE. (Doc. 1-1; Doc. 1-2). Due to issues with the document production deadline on Plaintiff CGG's subpoenas, the CCBOE did not accept service of them until sometime after August 5, 2022. (Exhibit A, Brown and Herzog 8/5/2022 Email ("I recall that you emailed me two subpoenas from CGG and asked that I accept service which I declined to do until the dates were modified.")). Plaintiffs and the CCBOE began conferral immediately after the subpoenas were issued. (Doc. 41, p. 3). In August 2022, the CCBOE provided written responses to both subpoenas, produced documents, and served a categorized privilege log for withheld documents. (Doc. 25-2, p. 3; Doc. 29-1, p. 2).

On October 24, 2023, Plaintiffs Curling and CGG filed a Motion to Compel concerning the two subpoenas served on the CCBOE. (Doc. 1.)  In their Motion to Compel, Plaintiffs asked the Court to compel the CCBOE "(1) to make all reasonable efforts to obtain the records from the GBI, and (2) to conduct a thorough review of the records it

---

[1] Despite the CCBOE's status as a nonparty, Plaintiff argues that "[b]ut for the efforts of the lawyers and election security experts assembled for the *Curling* litigation, there would be no accountability for the Coffee County breaches." (Doc. 70, p. 1). Plaintiff's language suggests that this motion is less about alleged discovery violations and more about "punishing" the CCBOE for the now-infamous breaches. (Doc. 60, p. 17 ("[The CCBOE] should be punished to deter future similar misconduct."); p. 21 ("Sanctions are warranted to punish and deter such egregious misconduct."); p. 22 ("Dishonesty by public officials and their counsel, particularly when it involves false swearing, is simply unacceptable and should be punished.")). The CCBOE unequivocally condemns the breaches, and it is undisputed that the CCBOE did not authorize them.  Plaintiff ostensibly seeks sanctions for non-existent discovery violations, but the truth is different. Plaintiff wants the Court to punish the CCBOE for the "misguided criminal conduct of" those actually responsible for the Coffee County breaches. (Doc. 70, p. 1).

3

continues to hold for additional responsive materials." (Doc. 1, p. 15). "The bulk of Plaintiffs' initial Motion focused on Hampton's desktop (and documents contained on that device), the request for a compliant privilege log, and concerns about the silver laptop." (Doc. 41, pp. 15-16). Ultimately, the Motion to Compel was narrowed to four issues: "(1) Plaintiffs' request for documents located on Misty Hampton's desktop computer; (2) Plaintiffs' request for documents located on Hampton's silver laptop; (3) the sufficiency of the Board of Elections' privilege log of withheld materials; and (4) Plaintiffs' request for the Board of Elections to conduct additional searches for responsive materials, including internal communications and documents held by third parties." (Doc. 41, pp. 4-5).

The Court granted in part and denied in part Plaintiffs' Motion to Compel. (Doc. 41). First, the Court denied as moot Plaintiffs' request for documents located on Hampton's desktop computer because the desktop was produced to Plaintiffs by the Secretary of State on November 17, 2023. (Doc. 41, p. 5). Second, the Court denied Plaintiffs' request to depose Tony Rowell, Wesley Vickers, and Charles Dial about the location of the silver laptop computer Misty Hampton used at the CCBOE's office and concluded that the CCBOE "has conducted a diligent search — as described in counsel's declarations — and no silver laptop has been found." (Doc. 41, p. 8). Third, the Court granted Plaintiffs' request that the CCBOE provide a compliant privilege log because the CCBOE "failed to show a categorical privilege log is appropriate in this case" and "has not demonstrated it would suffer any undue burden in providing an itemized privilege log." (Doc. 41, p. 15). Fourth, the Court denied Plaintiffs' request for the CCBOE to search for and produce responsive material under its control and in the possession of third parties

because "Plaintiffs have not shown any such documents exist or are likely to exist or that such documents would provide any discernible value to the *Curling* case." (Doc. 41, p. 18).

Pursuant to the Court's Order, the CCBOE served a revised privilege log on Plaintiffs on January 3, 2024. (Doc. 51, p. 2). The Court provided Plaintiffs the opportunity to file a motion challenging the CCBOE's privilege designations in the new privilege log. (Doc. 46). After an extension of time, Plaintiffs filed a Motion for In Camera Review and challenged the privilege designations of 25 of the roughly 2,670 documents identified on the privilege log. (Doc. 51). After conferral, the CCBOE produced the 25 documents.[2] (Exhibit B, CCBOE's Counsel 2/9/24 Email).

On February 20, 2024, Plaintiff CGG[3] filed its Motion for Sanctions against the CCBOE and HBS seeking sanctions pursuant to Rule 37(a)(5), Rule 26(g), 28 U.S.C. § 1927, and the inherent authority of the Court. (Doc. 60). Plaintiff seeks an award of sanctions related to the CCBOE's production of video recordings, the production of documents located on Misty Hampton's desktop computer, the CCBOE's privilege log, and the deposition testimony of the CCBOE's 30(b)(6) witness. (Doc. 60, pp. 2-13). For

---

[2] Plaintiff argues that the CCBOE produced the 25 documents without contesting Plaintiffs' privilege challenges. (Doc. 60, p. 19 ("[The CCBOE] continued to advance privilege objections that were so plainly meritless that when they were challenged, counsel withdrew the objections without contesting the challenge")); (Doc. 60, p. 11 ("Indeed, with every designation of the few Plaintiffs had time to challenge, including those in Plaintiffs' Motion for In Camera review, concerning communications with Dial, the IT contractor, CCBOER withdrew the privilege designation and produced the documents.")). Plaintiff's representations ignore that the CCBOE produced the 25 documents for the sake of conserving judicial resources and Coffee County taxpayer dollars. (Ex. B, p. 1 ("While we feel the documents are not responsive, not reasonably calculated, not proportional, and/or privileged, we have decided that further argument over those questions would result in a waste of judicial resources and Coffee County taxpayer dollars. Attached are the documents.")).
[3] Plaintiff Donna Curling did not file a motion for sanctions.

the reasons discussed below, Plaintiff is not entitled to an award of sanctions, and the Court should deny Plaintiff's motion.

## STATEMENT OF FACTS

### a. Factual Background

In January 2021, former Elections Supervisor Misty Hampton, former CCBOE Board member Eric Chaney, and several other misguided individuals tarnished the reputation of Coffee County on a national level. (Doc. 60, p. 2; Doc. 60-4, ¶ 9). The CCBOE does not dispute that Ms. Hampton and Mr. Chaney allowed individuals to enter the CCBOE office and inspect elections equipment (the "breach"). This was an *ultra vires* act performed without the approval or knowledge of the other members of the CCBOE by a select few individuals no longer associated with or employed by Coffee County. (Doc. 60, pp. 2-3).

The CCBOE has two full time employees—an Elections Supervisor and a clerical assistant. (Exhibit C, Declaration of Jennifer Herzog, ¶ 7). Coffee County contracts with Southeast Georgia Computer Consulting & Engineering ("SGCCE") for IT services. (Ex. C, Dec. of Herzog, ¶ 6). Senior consultant/technician and owner Charles Dial is the main point of contact for SGCCE. (Ex. C, Dec. of Herzog, ¶ 6).

In March 2022, the CCBOE began receiving a substantial number of broad open records requests related to the 2021 breach, which, when combined with regular duties of the Coffee County personnel, immediately overwhelmed the small staff. (Ex. C, Dec. of Herzog, ¶ 5). Many of these requests came from Plaintiff's Executive Director, Marilyn Marks. (Ex. C, Dec. of Herzog, ¶¶ 9, 11). In the following months, the CCBOE handled subpoenas, criminal investigations, media inquiries, and state government agencies asking for and ultimately seizing equipment in addition to a great deal of open records

6

requests. (Ex. C, Dec. of Herzog, ¶¶ 11, 13, 14, 22, 23). In 2022 and 2023, Coffee County and counsel for the CCBOE, Jennifer Herzog, methodically managed each open records request received and produced thousands of responsive documents to Plaintiff, Ms. Marks, and others. (Ex. C, Dec. of Herzog, ¶ 11).

Coffee County and/or the CCBOE received numerous requests for video recordings that depicted the CCBOE's office during the breach. (Ex. C, Dec. of Herzog, ¶ 16). The SGCCE and Coffee County staff informed Ms. Herzog, both verbally and in writing, that the video was no longer in existence because the CCBOE security video system overwrites previously recorded videos after a certain number of days. (Ex. C, Dec. of Herzog, ¶ 16). This is not uncommon for counties in South Georgia. (Ex. C, Dec. of Herzog, ¶ 16). Ms. Herzog had no reason to believe that the information that staff and SGCCE gave her, and which she provided to those requesting the videos, was not accurate at the time. (Ex. C, Dec. of Herzog, ¶ 16).

After informing the parties that the video recording from the exterior of the CCBOE office was unavailable, video for a portion of the applicable time period requested by Plaintiffs was located. That clip was produced on August 27, 2022, shortly after it was found. (Doc. 60, p. 6). The exterior video clip was located because it had been saved prior to the normal overwriting process in early 2021 because an open records request for such video was submitted but never retrieved. (Ex. C, Dec. of Herzog, ¶ 17). In another fortunate twist, responsive video recordings from the interior of the CCBOE office, which requestors had been told were unavailable, were subsequently located by SGCCE on a Coffee County server during the course of other duties. (Ex. C, Dec. of Herzog, ¶ 19). Those interior video recordings were produced on September 17, 2022. (Doc. 60, p. 6).

Coffee County and/or the CCBOE also received numerous requests for Misty Hampton's emails from Ms. Marks, the GBI, and others. (Ex. C, Dec. of Herzog, ¶ 21). SGCCE, through its senior technician, Charles Dial, advised Ms. Herzog both verbally and in writing on numerous occasions that they could not locate/retrieve the emails from either Ms. Hampton's desktop or through web-based services and believed those emails to be permanently lost. (Ex. C, Dec. of Herzog, ¶ 21). Ms. Herzog had no reason to believe those representations were inaccurate, and thus she consistently stated in response to any open records requests and/or subpoenas, and to the GBI, that it was her understanding that Ms. Hampton's emails were no longer in existence. (Ex. C, Dec. of Herzog, ¶ 21).

Pursuant to a sealed search warrant, the GBI seized the desktop computer used by Ms. Hampton ("Hampton's Desktop") from the CCBOE in June 2023. (Ex. C, Dec. of Herzog, ¶ 23). Unbeknownst to the CCBOE, Coffee County, or HBS until notified by Plaintiffs in October 2023, the GBI's technology experts successfully recovered Ms. Hampton's emails from the desktop. (Ex. C, Dec. of Herzog, ¶ 24). Shortly thereafter, Plaintiffs Curling and CGG filed their Motion to Compel. (Doc. 1). The Secretary of State subsequently produced a forensic image of Hampton's Desktop to Plaintiffs on November 17, 2023, almost two months before trial. (Doc. 41, p. 5).

### b. **Many of Plaintiff's Assertions are Misleading, False, and Lack Evidentiary Support.**

In its Motion for Sanctions (doc. 60) and Supplemental Brief (doc. 70), Plaintiff repeatedly makes statements that, if believed, would mislead the Court. For example, Plaintiff claims the deposition of James Barnes "would have taken an entirely different course" if the CCBOE had "complied with the subpoenas." (Doc. 60, p. 9). However, Plaintiff fails to inform the Court that Plaintiff CGG's document subpoena was issued

5 days *after* Barnes's July 20, 2022 deposition (doc. 1-1), that service of the document subpoena wasn't perfected until August (Ex. A), and that the deadline for the CCBOE's production would be weeks after the deposition. (Doc. 1-1; Doc. 29-1, p. 2).

Plaintiff claims the CCBOE should be sanctioned because surveillance video was produced after the depositions of James Barnes, Jil Riddlehoover, Cathy Latham, and Benjamin Cotton, and that the purported delayed production "significantly prejudiced Plaintiffs' discovery efforts, including those specific depositions, and prolonged and impeded discovery of the documented evidence of the breaches." (Doc. 60, p. 6). Plaintiff conspicuously failed to inform the Court that the depositions were taken *before* the CCBOE's response to Plaintiff CGG's subpoena in which the videos were sought, and for some, *before* the document subpoena was served. (Ex. A); (Doc. 70-5; Doc. 29-1, p. 2).

Plaintiff claims the CCBOE "withheld" certain emails and surveillance videos when responding to Plaintiffs' subpoenas (implying they were located but not produced), yet fails to acknowledge there is no evidence the CCBOE had been able to access, much less locate those items when it responded to the subpoenas. (Doc. 60, p. 2 n.2, pp. 4-9, 22; Doc. 60-4, ¶ 15). Similarly, Plaintiff claims subpoenaed documents were not "timely produced by June 2022" (doc. 70, p. 4), but chose not to inform the Court that Plaintiff was fully apprised that the CCBOE would be responding to Plaintiff's subpoena in August 2022. (Doc. 1-1). Plaintiff claims the CCBOE and HBS "falsely represented" that certain records "did not exist, had been lost, or were otherwise inaccessible" (doc. 60, p. 4), yet fails to acknowledge the absence of evidence that the CCBOE or HBS knew at the time that the documents did exist, were not lost, or were otherwise accessible.

Plaintiff attacks CCBOE Board member Andy Thomas's credibility, claiming he "falsely" told the GBI he wasn't acquainted with 2 people (doc. 60, p. 13), but Plaintiff

failed to inform the Court that the GBI report Plaintiff cites for the proposition recounts that Mr. Thomas told the GBI he was Facebook friends with one of those people, and was familiar with and possibly Facebook friends with the other. (Exhibit D, GBI Report at Ex. 36).

In its Supplemental Brief, Plaintiff half-heartedly corrected some of the factual misrepresentations in its motion. (Doc. 70-6). Plaintiff originally alleged that the CCBOE's 30(b)(6) designee Wendell Stone "testified he was not aware of any [GBI] investigation, nor had he or anyone he knew of been contacted by the GBI concerning this matter" even though Stone, CCBOE Board member Matthew McCullough, and HBS ostensibly "met with the GBI on August 8, 2022, *three weeks before the deposition*." (Doc. 60, pp. 12-13) (emphasis in original). Buried in Exhibit 6 to its Supplemental Brief, Plaintiff acknowledged that Stone and McCullough actually met with the GBI on September 8 and 9, *after the CCBOE's 30(b)(6) deposition*. (Doc. 70-6).  At the CCBOE's request, the GBI confirmed this as well. (Exhibit E, GBI 3/1/2024 Letter).

Plaintiff also alleged that certain documents "could not be used at trial because of the last-minute production," but later corrected this statement to read "that although such late-located exhibits (found by Plaintiff on the CCBOER desktop image) were used at trial, Plaintiffs were highly prejudiced by the inability to develop related facts through timely discovery." (Doc. 60, p. 9 n.5; Doc. 70-6).  Plaintiff did not explain what facts it could have developed with this information, nor how such facts would be relevant to the relief Plaintiffs sought at trial (a return to hand-marked paper balloting system). And, regardless of whether the referenced documents were used at trial, Plaintiff did not attach them as exhibits to its motion nor demonstrate that they were responsive to its subpoenas. (See Doc. 60, p. 9 n.5).

Finally, Plaintiff repeatedly makes purported factual allegations that are not supported by citations to the record or evidence. The Court should disregard all of them. <u>See</u> S.D. Local Rule 7.1 ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion.").

Plaintiff's motion is so replete with issues that all of them cannot be addressed in this brief. However, the foregoing alone demonstrates the irony of Plaintiff's contention that the CCBOE and HBS multiplied the proceedings in this case "unreasonably and vexatiously." (Doc. 60, p. 19). Plaintiff should be sanctioned. The CCBOE and HBS should not.

## **ARGUMENT**

### I.    **Legal Standard**

"Courts have broad discretion in imposing sanctions upon a party." <u>Rollins v. A.R. Investigations, Inc.</u>, No. CV 109-38, 2010 WL 3672325, *2 (S.D. Ga. Sept. 17, 2010). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1307 (11th Cir. 2011) (quoting Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333 (11th Cir. 2005)). Moreover, the Court's ruling on Plaintiff's Motion for Sanctions will not be disturbed unless there is an abuse of discretion. "[A]n appeal of sanctions . . . is sharply limited to a search for abuse of discretion and a determination that the findings of the trial court are '***fully supported by the record***.'" <u>Carlucci v. Piper Aircraft Corp.</u>, 775 F.2d 1440, 1447 (11th Cir. 1985) (emphasis supplied).

### II.    **Fed. R. Civ. P. 37(a)(5)**

Plaintiff first argues that the Court should impose sanctions on the CCBOE pursuant to Fed. R. Civ. P. 37(a)(5). Fed. R. Civ. P. 37(a)(5) allows litigants to seek sanctions for motions to compel that are either granted, denied, or granted in part and denied in part. "[T]he award of sanctions under Rule 37(a)(5) turns on the specifics of each individual case." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011). "The party seeking sanctions under Rule 37 bears the burden of establishing that an opposing party failed to comply [with its discovery obligations]." DeepGulf Inc. v. Moszkowski, 333 F.R.D. 249, 253 (N.D. Fla. 2019). Here, Plaintiff argues that the CCBOE should be sanctioned under Rule 37(a)(5) for its conduct related to Hampton's desktop and the privilege log.[4] (Doc. 60, pp. 14-16).

### a. Sanctions are not mandatory because Plaintiffs' Motion to Compel was granted in part and denied in part.

Rule 37(a)(5) is broken down into three subsections, two of which are relevant here. Rule 37(a)(5)(A) mandates sanctions when a motion to compel is "granted—or if the disclosure or requested discovery is provided after the motion was filed." However, Rule 37(a)(5)(A) "only applies when a motion to compel is granted, not when it is granted in part and denied in part." Knights Armament Co. v. Optical Sys. Tech., Inc., 254 F.R.D. 470, 472 (M.D. Fla. 2008). Rather, for motions that are granted in part and denied in part, Rule 37(a)(5)(C) applies. "The primary difference between these two subsections is that an award is discretionary under Rule 37(a)(5)(C)." W. Mortg. & Realty Co. v. KeyBank Nat'l Ass'n, No. 113CV00216EJLREB, 2016 WL 11643651, at *1 (D. Idaho Jan. 4, 2016);

---

[4] Plaintiff does not contend the CCBOE should be sanctioned under Rule 37(a)(5) for conduct related to the video recordings, nor could it. Rule 37(a)(5) is only applicable to motions to compel discovery, and Plaintiffs did not seek any relief related to the video recordings in their Motion to Compel. (Doc. 1).

see also Goetz v. Maximus Fed. Servs., Inc., No. 5:23-CV-46-MCR/MJ, 2023 WL 8183827, at *8 (N.D. Fla. July 5, 2023) ("Rule 37(a)(5)(C) affords district courts discretion in deciding whether to award reasonable expenses, including attorney's fee.").

Plaintiffs' Motion to Compel was granted in part and denied in part. (Doc. 41). Therefore, Rule 37(a)(5)(C) applies, and sanctions are not mandatory. See Leathers v. State Farm Mut. Auto. Ins. Co., No. 1:12-cv-198-SCJ, 2012 WL 13014020, at *7 (N.D. Ga. Nov. 19, 2012) ("When a motion to compel is granted in part and denied in part, a court is not obligated to award expenses concerning the preparation of said motion."). The Court should exercise its discretion to deny Plaintiff's Motion for Sanctions.

### b. The Court must not impose sanctions if it finds that Plaintiff failed to confer in good faith, the CCBOE's response to the subpoenas was substantially justified, or other circumstances exist that make an award of expenses unjust.

Although Rule 37(a)(5)(C) applies and provides the Court discretion in deciding whether to impose sanctions, "the analysis of Plaintiff's request under subsection 37(a)(5)(A) or 37(a)(5)(C) is the same, and arguments pertaining to the exceptions to Rule 37(a)(5)(A) are equally applicable to the Court's determination of whether attorney fees should be apportioned under Rule 37(a)(5)(C)." W. Mortg. & Realty Co., 2016 WL 11643651, at *1; Barlow v. Herman, No. 2:13-CV-00033-JAD, 2015 WL 846568 (D. Nev. Feb. 26, 2015). The referenced exceptions to Rule 37(a)(5)(A) provide that "a Court must not order [payment of reasonable expenses and attorney's fees] if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). The Court should find these exceptions are applicable.

### c. Plaintiff is not entitled to sanctions because the CCBOE's conduct related to Hampton's Desktop is substantially justified.

Plaintiff asks the Court to sanction the CCBOE because it relied on its IT consultant's conclusion that the material Plaintiff sought was not accessible, and his conclusion later turned out to be wrong. The record contains no evidence that the CCBOE and HBS had reason not to rely upon the expertise of the CCBOE's consultant. Thus, the Court should find that the CCBOE's conduct was substantially justified. "[D]iscovery conduct should be found 'substantially justified under Rule 37 if . . . reasonable people could differ as to the appropriateness of the contested action.'" Devaney v Continental Am. Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). Moreover, this Court has held that "when the client . . . has an IT department, electronic discovery ***best practices*** include using those technology professionals to ensure that document searches cull from all available sources, not just those non-experts know about." Venator v. Interstate Res., Inc., No. CV415-086, 2016 WL 1574090, at *11 (S.D. Ga. Apr. 15, 2016) (emphasis supplied).

Here, the CCBOE and HBS followed electronic discovery "best practices" by engaging the CCBOE's IT consultant, Charles Dial, to search for communications responsive to the subpoenas. Dial repeatedly represented to the CCBOE and HBS that he searched for responsive communications on Hampton's Desktop but was unable to retrieve her emails. (Ex. C, Dec. of Herzog, ¶ 21). HBS attorney Jennifer Herzog had numerous conversations and written communications with Dial in which he represented that the emails on the desktop could not be accessed. (Ex. C, Dec. of Herzog, ¶ 21). For example, as early as October 27, 2021, Dial represented to the CCBOE and HBS that "[o]nce [the CCBOE] remove the office 365 License it removed [Hampton's] email" and

that "[t]he county does not have a mail Archiver so there's no way to retrieve old emails once the mailbox is removed by [office 365]." (Exhibit F, Dial 10/27/2021 Email).[5] On April 13, 2022, Dial again confirmed that "[o]nce the license was removed[,] the email was deleted after 30 days." (Exhibit G, Dial 4/13/2022 Email). Similarly, Dial represented to Herzog that he searched Hampton's Desktop and "there was not .ost found."[6] (Exhibit H, Dial 5/4/2022 Email). Dial explained the emails could not be accessed locally because Ms. Hampton "used outlook web access." (Id.). An August 24, 2022 email between Herzog and Dial demonstrates that the CCBOE attempted to retrieve the emails, but was told it was unable to do so:

> IT support has confirmed that the former Election Supervisor Misty Hampton's and Jill Riddlehoover's email accounts are no longer accessible. Coffee County has a limited number of licenses available under Microsoft 365, and it was the regular practice of IT to replace the new employee of each position with that license when a former employee of the same position was for whatever reason no longer employed by the county, and when that is done, unless previously archived, the former employees' emails are no longer accessible. In this situation, the County did attempt to preserve Hampton's emails, as you will see in documents provided previously to Ms. Marks, but IT unfortunately was unsuccessful in same. The County has since implemented an email archiving system. I have been advised that IT has exhausted all efforts and despite same, advised that Hampton's emails are not accessible or recoverable.

(Exhibit I, Dial 8/24/2022 Email). Dial confirmed that the above statement was accurate and that the CCBOE searched all desktop computers and electronic equipment in the CCBOE's office. (Id.). These emails do not capture Dial's numerous other verbal

---

[5] In his October 27, 2021 email, Dial incorrectly stated he was not asked to preserve Hampton's emails. (Ex. F). However, Dial's incorrect statement is irrelevant because the CCBOE was under no duty to preserve emails in October 2021, prior to any revelation that the breach had occurred and long before any discovery obligations arose.
[6] Desktop-based Microsoft Outlook emails are .ost files.

representations that the emails could not be accessed or retrieved. (Ex. C, Dec. of Herzog, ¶ 21).

The Hampton Desktop issue does not present a basis for an award of sanctions. The CCBOE and HBS followed electronic discovery best practices by engaging Dial, an IT professional, to search Hampton's Desktop for responsive emails and documents. Dial repeatedly represented that he searched Hampton's Desktop and that Hampton's emails were not accessible or recoverable. (Ex. C, ¶ 21; Ex. F; Ex. G; Ex. H; Ex. I). The record contains no evidence that the CCBOE or HBS had reason to question the accuracy of Dial's representations. Further, while Plaintiff asked the CCBOE and HBS to "search again," they never gave them a reason to question Dial's conclusions. Also, Plaintiff never sought to inspect Hampton's Desktop, as allowed by Fed. R. Civ. P. 34. This is likely because, like HBS, Plaintiff had no reason to doubt Dial's conclusions were accurate. Because "reasonable people could differ as to the appropriateness" of the CCBOE and HBS's efforts to produce documents on Hampton's Desktop, the CCBOE and HBS's conduct related to Hampton's Desktop is substantially justified. Plaintiff's Motion for Sanctions should be denied.

### d. The Motion for Sanctions regarding Hampton's Desktop should also be denied because it presents a unique circumstance that makes an award of expenses unjust.

As the Court noted in its Order, Hampton's Desktop presents a "unique circumstance." (Doc. 41, p. 18 ("Hampton's desktop computer is a unique circumstance. There, the documents were only uncovered because of the GBI's involvement.")). Once the GBI seized Hampton's Desktop in June 2023, the CCBOE was unable to make it available for inspection by Plaintiff or otherwise produce its contents to Plaintiff. The forensic image of Hampton's Desktop was only produced to Plaintiff after Judge

Totenberg ordered it to happen. Order, <u>Curling v. Raffensperger</u>, Civil Action No. I: 17-cv-2989 (N.D. Ga. Nov. 6, 2023), ECF No. 1704. The CCBOE should not be sanctioned for its inability to produce documents from a device that was not in its possession in the months leading up to Plaintiffs' Motion to Compel.  And, as this Court noted, "Plaintiffs have not shown the [CCBOE] identified those documents previously but failed to produce them." (Doc. 41, p. 18). Moreover, Plaintiff has not presented evidence that any of the documents ultimately recovered from Hampton's Desktop are responsive to the subpoena requests and were not previously produced by the CCBOE.

Hampton's Desktop presents the exact type of unique circumstance contemplated by Fed. R. Civ. P. 37(a)(5)(A)(iii) that makes an award of expenses unjust. Plaintiff's Motion for Sanctions should be denied for this additional reason.

### e. Plaintiff is not entitled to sanctions because the CCBOE's conduct related to the privilege log was substantially justified.

Courts have held that category-based logs are sufficient when the sheer number of documents renders a document-by-document log unduly burdensome and unnecessary.[7] See <u>MCC Mgmt. of Naples, Inc. v. Arnold & Porter LLP</u>, No. 207-CV-387-FTM-29SPC, 2010 WL 2431849 (M.D. Fla. June 16, 2010); <u>In re Imperial Corp. of Am.</u>, 174 F.R.D. 475 (S.D. Cal. 1997). In its Order granting Plaintiffs' request that the CCBOE serve an itemized privilege log, the Court found that the CCBOE "failed to show a categorical privilege log is appropriate in this case." (Doc. 41, p. 15). The Court reasoned that it was "unclear how many documents [the CCBOE] has withheld on privilege grounds" and therefore the

---

[7] The 1993 Advisory Committee Notes to Rule 26 explain that "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected." The CCBOE cited this committee note in its August 26, 2022 privilege log. (Doc. 29-2, p. 5).

CCBOE "has not demonstrated it would suffer any undue burden in providing an itemized privilege log." (Doc. 41, p. 15).

Upon receipt of the Court's Order on December 22, 2023, the CCBOE and HBS immediately began working on the itemized privilege log. HBS worked through the Christmas and New Year's holidays, spending over 100 hours drafting the log and reviewing thousands of pages of privileged documents and communications. (Ex. C, Dec. of Herzog, ¶¶ 27-28). On January 3, 2024, the CCBOE served the 311-page privilege log on Plaintiffs. (Doc. 51, p. 2). The length of the privilege log, the number of documents on the log, the time spent reviewing documents, the cost associated with drafting the log, and the efforts of the CCBOE and HBS demonstrate that a category-based log was warranted. See MCC Mgmt. of Naples, 2010 WL 2431849, *2 ("The sheer number of documents . . . render a document-by-document log unduly burdensome and unnecessary. Accordingly, defendants' category-based log is sufficient."). This is especially true considering the CCBOE's status as a nonparty in the *Curling* case. See Equal Emp. Opportunity Comm'n v. Sirdah Enterprises, Inc., No. 113CV03657RWSRGV, 2015 WL 12630686, *4 (N.D. Ga. Feb. 25, 2015) ("Courts must also consider the status of a witness as a non-party when determining the degree of burden[.]"). Certainly, "reasonable people could differ as to the appropriateness" of the categorized privilege log, and therefore the CCBOE's conduct was substantially justified.

Moreover, after receiving the privilege log, Plaintiffs had an opportunity to challenge documents designated as privileged. Ultimately, Plaintiffs filed a Motion for In Camera Review challenging only 25 of the roughly 2,670 documents on the privilege log. (Doc. 51). Plaintiff's claim that the January 3, 2024 log is inadequate is undermined by the limited scope of its Motion for In Camera Review.

**f. The CCBOE was not provided a sufficient opportunity to evaluate the adequacy of its privilege log prior to Plaintiffs' Motion to Compel, and therefore an award of expenses would be unjust for this additional reason.**

The CCBOE responded to Plaintiffs' subpoenas and served a privilege log on August 1, 2022. (Doc. 25-2, p. 3). On August 18, 2022, Plaintiffs objected to the CCBOE's privilege log on the basis that it did not contain a "date field." (Doc. 29-1, p. 7). On August 26, 2022, the CCBOE addressed Plaintiffs' objection by serving upon Plaintiffs an updated privilege log containing the requested date field. (Doc. 29-1, p. 2). Plaintiffs' counsel did not object to the August 26, 2022 privilege log until over a year later, on October 17, 2023. (Doc. 29-3, p. 2 ("[W]e did not raise the issue again After [sic] August 26 . . . . [W]e did not pursue the matter until the revelations regarding all of the emails and documents the GBI located on the CCBOER desktop and this action was filed.")). Even then, in their October 17, 2023 letter, Plaintiffs made a litany of demands but barely mentioned the privilege log,[8] and requested that the CCBOE respond *the same day*. (Doc. 1-18, p. 5). Although the Court previously ruled that Plaintiffs satisfied their conferral requirement as to the privilege log, the aforementioned facts, including Plaintiffs' 13-month delay in objecting to the August 26, 2022 privilege log, constitute circumstances that make an award of expenses unjust.

### III. Fed. R. Civ. P. 26(g)

Plaintiff next argues that the Court should impose sanctions on the CCBOE and HBS pursuant to Fed. R. Civ. P. 26(g). Fed. R. Civ. P. 26(g)(1) provides that "every discovery request, response, or objection must be signed by at least one attorney of

---

[8] This characterization is consistent with that of the Court: "Plaintiffs' letter—like their Motion [to Compel]—is concerned primarily with the desktop computer." (Doc. 41, p. 11 n.5).

record." "'Rule 26(g) does not require a signing attorney to certify the truthfulness of a client's factual responses to a discovery request,' but it does require the attorney to certify that he or she 'has made a reasonable effort to assure that the client has provided all of the information and documents available to him that are responsive to the discovery demand.'" Collins-Williams v. Contour Eastwyck LLC, No. 1:20-CV-3129-CAP, 2022 WL 17828934, *96 (N.D. Ga. Dec. 15, 2022) (quoting State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 220 (E.D. Pa. 2008)).

The 1983 Advisory Committee Note to Rule 26(g) explains the "reasonable inquiry" requirement of Rule 26(g):

> The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.

(internal citations omitted); see also Venator v. Interstate Res., Inc., No. CV415-086, 2016 WL 1574090, at *8 (S.D. Ga. Apr. 15, 2016) ("With respect to the 'reasonable inquiry' attorneys must make, counsel may 'rely on assertions by the client . . . as long as that reliance is appropriate under the circumstances.'"). The Court should deny Plaintiff's Motion for Sanctions because HBS made a reasonable inquiry as to the CCBOE's discovery responses.

### a. HBS made a reasonable inquiry as to documents and communications located on Hampton's Desktop.

Upon issuance of the subpoenas in 2022, HBS immediately began working with the CCBOE to collect additional responsive records and process the subpoenas. (Ex. C, Dec. of Herzog, ¶ 13).  The CCBOE ultimately gathered and produced thousands of pages

of responsive documents and communications.[9] (Ex. C, Dec. of Herzog, ¶¶ 11, 13); (Doc. 29-1, p. 2). As discussed, *supra*, HBS and the CCBOE followed electronic discovery "best practices" by engaging the CCBOE's IT consultant, Charles Dial, to search for communications responsive to the subpoenas located on the desktop. (Ex. C, Dec. of Herzog, ¶ 21). Dial repeatedly represented that he searched Hampton's Desktop, that Hampton's emails could not be accessed or retrieved, and no .ost files were found on Hampton's Desktop. (Ex. C, ¶ 21; Ex. F; Ex. G; Ex. H; Ex. I). The record contains no evidence that the CCBOE or HBS had reason to question the accuracy of Dial's representations, and HBS's reliance was "appropriate under the circumstances" given Dial's years of experience as an IT consultant. Compare Venator v. Interstate Res., Inc., 2016 WL 1574090, at *10 (holding reliance was not appropriate because the human resources manager had "no background in computers or searching email systems.").

Although the GBI seized Hampton's Desktop and recovered some of Hampton's emails, HBS's certification under Rule 26(g) "speaks as of the time it is made.'" Gian Biologics, LLC v. Cellmedix Holdings, LLC, No. 2:15-CV-645-FTM-99CM, 2016 WL 6568014 (M.D. Fla. Nov. 4, 2016) (citing 1983 Advisory Committee Notes). At the time the certification was made, HBS had made a reasonable inquiry as to documents on Hampton's Desktop. (Ex. C, ¶ 21; Ex. F; Ex. G; Ex. H; Ex. I). Plaintiff presents no evidence that HBS failed to make a reasonable inquiry.

Plaintiff relies on In re Delta/AirTran Baggage Fee Antitrust Litig., 846 F. Supp. 2d 1335, 1350-51 (N.D. Ga. 2012) to argue that the Court should impose sanctions under Rule 26(g). In re Delta is inapposite. There, the court imposed sanctions on Delta for

---

[9] These documents include documents and communications produced in response to Plaintiffs' open records requests. (Ex. C, Dec. of Herzog, ¶¶ 11, 13).

"Delta's failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in the evidence locker." Id. at 1351. The hard drives were "collected but unsearched." Id. at 1350. Similarly, Delta blatantly failed to search an evidence locker for discoverable information. Id. at 1351. Here, there is no dispute that Dial searched Hampton's Desktop, nor is it disputed that Dial represented that certain documents and communications could not be retrieved from the desktop. (Ex. C, ¶ 21; Ex. F; Ex. G; Ex. H; Ex. I). This is not a situation like in In re Delta where counsel failed to ensure that "all **sources** of discoverable information were identified and searched." Id. at 1350 (emphasis supplied).

HBS and the CCBOE made a reasonable inquiry. In accordance with electronic discovery best practices, HBS and the CCBOE reasonably relied on their IT expert's conclusions, and that reliance was "appropriate under the circumstances." Under Rule 26(g), it is irrelevant that the GBI later discovered the documents. HBS's certification did not violate Rule 26(g), and Plaintiff's Motion for Sanctions should be denied.

   **b. If the Court finds that HBS's certification violated Rule 26(g) (it did not), the Court should not impose sanctions because the violation was substantially justified.**

Fed. R. Civ. P. 26(g)(3) provides that "[i]f a certification violates this rule **without substantial justification**, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." (emphasis supplied). HBS's certification did not violate Rule 26(g). However, if the Court finds that it did, the Court should not impose sanctions because "reasonable people could differ as to the appropriateness" of the CCBOE and HBS's efforts to produce documents on Hampton's Desktop, and HBS's certification is therefore substantially

justified. See *supra*, pp. 14-16 (establishing that the CCBOE's conduct related to Hampton's Desktop is substantially justified).

**IV.   28 U.S.C. § 1927**

Plaintiff argues that the Court should impose sanctions against HBS pursuant to 28 U.S.C. § 1927. The statute provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Eleventh Circuit holds that an attorney's misconduct must meet a "high standard" for costs to be assessed:

> [Section 1927] is not a 'catch-all' provision for sanctioning objectionable conduct by counsel . . . . For sanctions under section 1927 to be appropriate, something more than a lack of merit is required. The statute was designed to sanction attorneys who 'willfully abuse the judicial process by conduct tantamount to bad faith.' **'Bad faith' is the touchstone. Section 1927 is not about mere negligence.** A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.

Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1242 (11th Cir. 2007) (quoting Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) (emphasis supplied). "Thus, an attorney's conduct must be particularly egregious to warrant the imposition of sanctions—the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." Id. HBS's conduct does not come remotely close to the high standard required by 28 U.S.C. § 1927 for the imposition of sanctions.

For example, in Schwartz, a cargo plane crashed shortly after takeoff in Ecuador. 341 F.3d at 1123. Following the plane crash, many plaintiffs filed suit in state and federal courts in the United States against the airline. Appellants, who served as counsel for many

of the plaintiffs, were referred the cases from a lawyer licensed to practice law in Ecuador, and appellants relied upon the lawyer to conduct the factual investigation into the claims. Id. During litigation, the airline discovered that "the dates in the medical records of [two plaintiffs] had been altered to make it appear as though they had been victims of the plane crash." Id. at 1224. "The district court imposed sanctions under 28 U.S.C. § 1927, determining that [appellants] failed to conduct a proper investigation before filing the complaints and . . . pointed out that [appellants] had never spoken to their clients." Id. The district court concluded that counsel's "complete reliance" on the investigators and referring attorney was unreasonable and a breach of the duty to investigate. Id. The Eleventh Circuit reversed the district court's imposition of sanctions under Section 1927 holding that "we cannot conclude that [appellants] acted much (if at all) outside of the range of reasonable conduct by relying upon the representations of . . . the duly licensed Ecuadorian counsel who referred the cases to them." Id. "The record in no way reflects that [the Ecuadorian lawyer] was improperly licensed, was under disciplinary action, or that some other good reason existed for [appellants] to believe that the lawyer's information and professional assurances . . . were untrustworthy." Id.

As discussed *supra*, HBS relied on the representations of the CCBOE's IT contractor, Charles Dial. The record does not reflect that HBS had any reason to question the accuracy of Dial's conclusions regarding Hampton's Desktop computer or that Dial's information was untrustworthy. See Schwartz, 341 F.3d 1220. There is simply no evidence to suggest that HBS "knowingly or recklessly" obstructed the *Curling* case, nor can it be said that HBS "willfully abuse[d] the judicial process by conduct tantamount to bad faith."

Similarly, HBS's conduct related to the video recordings is not tantamount to bad faith. On numerous occasions, HBS was advised that the sought-after video recordings

could not be produced because the CCBOE security video system overwrites previous recordings after a certain number of days. (Ex. C, Dec. of Herzog, ¶ 16). Moreover, the CCBOE responded to Plaintiff CGG's subpoena on August 26, 2022. (Doc. 29-1, p. 2). The CCBOE produced the exterior video recording to Plaintiffs on August 27, 2022, and produced the interior video recordings to Plaintiffs on September 17, 2022. (Doc. 60, p. 6). The CCBOE's production of the interior video recordings 23 days after the CCBOE's response to CGG's subpoena does not amount to the particularly egregious conduct required under 28 U.S.C. § 1927 for the imposition of sanctions.

Plaintiff argues that it was prejudiced because the video recordings were produced after the depositions of the CCBOE's 30(b)(6) designee, Eric Chaney, James Barnes, Jil Riddlehoover, SullivanStrickler's 30(b)(6) designee, Cathy Latham, and Benjamin Cotton. (Doc. 60, p. 6). Plaintiff's statement is misleading for two reasons. First, the depositions of James Barnes (July 20, 2022), Cathy Latham (August 8, 2022), Eric Chaney (August 15, 2022), Jil Riddlehoover, (August 16, 2022), and Ben Cotton (August 25, 2022) all occurred prior to CCBOE's response to Plaintiff's subpoena on August 26, 2022. (Doc. 70-5; Doc. 29-1, p. 2). Second, upon production of the video recordings approximately 16 months before trial in the *Curling* case, Plaintiff did not seek to redepose any of the of the referenced deponents. Plaintiff's argument that it suffered prejudice related to those depositions is entirely unsupported.

There is no evidence that HBS knowingly or recklessly withheld responsive video recordings, documents, or communications. There is no basis to conclude that HBS acted in bad faith or conducted itself in a manner that was tantamount to bad faith. HBS's conduct does not come remotely close to the high standard required by 28 U.S.C. § 1927

for the imposition of sanctions, and therefore the Court should deny Plaintiff Motion for Sanctions.

**V.      Inherent Authority of the Court**

Finally, Plaintiff argues that the Court should impose sanctions pursuant to the "inherent authority" of the Court.[10] (Doc. 60, p. 21). The Supreme Court has held that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). "With this in mind, [the Eleventh Circuit has] held that before a court can impose sanctions on an attorney under its inherent powers, it must make a finding of bad faith." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1251 (11th Cir. 2007) (citing Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1320 (11th Cir. 2002) ("[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'")).

As discussed, *supra*, there is no evidence that HBS or the CCBOE acted with bad faith or otherwise exhibited conduct tantamount to bad faith. Plaintiff argues that "[the CCBOE's 30(b)(6)] designee's blatant dishonesty regarding meetings with the GBI should not be ignored." However, the designee, Wendell Stone, met with the GBI *after the deposition* (not before, as incorrectly alleged by Plaintiff). (Ex. E, GBI 3/1/2024 Letter); (Doc. 70-6). Plaintiff presents no evidence that Stone was dishonest during the deposition, and the Court acknowledged that Plaintiffs have not shown the CCBOE was dishonest regarding documents located on Hampton's Desktop. (Doc. 41, p. 12 n.6 ("Plaintiffs have not shown the Board of Elections knew about [the documents located on

---

[10] It is unclear whether Plaintiff is seeking sanctions pursuant to the inherent authority of the Court against the CCBOE, HBS, or both.

Hampton's Desktop] before Plaintiffs recovered them or was dishonest about its inability to recover these documents earlier.")). Because the CCBOE and HBS have not acted in bad faith, the Court should deny Plaintiff's Motion for Sanctions.

**VI.    Plaintiff's proposed sanctions are neither reasonable nor justified.**

For each of the foregoing reasons, the Court should deny Plaintiff's Motion for Sanctions. Plaintiff has not presented evidence of sanctionable conduct by the CCBOE or HBS, and the Court should decline to impose sanctions pursuant to Rule 37(a)(5), Rule 26(g), 28 U.S.C. § 1927, and the inherent authority of the Court. However, if the Court grants Plaintiff's Motion for Sanctions (it should not), the CCBOE and HBS respectfully request a hearing on the reasonableness of Plaintiff's attorneys' fees and litigation expenses.[11] "In Roadway Express, the Supreme Court stated that attorney's fees "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." 447 U.S. 752, 767 (1980). "[The Eleventh Circuit] has read the [Supreme] Court's language to require the district court to hold a hearing before the sanction of attorney's fees may be imposed. This requirement is clearly satisfied, however, by . . . a hearing on [a] motion for sanctions, at which both sides are entitled to present arguments as to the propriety and type of sanctions to be awarded." Pesaplastic, C.A. v. Cincinnati Milacron Co., 799 F.2d 1510, 1522 (11th Cir. 1986). Likewise, "an attorney threatened with sanctions under § 1927 is entitled to a hearing." Reynolds v. Roberts, 207 F.3d 1288, 1302 (11th Cir. 2000). Accordingly, the CCBOE and HBS respectfully request a hearing to

---

[11] Plaintiff initially argued that "the preliminary partial estimate of fees and expenses attributable to Coffee-related discovery is approximately $684,208.83." (Doc. 60, p. 25). Plaintiff later reduced this figure and requested that the Court impose sanctions totaling $200,819.10 for "discovery that would likely not have been required absent CCBOER's and HBS's discovery misconduct" and $300,000 to "deter CCBOER and HBS from future misconduct." (Doc. 70, p. 7).

determine the reasonableness of Plaintiff's alleged attorney's fees and expenses in the event the Court grants Plaintiff's Motion for Sanctions.

Plaintiff seeks to impose sanctions that are neither reasonable nor justified. Sanctions under Fed. R. Civ. P. 37(a)(5) "are limited to the amount that can reasonably cover an attorney's effort in preparing a motion to compel." Pate v. Winn-Dixie Stores, Inc., No. CV 213-166, 2014 WL 5460629 (S.D. Ga. Oct. 27, 2014). The bulk of Plaintiff's alleged attorney's fees and expenses are wholly unrelated to Plaintiffs' Motion to Compel. Plaintiff cannot recover such fees. See In re No Rust Rebar, Inc., No. 21-12188-PDR, 2022 WL 1632282, *3 (Bankr. S.D. Fla. May 23, 2022) ("[Rule 37(a)(5)] only provides for fees and costs for 'making the motion,' clearly in reference to the Motion to Compel itself[.]"). Moreover, Plaintiff's ability to recover attorney's fees and expenses is further limited under Rule 37(a)(5) to the portions of Plaintiffs' Motion to Compel that were granted. See Anish v. Nat'l Sec. Corp., 2014 WL 5034720, at *3 (S.D. Fla. July 3, 2014) ("Defendant is only entitled to fees for the portion of its motion upon which it prevailed . . . . Therefore, only a portion of the attorney's fees sought should be awarded to Defendant."); see also Procaps S.A. v. Patheon Inc., 2013 WL 6238647 (S.D. Fla. Dec. 3, 2013) ("There were 15 discovery requests at issue. As set forth above, the Court finds that . . . [movant] is entitled to an expense award on 6 of the 15 requests. Therefore, the Court finds that [movant] is entitled to recover only 6/15 (or 40%) of the time it spent on this discovery dispute."). Here, as discussed *supra* at pp. 4-5, Plaintiff did not prevail on the majority of its Motion to Compel. (Doc. 41). Thus, under Rule 37(a)(5), Plaintiff could only be permitted to recover reasonable fees incurred in preparing the portions of Plaintiffs' Motion to Compel that were granted.

Plaintiff also argues that its Executive Director, Marilyn Marks, should be entitled to recover her "fees." The CCBOE is unaware of any case law that would enable the Court to calculate sanctions based on work performed by a party (rather than the party's counsel). Ms. Marks should not be permitted to seek sanctions in the amount of her "fees" simply because she serves as Plaintiff's Executive Director and performed work related to the *Curling* case in that capacity. The CCBOE would explore this among other fee-related issues during the hearing on the sanctions Plaintiff seeks.

"The appropriate sanction should be the least severe sanction adequate to deter and punish the [violating party]." Sussman v. Salem, Saxon & Nielsen, P.A., 150 F.R.D. 209, 215 (M.D. Fla. 1993). "In considering whether a sanction should be imposed—and what sanction should be imposed—courts should consider . . . the purposes to be served by the imposition of sanctions, including deterrence of future discovery violations, punishment of current violations, compensation of the offended party, and conservation of the court's time and resources[.]" DeepGulf Inc. v. Moszkowski, 333 F.R.D. 249, 253 (N.D. Fla. 2019). The CCBOE is a publicly funded entity. Therefore, if the Court grants Plaintiff's Motion for Sanctions (it should not), the taxpayers will feel the brunt of the sanctions. The imposition of sanctions against the CCBOE under these facts does not align with the policy for imposing sanctions. The Court should decline to impose sanctions for the reasons stated throughout this brief. However, the Court should especially decline to impose sanctions on the CCBOE because taxpayers should not be sanctioned for the alleged criminal acts of those who infiltrated the CCBOE's election office in January 2021.

## **CONCLUSION**

The Court should deny Plaintiff's Motion for Sanctions. Pursuant to Rule 37(a)(5), the Court must not impose sanctions because the CCBOE and HBS's conduct related to

Hampton's Desktop and the privilege log was substantially justified, and circumstances exist that make an award of sanctions unjust. Additionally, HBS satisfied its discovery obligations by making a reasonable inquiry with respect to the CCBOE's discovery responses, and thus HBS's certification did not violate Rule 26(g). Lastly, there is no evidence that the CCBOE or HBS acted in bad faith or otherwise conducted themselves in a manner that was tantamount to bad faith. For the foregoing reasons, the Court should exercise its discretion to deny Plaintiff's Motion for Sanctions.

This 19th day of March, 2024.

**OLIVER MANER LLP**
 */s/ Benjamin M. Perkins*

Oliver Maner LLP
218 West State Street
P.O. Box 10186
Savannah, GA 31412
bperkins@olivermaner.com
wrahn@olivermaner.com

BENJAMIN M. PERKINS
Georgia Bar No. 140997
WES P. RAHN
Georgia Bar No. 60391
*Attorneys for CCBOE*

**HALL BOOTH SMITH, P.C.**
*/s/ Jennifer D. Herzog*

1564 King Road
Tifton Georgia 31793
(229) 382-0515
jherzog@hallboothsmith.com
nkinsley@hallboothsmith.com

JENNIFER D. HERZOG
Georgia Bar No. 109606
NICHOLAS A. KINSLEY
Georgia Bar No. 273862
*Attorneys for CCBOE*

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused electronic notification of filing and service of the foregoing to be made upon counsel of record for the parties by filing the same using the Court's CM/ECF filing system.

This 19th day of March, 2024.

**OLIVER MANER LLP**

 */s/ Benjamin M. Perkins*

Oliver Maner LLP
218 West State Street

BENJAMIN M. PERKINS
Georgia Bar No. 140997