# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE and DONNA CURLING,<br><br>Plaintiffs,<br><br>v.<br><br>COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 5:23-mc-00001-LGW-BWC<br>)<br>) In RE Subpoenas issued by the United States<br>) District Court For the Northern District of<br>) Georgia, Atlanta Division, Civil Action No.<br>) 1:17-CV-2989-AT<br>)<br>)<br>) |

## DECLARATION OF JENNIFER D. HERZOG

Jennifer D. Herzog declares and affirms that the following statements are true.

1.

My name is Jennifer D. Herzog. I am over 18 years of age, believe in the solemn obligation of an oath, am competent to testify, and have personal knowledge of the facts stated in this declaration.

2.

I attended and graduated from the University of Georgia School of Law and was admitted to the practice of law in Georgia in 2006. I am an attorney in good standing currently licensed to practice law in the State of Georgia, Bar Number 109606.

3.

The Coalition for Good Governance (the "Plaintiff" or "CGG") filed a Motion for Sanctions in the above-styled miscellaneous action. I understand that this declaration may be used for any reason in response to the Motion for Sanctions or otherwise in the above-styled miscellaneous action.

Page | 1

4.

I serve as the County Attorney or assist with County Attorney duties for six counties. I am a practicing and registered mediator in the State of Georgia, and I regularly handle various litigation and consulting matters. I have considerable experience and regularly assist my clients with questions related to the production of records under Georgia's Open Records Act and have given numerous presentations on the topic.

5.

In March/April 2022, client Coffee County, Georgia began receiving a substantial number of broad open records requests related to the Coffee County Board of Elections and Registration (the "CCBOE"), which, combined with regular duties of Coffee County personnel, became overwhelming to the small staff. As a result, I was asked to assist the Coffee County Records Custodian in managing the responses to the requests.

6.

Coffee County contracts with Southeast Georgia Computer Consulting & Engineering ("SGCCE") for IT services. Senior consultant/technician and owner Charles Dial is the main point of contact for SGCCE.

7.

There have been 4 Coffee County Election Supervisors in the past 3 years. Misty Hampton served as the Elections Supervisor but resigned on 2/25/21, James Barnes served as Election Supervisor from 4/1/21 - 12/3/2021, and Rachel Roberts served as Election Supervisor from 12/13/21 - 7/28/23. Currently, Christy Nipper serves in this role, which she began on 7/28/2023. The Elections Supervisor has only one support staff member, and such position also had significant turnover during this time period.

8.

In March 2022, Coffee County did not have an archiver or formal open records management program/system. When potentially responsive documents were not available from the original custodian, the Coffee County Records Custodian had to locate and then manually review them to determine responsiveness.

9.

Because of the inundation of open records requests, including those from Ms. Marks and others associated with CGG, Coffee County purchased and implemented an archiver in late April 2022, which the Records Custodian was thereafter trained on and began to fully implement its use in June 2022 and thereafter.

**RESPONSIVE COMMUNICATIONS AND RELATED DOCUMENTS**

10.

The Coffee County Records Custodian and I worked together to establish the following systematic way to process each open records request received:

(a) Each request was reviewed for the purpose of determining with whom or where responsive documents may be located; and

(b) The relevant individuals/staff were contacted to request responsive records in their respective possession; and

(c) These individuals and staff would produce responsive records, if any existed, to our office; and

(d) The Coffee County Records Custodian searched the archiver for responsive records (once the archiver was implemented) and would produce responsive records, if any existed, to our office; and

(e) I (or, on occasion, one of my colleagues in my absence) would then research to determine if any applicable exceptions may apply; and

(f) I (or, on occasion, one of my colleagues in my absence) would then produce the responsive and non-privileged records to the requester.

11.

In 2022 and 2023, the Coffee County Records Custodian and I methodically managed each open records request received and produced thousands of responsive documents to the Coalition for Good Governance, Ms. Marks and others in this fashion.

12.

I also adopted a practice of drafting a proposed response, and then asking the applicable persons providing the information and/or records to validate and verify the response for accuracy.

13.

In addition to the open records requests, in June and July 2022, my office received subpoenas for the depositions of CCBOE staff, CCBOE former staff and CCBOE board members. Additionally, we received two broad subpoenas containing a total of 66 separate requests to the CCBOE for the production of documents. All of these subpoenas were issued by Plaintiff and/or Donna Curling ("Plaintiffs") in the *Curling, et al. v. Raffensperger, et al.* ("*Curling*") litigation pending in the Northern District of Georgia that is the underlying lawsuit for the current action. The Records Custodian and I processed these subpoenas in the same systematic way outlined above. By agreement of the parties, the voluminous documents already produced in response to open records requests from Ms. Marks were not required to be re-produced in response to the subpoenas.

14.

In early Fall 2022, Georgia Bureau of Investigation (the "GBI") Agent Chris Baldwin requested interviews with CCBOE members, and the GBI submitted a subpoena for the production of documents.

15.

In August 2022, Plaintiffs' counsel asked that we provide a detailed privilege log for the document subpoenas.

## VIDEO SECURITY RECORDS

16.

In the spring of 2022, Coffee County received requests for video footage that depicted the CCBOE office during the time period of late 2020/early 2021. SGCCE and Coffee County staff informed me both verbally and in writing that no such video was in existence. I was informed that the CCBOE security video system overwrites previously recorded footage after a certain number of days to accommodate data storage capacity. Because of my work with numerous counties and sheriff's offices in the past, I understood that to be a regular and common occurrence for counties in South Georgia. Thus, I had no reason to believe the information provided was not accurate. I therefore represented my understanding that there were no responsive videos in existence to Ms. Marks, Plaintiff's counsel and others.

17.

I was thereafter informed by Coffee County staff that they discovered security video footage from the exterior of the CCBOE office for a portion of the applicable time period requested by Plaintiffs and I was provided a copy of this exterior footage in late August 2022. I was advised this exterior footage had been retrieved and saved prior to

the normal overwriting process in early 2021 around the time of Ms. Hampton's resignation because an open records request for such footage was submitted but never retrieved. I was not involved in the response to that 2021 open records request and thus was not aware of the existence of the exterior video.

18.

On the date of the response to Plaintiff's counsel's subpoena for the production of documents to CCBOE, I notified Plaintiffs' counsel on Friday, August 26, 2022, 4:30 PM that the exterior footage was retained as the result of a prior open records request, wherein I stated:

> With regard to security camera footage of the elections office - in response to prior requests, we have notified you all that the Coffee County system automatically copies over on certain intervals and that all footage had been automatically copied by the time of Marks' first open records requests unless archived, therefore also by the time of receipt of subpoenas. I have been provided and am producing recorded security video footage of entry to the Board of Elections' office for the time period at issue that was retained in response to a prior open records request.

19.

In September 2022, Coffee County staff notified me that, during the course of other duties, SGCCE found a copy of security videos of the interior of the CCBOE office during the relevant time period. Upon notification and receipt of those interior videos, I promptly produced them to Plaintiffs' counsel and the GBI, with the following accompanying explanation in an email to Plaintiffs' Counsel dated September 16, 2022, 2:09 PM as follows:

> I recognize I have previously represented to you that the front door security video previously produced was all that was in existence, which was based on my honest understanding at the time the representation was made. However, through further diligence IT recently located additional responsive video footage which is provided in the link below. This link is

Page | 6

also being produced to the GBI today. It is my understanding that this link contains video footage from 3 cameras during the period of 11/15/2020 – 2/26/2021 from inside the Coffee County Board of Elections and Registration's office. There is an additional 4th camera that is not included in this link as it appears to have been angled in a way that it may include activities during advanced voting - this 4th video will be produced only upon a protective order from the court for in camera inspection. I have also included directions below provided to me by IT as to how to access the link.).[1]

20.

Plaintiffs' counsel were made aware of both the exterior and interior video footage on or before September 16, 2022. During this timeframe, depositions in the *Curling* litigation were ongoing, Ms. Hampton's deposition had not yet been taken, and it was still well over fifteen (15) months prior to the commencement of the *Curling* trial in January 2024.

### MISTY HAMPTON'S EMAILS

21.

Coffee County received numerous requests for emails within Misty Hampton's email account from Ms. Marks, the GBI, and others. I was advised by SGCCE both verbally and in writing on numerous occasions that they could not locate/retrieve the emails from either Ms. Hampton's desktop or through web-based services and believed those emails to be permanently lost. I had no reason to believe those representations were inaccurate. Therefore, I consistently stated in response to any open records requests and/or subpoenas that were received, and to the GBI itself, that it was my understanding that Ms. Hampton's emails were no longer in existence.

22.

---

[1] The fourth video was ultimately also produced upon agreement with counsel concerning the advanced voting portions.

Page | 7

On Thursday, October 6, 2022, the GBI served an administrative subpoena on Coffee County. As part of the response to that subpoena, consistent with what I had previously told Plaintiff's counsel, I advised the GBI that "Coffee County IT has exhausted efforts and is unable to access Hampton and Ridlehoover's emails (with the exception of emails that may have been sent to other current Coffee County employees, which Coffee County can search for through their accounts.)" (Ex. A, GBI Report, Exhibit 123, Pg. 3 of 4; pg. 367 of 392.).

23.

Pursuant to a sealed search warrant, the GBI seized the desktop computer used by Ms. Hampton from the CCBOE office in June 2023.

24.

I first became aware that emails from Hampton's email account were accessible when I was notified by Plaintiffs' counsel in October 2023 that the GBI had successfully recovered Ms. Hampton's emails from the desktop the GBI had obtained in June 2023. To date, I have neither seen nor possessed the entire set of emails from Ms. Hampton's email account that was recovered by the GBI and produced to Plaintiffs.

**PRIVILEGE LOG**

25.

On August 5, 2022, I produced a privilege log to Plaintiffs' counsel for privileged documents otherwise potentially responsive to the *Curling* subpoenas. There were thousands of documents that would take an overly burdensome numberof hours to review and designate as privileged, which is why we created and produced "categories" of privileged documents rather than specifically identifying and delineating each document that may fall into a certain category.

Page | 8

26.

On August 18, 2022, Plaintiffs' counsel objected to the privilege log initially provided in response to the subpoenas on the basis that it did not contain a "date field." On August 26, 2022, I addressed the Plaintiffs' objection by serving an updated privilege log containing the requested date field. I never received an objection from Plaintiffs' counsel regarding this privilege log for over a year until shortly before the filing of their Motion to Compel in October 2023.

27.

The Court in this action entered an Order on December 22, 2023, which in part granted Plaintiffs' request for a more detailed privilege log. The Court ordered the updated privilege log to be produced by January 3, 2024 and to contain six categories: (1) type of document, (2) date of document, (3) author, (4) recipient, (5) privilege asserted, and (6) the grounds for asserting the privilege by describing the document.

28.

Creating a privilege log in compliance with the Court's Order required my colleagues and me to establish criteria for searching for and locating responsive records, review approximately 9,000+ emails, text messages and other documents and designate grounds for privilege, if applicable. Three attorneys (Nick Kinsley, Rebekah Ditto, and I) worked 100+ hours combined to prepare the privilege log during that 10-day time period (within which two federal holidays and two weekends fell). Upon final production, there were approximately 2,670 privileged documents referenced and the privilege log was approximately 300 pages long.

I declare under penalty of perjury that every statement I have made in this declaration is true and correct.

Executed this 19th day of March, 2024.

_____
JENNIFER D. HERZOG

# GEORGIA BUREAU OF INVESTIGATION
# OFFICE OF SPECIAL INVESTIGATIONS
# INVESTIGATIVE SUMMARY



EXHIBIT A

<u>46-0001-42-23</u>

On Thursday, October 6, 2022, at approximately 11:21 a.m., GBI Special Agent in Charge (SAC) BRIAN WHIDBY served an administrative subpoena to the Coffee County Board of Commissioners specifically to Coffee County Attorney, JENNIFER DORMINEY HERZOG of Hall Booth Smith, P.C. The subpoena was related to documents and materials related to the conduct of elections and four (4) particular persons identified as former Coffee County Elections Supervisor MISTY HAYES (HAMPTON), former Coffee County Elections Supervisor Assistant JIL RIDLEHOOVER, former Coffee County Board of Elections Member ERIC CHANEY and former Coffee County Board of Elections Chairman BLAKE EDWARD VOYLES. The forementioned subpoena is attached.

On Friday, October 7, 2022, SAC WHIDBY along with GBI Managing Attorney PHILIP CURTIS and HERZOG spoke by telephone and discussed the aforementioned subpoena. After discussion, all parties agreed to the following:

1. The subpoena is directed to the Coffee County Board of Commissioners but the GBI desired to seek records also in the custody of the Coffee County Board of Elections and Registration and their staff.

2. Coffee County has previously produced a copy of certain documents and video records to GBI Special Agent CHRIS BALDWIN and Coffee County would not plan to re-produce those unless otherwise requested.

3. The GBI seeks to obtain any training manuals and any other documents that give

Page 1 of 4
910954

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ___123___

FCDA00139260

**46-0001-42-23**

direction with regard to the training/use of elections equipment applicable to the Nov. 2020 election, including who had access to the equipment.

4. Coffee County will produce agenda and minutes from the Coffee County Board of Elections and Registrations meeting from Nov. 2019 - July 2021.

5. The GBI would like to obtain personnel files for the named individuals in the subpoena (HAYES/HAMPTON, RIDLEHOOVER, CHANEY and VOYLES). For any Board members for which personnel files are not maintained, Coffee County will provide any training records in Coffee County's possession for any time period they served on the Coffee County Board of Elections (those training documents should likewise be in HAYES/HAMPTON's and RIDLEHOOVER's personnel files, as applicable).

6. The GBI would like to obtain copies of the documents that evidence what equipment was retrieved and/or replaced by the Ga Secretary of State (SOS) in the last few weeks during Fall 2022, and likewise if any such documents are in existence describing when the equipment used in the Nov. 2020 election was originally delivered and/or the server/scanner replaced in early 2021 the GBI would like to obtain a copy of same.

7. The GBI would like to clarify and request any documentation that evidences whether the election equipment is owned by the SOS or the County, and whether the County paid any funds for the election equipment used in Nov. 2020.

8. For II. In Attachment A, except with regard to documents involving the specific individuals referenced and/or documents related to the November 2020 election more

Page 2 of 4
910954

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ___123___

FCDA00139261

46-0001-42-23

specifically discussed above (that may have occurred before or after that election), with regard to any communications or any other documents the GBI agrees that Coffee County will initially search the time period June 1, 2020 – June 1, 2021. ==As discussed during the call, Coffee County IT has exhausted efforts and is unable to access HAYES/HAMPTON's and RIDLEHOOVER' emails (with the exception of emails that may have been sent to other current Coffee County employees, which Coffee County can search for through their accounts.== It is HERZOG's understanding that the Coffee County Board of Election and Registration members, with the exception of Chairwoman EARNESTINE THOMAS CLARK, do not have county issued email addresses.

9. The GBI agrees that Coffee County will have a "rolling production" of documents to this subpoena – Coffee County will produce the documents they believe responsive for the topics and time periods outlined above, and then if there are any further documents the GBI wishes to seek after this initial production Coffee County will so provide.

On October 11, 2022, CURTIS updated the request as it related to the above: In response to number 3, however, please also provide all materials that generally inform "governing access to and authorized use of government-owned buildings and equipment" (not just elections equipment) in Coffee County during the November 2020 timeframe.

Nothing further.

**ATTACHMENTS**

SUBPOENA Coffee County                                                                 (Attachments)

**EVIDENCE**

914192/917342 YAHOO RESPONSIVE DOCS FROM SW          CC57155-Evidence.pdf

Page 3 of 4
910954

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ___123___

FCDA00139262

SPECIAL AGENT IN CHARGE BRIAN O WHIDBY:   10/6/2022
sm:   10/13/2022          *BW*                    *BW*

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ___123___