IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE and DONNA CURLING,<br><br>    Plaintiffs,<br><br>v.<br><br>COFFEE COUNTY BOARD OF ELECTIONS AND REGISTRATION,<br><br>    Defendant. | Civil Action No. 5:23-mc-00001-LGW-BWC<br><br>In RE Subpoenas issued by the United States District Court For the Northern District of Georgia, Atlanta Division, Civil Action No. 1:17-CV-2989-AT |

**DEFENDANT'S SUR REPLY BRIEF IN OPPOSITION TO PLAINTIFF CGG'S MOTION FOR SANCTIONS**

Defendant Coffee County Board of Elections and Registration (the "CCBOE") files this Sur Reply Brief in Opposition to Plaintiff Coalition for Good Governance's ("CGG") Motion for Sanctions (doc. 60).

### I. Unsupported Allegations and Hearsay

Much like its Motion for Sanctions (doc. 60), Plaintiff's Reply Brief (doc. 75) is replete with unsupported allegations, hearsay, and demands that the Court "presume" and "infer" wrongdoing by the CCBOE and HBS. Plaintiff continues to ignore the Court's rules by advancing inflammatory allegations without citations to the record or evidence. Each of these allegations should be disregarded. See S.D. Local Rule 7.1.

For example, Plaintiff alleges without support that the CCBOE and HBS engaged in efforts to conceal the infamous breaches and urges the Court to presume wrongdoing:

1

- "Instead, it appears [the CCBOE and HBS's] efforts have been primarily directed toward concealing the evidence of the unlawful breaches." (Doc. 75, p. 15 n.5).

- "The only logical explanation for such an act is to render CCBOER unable to produce documents it preferred never be seen." (Doc. 75, p. 20).

- "Instead of complying with state and federal law, CCBOER and HBS chose to park the subject records with GBI where they would be inaccessible to CGG, the press, and public." (Doc. 75, p. 20 n.9).

- "Turning over the desktop to the GBI without securing a copy of its contents is inexplicable—except to the extent that it was calculated to place documents beyond the reach of Plaintiffs and others determined to get to the bottom of the breach." (Doc. 75, p. 24).

- "[T]he Court should logically infer that counsel engaged in conduct that was designed to thwart Plaintiff's efforts to secure relevant evidence through discovery." (Doc. 75, p. 25).

- "And again, the Court should therefore presume an explanation would not have been helpful to CCBOER or HBS." (Doc. 75, p. 10).

Not one of these allegations includes citations to evidence, and the record does not support Plaintiff's conspiracy theory that the CCBOE and HBS engaged in concealment efforts. These accusations have no place in this Court, and the CCBOE requests that they be stricken.[1]

---

[1] Plaintiff's accusations are especially appalling considering the tremendous effort by CCBOE and Coffee County employees to respond to an overwhelming number of open records requests in the wake of the breaches and the CCBOE's production of thousands of responsive documents. (Doc. 73-3, ¶¶ 5, 11).

2

Likewise, the Declaration of Marilyn Marks contains inadmissible hearsay that should be stricken and disregarded (doc. 75-4). See Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1031 (M.D. Fla. 2000) ("When an affidavit submitted in support of, or opposition to, a motion . . . contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest."). For example, Ms. Marks states that it is her understanding from discussions with "GBI Special Agent Chris Baldwin that he persuaded Ms. Herzog to produce the security videos in August and September 2022[.]" (Doc. 75-4, ¶ 9). Ms. Marks's understanding is incorrect, and the Court should not give credence to purported out-of-court discussions between Ms. Marks and Special Agent Baldwin. Ms. Marks also states that Tabitha Paulk "told [her] in 2023 that she had obtained some of the security video through an ORR, receiving it in April 2021 after a February or early March 2021 request." (Doc. 75-4, ¶¶ 10-12). These out-of-court statements are offered to prove the truth of the matter asserted and should be stricken and disregarded.

## II. **The Privilege Logs**

Plaintiff seeks sanctions related to the categorical privilege log served on August 26, 2022 (the "August 26, 2022 Log"), and the privilege logs served in January 2024 (the "January 2024 Logs"). Plaintiff is not entitled to sanctions for the August 26, 2022 Log because reasonable minds could differ as to the appropriateness of the categorical privilege log and because Plaintiff failed to timely object to same. Similarly, Plaintiff had ample opportunity to challenge the January 2024 Logs but instead limited its challenge to only 25 documents. Plaintiff's criticisms of the January 2024 Logs are not properly before the Court and should not be considered as bases for sanctions.

3

a. <u>The August 26, 2022 Log</u>

Plaintiff repeatedly claims that the CCBOE and HBS represented that virtually all documents, including privileged documents, were produced in response to its subpoena:

- "Ms. Herzog and other HBS attorneys signed the August 2022 subpoena document responses repeatedly falsely stating that virtually all responsive documents were in fact produced, (with minimal reference to any privileged documents)." (Doc. 75, p. 4).

- "In short, CCBOER and its counsel never even attempted to make an appropriate showing of burden to justify the generalized nature of the privilege log, perhaps because it was in such extreme contrast to its document subpoena response representations." (Doc. 75, p. 5).

- "A fight over a 3½ page privilege log at that time would have been a low priority given [HBS's] representations that virtually all documents had been produced." (Doc. 75, p. 5).

- "In short, all privilege logs served to date are wholly inadequate, incomplete, non-compliant, and wildly inconsistent with 2022 representations made by CCBOER counsel[.]" (Doc. 75, p. 8).

The CCBOE and HBS never made any such representations. In fact, the CCBOE objected to over a quarter of Plaintiff CGG's document requests on attorney-client privilege and work product grounds. (Doc. 75-2). Moreover, on August 26, 2022, the date the CCBOE responded to Plaintiff CGG's subpoena, HBS notified opposing counsel that it produced documents "*which are not otherwise privileged communications between counsel and client as referenced in the privilege log*." (Exhibit A, August 26, 2022 Email, p. 2) (emphasis supplied). The referenced August 26, 2022 Log was a categorized privilege

4

log encompassing years of communications, and HBS expressly noted that privileged "communications with employees or representatives of Coffee County occurred only during their tenure with Coffee County" and therefore "[i]t would be unduly burdensome to non-party Coffee County to require the identification of these irrelevant dates."[2] (Doc. 29-2, p. 5).

The CCBOE and HBS never represented that "virtually all documents had been produced" in response to the subpoenas, and it is unreasonable for Plaintiff to argue otherwise. Rather, the record demonstrates that thousands of privileged documents were reviewed and existed in 2022, that thousands of privileged documents were reviewed and exist today, and that it was unduly burdensome for nonparty CCBOE to serve an itemized privilege log. (Doc. 73-3, ¶¶ 25-26). Certainly, "reasonable people could differ as to the appropriateness" of the categorized privilege log, and therefore the CCBOE's conduct related to the privilege log was substantially justified. See Devaney v Continental Am. Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993) ("[D]iscovery conduct should be found 'substantially justified under Rule 37 if . . . reasonable people could differ as to the appropriateness of the contested action.'").

Setting aside whether the categorized privilege log was substantially justified (it was), Plaintiff cannot justify its 13-month failure to object to the August 26, 2022 Log. Plaintiff argues the CCBOE's contention that Plaintiff failed to object to the

---

[2] This notation is consistent with the 1993 Advisory Committee Notes to Fed. R. Civ. P. 26: "The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected."

privilege log for 13 months is inaccurate. (Doc. 75, p. 5). However, Plaintiff's counsel admitted it did not object to the August 26, 2022 Log until October 2023:



(Doc. 29-3). Plaintiff's 13-month failure to object to the August 26, 2022 Log wholly negates its claim of prejudice and constitutes a circumstance that makes an award of expenses unjust.[3] See Fed. R. Civ. P. 37(a)(5)(A)(iii). Therefore, the Court should deny Plaintiff's motion for sanctions as to the privilege log.

  b. *The January 2024 Logs*

On January 3, 2024, the CCBOE served a privilege log pursuant to the Court's Order on Plaintiffs' Motion to Compel. (Doc. 41). On January 9, 2024, Plaintiffs

---

[3] Promptly raising discovery-related objections is necessary for myriad reasons (avoiding delay of trial; allowing time for conferral; reducing the risk of prejudice; preventing the need for discovery extensions; etc.).

requested an extension of time to work through issues arising from the January 3 log and to file a motion challenging the log on or before January 22, 2024. (Doc. 42). On January 17, 2024, the CCBOE served an updated privilege log to delete reference to documents that were produced as a result of conferral among the parties. (Exhibit B, January 17, 2024 Email, p. 1). On January 18, 2024, the Court granted Plaintiffs' request and ordered Plaintiffs to "file any motion challenging Defendant's privilege assertions on or before January 22, 2024." (Doc. 46, p. 1). On January 22, 2024, Plaintiffs requested "an additional week, to and through January 29, 2024, to challenge privilege designations." (Doc. 47). On January 26, 2024, the Court granted Plaintiff's request for further extension and ordered that Plaintiffs "may file a motion challenging Defendant's privilege assertions on or before January 29, 2024." (Doc. 50). The Court also encouraged the parties to continue their conferral efforts. (Doc. 50, p. 2).

On January 29, 2024, Plaintiffs notified the CCBOE (for the first time) that they intended to challenge 25 documents on the January 17 log. (Exhibit C, January 29, 2024 Email, p. 1 ("I understand that we have not discussed these additional document before[.]")). Plaintiffs also represented that they "will not be objecting to any further designations" other than the 25 documents. (Id.). Hours later, Plaintiffs filed their motion challenging the 25 documents. (Doc. 51). Plaintiffs' motion was later withdrawn. (Doc. 57).

Now, long after the Court-imposed January 29, 2024 deadline has passed, Plaintiff raises new challenges to the January 2024 Logs. (Doc. 75, pp. 7-8). The Court should reject these criticisms because they are untimely, and because Plaintiff fails to explain why an untimely challenge should be allowed. Throughout this case, Plaintiff

7

has exhibited a tendency to overlook the Court's deadlines and rules.[4] As the CCBOE has noted before (doc. 48):

> In the courts, there is room for only so much lenity. The district court must consider the equities not only to plaintiff and his counsel, but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket. Counsel must take responsibility for the obligations to which he committed and get the work done by the deadline . . . . Deadlines are not meant to be aspirational; counsel must not treat the goodwill of the court as a sign that, as long as counsel tries to act, he has carte blanche permission to perform when he desires.

Young v. City of Palm Bay, Fla., 358 F.3d 859, 864 (11th Cir. 2004). Plaintiff had ample opportunity to challenge the January 2024 Logs within the deadline Plaintiff requested. (Doc. 47). Instead, Plaintiff limited its challenge to 25 documents listed on the logs (doc. 51), represented it would "not be objecting to any further designations" (Ex. C), and decided not to raise the criticisms it now pursues in its Reply Brief prior to the Court-ordered January 29, 2024 deadline. Deadlines should be enforced, and the CCBOE, a nonparty in the *Curling* case, deserves closure and finality to this miscellaneous action. Plaintiff's challenge to the January 2024 Logs is untimely, not properly before the Court, and should be rejected.

### III. The Video Recordings

Plaintiff continues to argue that the CCBOE should be sanctioned for its conduct related to the production of exterior and interior video recordings. Specifically, Plaintiff argues the CCBOE should be sanctioned pursuant to Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927, and the inherent power of the court.

---

[4] For example, Plaintiff filed a motion for extension of time the day of a Court-ordered deadline (doc. 47); filed its Motion for Sanctions a day after the Court-ordered deadline (doc. 60); and filed a motion to exceed page limit concurrently with a motion that exceeded the page limit (doc 58; doc. 60).

8

a. *Fed. R. Civ. P. 26*

"Rule 26(g) does not require a signing attorney to certify the truthfulness of the client's answers to a discovery request." Malautea v. Suzuki Motor Corp., 148 F.R.D. 362, 372 (S.D. Ga. 1991). Attorneys may "rely on assertions by the client as long as that reliance is appropriate under the circumstances." Venator v. Interstate Res., Inc., 2016 WL 1574090 *9 (S.D. Ga. Apr. 15, 2016) (internal punctuation omitted). HBS made a reasonable inquiry and was informed by the CCBOE's IT consultant that the requested video recordings did not exist because the "CCBOE security video system overwrites previously recorded footage after a certain number of days to accommodate data storage capacity." (Doc. 73-3, ¶ 16). Overwriting is common for county video surveillance systems in South Georgia, and HBS had no reason to dispute that the requested video recordings had been overwritten. (Doc. 73-3, ¶ 16). HBS made a reasonable inquiry, and its reliance on its client and the CCBOE's IT consultant was appropriate under the circumstances.[5] Accordingly, HBS did not violate Rule 26(g).

Moreover, there could not have been a Rule 26(g) violation as to the exterior video recording as a matter of law. "The standard under Rule 26(g) depends heavily on the circumstances of each case, and **the certification 'speaks as of the time it is made**.'" Gian Biologics, LLC v. Cellmedix Holdings, LLC, 2016 WL 6568014 *4 (M.D. Fla. Nov. 4, 2016) (quoting 1983 Advisory Committee Notes to Fed. R. Civ. P. 26(g)) (emphasis supplied). Under Rule 26(g), Plaintiff can only seek sanctions related to the CCBOE's response to Plaintiff CGG's subpoena on August 26, 2022, because that is

---

[5] "Particularly when the client, like [the CCBOE] did, has an IT department, electronic discovery best practices include using those technology professionals to ensure that document searches cull from all available sources[.]" Venator, 2016 WL 1574090 *10 (S.D. Ga. Apr. 15, 2016).

9

when the certification was made. (Doc. 75-2, p. 18). It is undisputed that the CCBOE notified Plaintiffs that it located the exterior video recording on that date (August 26, 2022) and produced the exterior video recording one day later (August 27, 2022). (Ex. A, pp. 1-2; Doc. 60, p. 6). Thus, as a matter of law, there was not a Rule 26(g) violation as to the exterior video recording.

Plaintiff likewise acknowledges that the CCBOE produced the interior video recordings on September 17, 2022 (21 days after certification). (Doc. 60, p. 6). As discussed above, HBS made a reasonable inquiry with respect to the video recordings, and there was no Rule 26(g) violation. Moreover, an award of attorney fees under Fed. R. Civ. P. 26(g)(3) is expressly limited to expenses "caused by the violation," and Plaintiff has not shown what expenses, if any, it incurred as a result of the 21-day delay in the production of the interior video recordings.

    b. <u>28 U.S.C. § 1927 & the Inherent Power of the Court</u>

The parties agree that sanctions under 28 U.S.C. § 1927 and pursuant to the inherent power of the court require a showing of bad faith. There is no evidence that the CCBOE or HBS acted in bad faith. Rather, the record demonstrates the opposite — that the CCBOE and HBS dedicated significant time, resources, and enormous expense to a matter in which the CCBOE is a nonparty. (Doc. 73-3, ¶¶ 5, 7-11). Plaintiff's wild theories of impropriety do not amount to evidence of bad faith, and the Court should therefore deny Plaintiff's motion as to the video recordings.

**IV.** **The Desktop**

The CCBOE and HBS's conduct related to Hampton's Desktop was substantially justified. As explained in the CCBOE's Response Brief (doc. 73), the CCBOE and HBS followed electronic discovery "best practices" by engaging the CCBOE's IT consultant,

10

Charles Dial, to search for communications responsive to the subpoenas. Over the course of a year, Dial repeatedly represented in writing that Ms. Hampton's cloud-based emails could not be retrieved and there were no desktop-based Microsoft Outlook (".ost") emails found:

- October 27, 2021: "Once we remove the office 365 License it removed her email. The county does not have a mail Archiver so there's no way to retrieve old emails once the mailbox is removed by O365." (Doc. 73-6).

- April 13, 2022: "Once the license was removed the email was deleted after 30 days." (Doc. 73-7).

- May 2, 2022: "[T]here was not ost found. She used outlook web access." (Doc. 73-8).

- August 24, 2022: Dial confirming that "the former Election Supervisor Misty Hampton's and Jill Riddlehoover's email accounts are no longer accessible." (Doc. 73-9).

- August 24, 2022: Dial confirming that "the County has searched the desktop computers and any other electronic equipment in the Elections Office for all responsive documents." (Doc. 73-9).

These written representations are in addition to HBS's various conversations with Mr. Dial in which he represented that he "could not locate/retrieve the emails from either Ms. Hampton's desktop or through web-based services and believed those emails to be permanently lost." (Doc. 73-3, ¶ 21). Neither the CCBOE nor HBS had any reason to doubt Dial's conclusions.[6]

---

[6] Plaintiff argues that the CCBOE "should have confirmed whether Dial personally searched the desktop and requested documentation showing the desktop had been

Plaintiff's characterization of Charles Dial as a "computer installer" is misleading. Dial has served as Coffee County's IT consultant for over ten years. (Exhibit D, Wesley Vickers Email). During that time, Dial has "routinely assisted Coffee County in a variety of information/computer technology related activities, including but not limited to data management, technology and security installation, and on occasion, searching the County's systems for documents requested by outside parties." (Id.). The CCBOE had no reason to hire an additional IT consultant to confirm the accuracy of Dial's representations, and Plaintiff cannot point to any law that imposes such an onerous duty on a nonparty like the CCBOE.

The record demonstrates that the CCBOE and HBS's conduct related to Hampton's Desktop was substantially justified. See Devaney, 989 F.2d at 1163 (11th Cir. 1993) ("[D]iscovery conduct should be found 'substantially justified under Rule 37 if . . . reasonable people could differ as to the appropriateness of the contested action.'"). Moreover, HBS and CCBOE made a reasonable inquiry into the existence of emails located on Hampton's Desktop, and HBS was entitled to rely on representations made by the CCBOE's IT consultant. See Venator, 2016 WL 1574090, at *8 (S.D. Ga. Apr. 15, 2016) ("With respect to the 'reasonable inquiry' attorneys must make [under Rule 26(g)], counsel may 'rely on assertions by the client . . . as long as that reliance is appropriate under the circumstances.'"). Finally, there is no evidence of bad faith by the CCBOE or HBS. See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1242 (11th Cir. 2007) ("'Bad faith' is the touchstone [under 28 U.S.C. § 1927]."); see also id. at 1251 ("[B]efore a court can impose sanctions on an attorney under its inherent powers, it

---

searched for available .ost files." (Doc. 75, p. 15). Plaintiff will never be satisfied. The evidence of record establishes that the CCBOE did so on numerous occasions, both orally and in writing. (Doc. 73-3, ¶ 21; Doc. 73-8).

must make a finding of bad faith."). Based on the foregoing, the Court should deny Plaintiff's motion for sanctions as to Hampton's Desktop.

## CONCLUSION

The Court should deny Plaintiff's Motion for Sanctions. Pursuant to Rule 37(a)(5), the Court must not impose sanctions because the CCBOE and HBS's conduct related to Hampton's Desktop and the privilege log was substantially justified, and circumstances exist that make an award of sanctions unjust. Additionally, HBS satisfied its discovery obligations by making a reasonable inquiry with respect to the CCBOE's discovery responses, and thus HBS's certification did not violate Rule 26(g). Lastly, there is no evidence that the CCBOE or HBS acted in bad faith or otherwise conducted themselves in a manner that was tantamount to bad faith. For the foregoing reasons, the Court should exercise its discretion to deny Plaintiff's Motion for Sanctions.

This 25th day of April, 2024.

|  |  |
|---|---|
|  | **OLIVER MANER LLP** |
|  | */s/ Benjamin M. Perkins* |
| Oliver Maner LLP | BENJAMIN M. PERKINS |
| 218 West State Street | Georgia Bar No. 140997 |
| P.O. Box 10186 | WES P. RAHN |
| Savannah, GA 31412 | Georgia Bar No. 60391 |
| (912) 236-3311 |  |
| bperkins@olivermaner.com | *Attorneys for Defendant Coffee* |
| wrahn@olivermaner.com | *County Board of Elections &* |
|  | *Registration* |
|  |  |
|  | **HALL BOOTH SMITH, P.C.** |
|  | */s/ Jennifer D. Herzog* |
| 1564 King Road | JENNIFER D. HERZOG |
| Tifton Georgia 31793 | Georgia Bar No. 109606 |
| (229) 382-0515 | NICHOLAS A. KINSLEY |
| jherzog@hallboothsmith.com | Georgia Bar No. 273862 |

nkinsley@hallboothsmith.com

*Attorneys for Defendant Coffee County Board of Elections & Registration*

CERTIFICATE OF SERVICE

This is to certify that I have this day caused electronic notification of filing and service of the foregoing to be made upon counsel of record for the parties by filing the same using the Court's CM/ECF filing system.

This 25th day of April, 2024.

|  |  |
|---|---|
|  | **OLIVER MANER LLP** |
|  | */s/ Benjamin M. Perkins* |
| Oliver Maner LLP | BENJAMIN M. PERKINS |
| 218 West State Street | Georgia Bar No. 140997 |
| P.O. Box 10186 | WES P. RAHN |
| Savannah, GA 31412 | Georgia Bar No. 60391 |
| (912) 236-3311 |  |
| bperkins@olivermaner.com | *Attorneys for Defendant Coffee* |
| wrahn@olivermaner.com | *County Board of Elections &* |
|  | *Registration* |
|  | **HALL BOOTH SMITH, P.C.** |
|  | */s/ Jennifer D. Herzog* |
| 1564 King Road | JENNIFER D. HERZOG |
| Tifton Georgia 31793 | Georgia Bar No. 109606 |
| (229) 382-0515 | NICHOLAS A. KINSLEY |
| jherzog@hallboothsmith.com | Georgia Bar No. 273862 |
| nkinsley@hallboothsmith.com |  |
|  | *Attorneys for Defendant Coffee* |
|  | *County Board of Elections &* |
|  | *Registration* |